1  Trenton R. Kashima
2  **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
3  402 W. Broadway, Suite 1760
   San Diego, CA 92101
4  T : (212) 946-9389
   tkashima@milberg.com
5
6  [Additional counsel listed on signature page]

7  *Attorneys for Plaintiffs*
   *and the putative class*

8
9              **UNITED STATES DISTRICT COURT**
10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN JOSE DIVISION**

12  **GARY FREUND and WAYNE MCMATH,**          Case No. 5:22-cv-03794-BLF
    individually and on behalf of others similarly
13  situated,
                                               **PLAINTIFFS' OPPOSITION TO**
14              Plaintiffs,                     **DEFENDANT SANOFI-AVENTIS U.S.**
                                               **LLC'S MOTION TO DISMISS SECOND**
15  vs.                                        **AMENDED COMPLAINT**

16  **HP INC.,** d/b/a **HP COMPUTING AND**
    **PRINTING INC.,** Delaware corporation,    Date:     January 5, 2023
17                                             Time:     9:00 am
                Defendant.                     Dept.:    Courtroom 3 – 5th Floor
18                                             Judge:    Honorable Beth L. Freeman
19
                                               Date Action Filed: September 28, 2022
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ....................................................................................................... 4

    A.      Plaintiffs' have Adequately Pled their Fraud-based Claims. ......................................... 4

        1.      HP's Arguments Fail to Recognize that Plaintiffs' Have Alleged Affirmative Misrepresentations ................................................................... 5

        2.      Even if Plaintiffs' fraud-based claims were based solely on an HP's omissions—which they are not—Plaintiffs have met the requisite pleading requirements and alleged HP had a Duty to Disclose. ..................................... 7

        3.      The Court Should Reject HP's Argument that "Plaintiffs Fail to Plead Elements of their Fraud-Based Claims." ......................................................... 8

        4.      Plaintiffs' citations to extrinsic evidence do not undermine Plaintiffs' claims, and there is no basis for striking them from the complaint. ........................... 11

    B.      Plaintiffs Properly Alleged their Negligent Misrepresentation Claim. ...................... 13

    C.      Plaintiffs' Sufficiently Plead Their Breach of Express Warranty Claim. ................... 15

    D.      Plaintiffs' Claims for Equitable and Injunctive Relief Should not be Dismissed. ...... 16

    E.      Plaintiffs' Unjust Enrichment Claims Are Properly Plead .......................................... 19

    F.      Plaintiffs Have Standing to Assert Claims Relating to the Non-Purchased Printers and the Printers' Faxing Function ................................................................. 19

III.    CONCLUSION .................................................................................................. 20

    

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Alamilla v. Hain Celestial Grp., Inc.,*
  30 F. Supp. 3d 943 (N.D. Cal. 2014 ) ................................................................. 12

*Anderson v. Apple Inc.,*
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ................................................................. 13

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 ...................................................................................................... 3

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) .................................................................................. 19

*Barakezyan v. BMW of N. Am., LLC,*
  715 F. App'x 762 (9th Cir. 2018) ......................................................................... 15

*Barker v. Lull Eng'g Co.,*
  20 Cal.3d 413 (1978) ............................................................................................... 15

*Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.,*
  No. CV F 07-1614 LJOTAG, 2008 WL 2724876 (E.D. Cal. July 11, 2008) ..................... 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................... 3

*Boschma v. Home Loan Ctr., Inc.,*
  198 Cal.App.4th 230 (2011) ................................................................................... 10

*Brazil v. Dole Food Co.,*
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................. 20

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.,*
  No. 116CV00371DADSMS, 2016 WL 3519294 (E.D. Cal. June 27, 2016) ............... 2, 14

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336 (9th Cir. 1996) ...................................................................................... 3

*Clay v. Cytosport, Inc.,*
  No. 15-CV-165-L-DHB, 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015) ...................... 20

*Colgan v. Leatherman Tool Grp.,*
  135 Cal.App.4th 663 (2006) ................................................................................... 10

*Collins v. eMachines, Inc.,*
  202 Cal.App.4th 249 (2011) ..................................................................................... 7

*Colopy v. Uber Techs.,*
  No. 19-cv-06462, 2020 WL 3544982 (N.D. Cal. June 30, 2020) ............................... 17

*Corbett v. PharmaCare U.S., Inc.,*
  No. 21-cv-137 (GPC) (AGS), 2021 WL 4866124 (S.D. Cal. Oct. 19, 2021) ................ 3

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................................ 18

*Davis v. Ford Motor Credit Co.*
  (2009) 179 Cal.App.4th 581 ................................................................................... 9

*Dawood v. Gamer Advantage LLC*,
  No. 222CV00562WBSKJN, 2022 WL 3108846 (E.D. Cal. Aug. 4, 2022) ............ 13

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. CV 11-9405 CAS FEMX, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ........... 6

*Gerritsen v. Warner Bros. Ent. Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................................... 11

*Glenn v. Hyundai Motor Am.*,
  No. SACV152052DOCKESX, 2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) ........ 19

*Goldstein v. General Motors LLC*,
  No. 19-CV-1778-LL-AHG, 2022 WL 484995 (S.D. Cal. Feb. 16, 2022) .............. 18

*Graham v. Bank of Am., N.A.*,
  226 Cal.App.4th 594 (2014) ................................................................................ 10

*Gregory v. Albertsons, Inc.*,
  104 Cal.App.4th 845 (2002) ................................................................................... 9

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
  432 F. App'x 700 (9th Cir. 2011) ......................................................................... 14

*In re Insurance Installment Fee Cases*
  (2012) 211 Cal.App.4th 1395 ............................................................................... 10

*Jeong v. Nexo Fin. LLC*,
  No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ............. 3, 17

*Johnson v. Nissan North America, Inc.*,
  272 F.Supp.3d 1168 (N.D. Cal. 2017) ........................................................ 1, 7, 15

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
  315 F. App'x 603 (9th Cir. 2008 ........................................................................... 14

*Krause-Pettai v. Unilever United States, Inc.*,
  No. 20-CV-1672-DMS-BLM, 2021 WL 1597931 (S.D. Cal. Apr. 23, 2021) ........ 17

*Kwikset Corp. v. Super. Ct.*,
  51 Cal.4th 310 (2011) ............................................................................................ 7

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ............................................................................... 13

*Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*,
  No. CIV. S-07-1015 LKK/EFB, 2007 WL 2492436 (E.D. Cal. Aug. 30, 2007) ... 14

*Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.,*
No. S-07-1015 LKK/EFB, 2007 WL 2492436 (E.D. Cal. Aug. 30, 2007)......................................... 2

*Lopez v. Smith,*
203 F.3d 1122 (9th Cir. 2000)............................................................................................................ 3

*McBride v. Boughton,*
123 Cal. App. 4th 379 (2004)........................................................................................................... 19

*Morgan v. AT & T Wireless Servs., Inc.,*
177 Cal.App.4th 1235 (2009).......................................................................................................... 10

*Oestreicher v. Alienware Corp.,*
544 F. Supp. 2d 964 (N.D. Cal. 2008) ............................................................................................. 6

*Orkin Exterminating Co. v. F.T.C.,*
849 F.2d 1354 (11th Cir. 1988)........................................................................................................ 9

*Rollolazo v. BMW of North Am.,*
2017 WL 6888501 (C.D. Cal. May 2, 2017)................................................................................... 16

*Rothman v. Equinox Holdings, Inc.,* No. 22-CV-09760-CAS-MRWX, \
2021 WL 1627490 (C.D. Cal. Apr. 27, 2021).................................................................................. 17

*Rutherford Holdings, LLC v. Plaza Del Rey,*
223 Cal. App. 4th 221 (2014).......................................................................................................... 19

*Sagastume v. Psychemedics Corp.,*
2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) ................................................................................ 17

*Sciacca v. Apple, Inc.,*
362 F. Supp. 3d 787 (N.D. Cal. 2019) ............................................................................................. 6

*Sims v. Campbell Soup Co.,*
No. 18-CV-668-PSG-SPX, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) .................................. 19

*Smith v. Ford Motor Co.*
749 F. Supp. 2d 980 (N.D. Cal. 2010) ............................................................................................. 7

*Smith v. State Farm Mutual Automobile Ins. Co.*
(2001) 93 Cal.App.4th 700............................................................................................................... 9

*Sonner v. Premier Nutrition Corp.,*
971 F.3d 834 (9th Cir. 2020)........................................................................................................... 16

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ......................................................................... 3

*Vess v. Ciba–Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003)...................................................................................................... 1, 3

*Wong v. Am. Honda Motor Co.,*
No. 219CV10537JLSKES, 2022 WL 3696616 (C.D. Cal. June 21, 2022) .................................... 16

*Yagman v. Gen. Motors Co.,*
No. CV-14-4696-MWF AGRX, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014)......................... 6, 7

OPPOSITION TO MOTION TO DISMISS                                        Case No: 5:22-cv-03794-BLF

**Statutes**

CAL. BUS. & PROF. CODE § 17200 ............................................................................. 4

CAL. BUS. & PROF. CODE § 17500 ............................................................................. 4

MINN. STAT. § 325F.67 ............................................................................................... 4

UCC 2-314 ................................................................................................................... 2

**Other Authorities**

BAJI No. 9.00.5 .......................................................................................................... 15

Cal. Jury Instr. (BAJI) No. 9.00.3 ............................................................................... 15

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................... 1, 3

Fed. R. Civ. P. 8 ......................................................................................................... 19

Fed. R. Civ. P. 9 ................................................................................................... 1, 3, 5

Fed. R. Evid 802 ......................................................................................................... 11

1

## I.   INTRODUCTION

Plaintiff Gary Freund and Plaintiff Wayne McMath ("Plaintiffs") purchased HP "All-in-One" devices, which are advertised as multipurpose products with several core functions: scanning, faxing, copying and printing (the "Products"). Complaint, ECF No. 1 ("Compl."), ¶¶ 65-82. Afterward, Plaintiffs discovered the Products do not function as expected or advertised because the scanning and faxing features—which do not actually use or require printer ink in order to function—are disabled and/or unavailable if ink cartridges are low or empty. *Id.* Plaintiffs were harmed as a result because they had to purchase additional products, and incur unnecessary expenses, in order for the Products to function as advertised. Plaintiffs' Complaint sets forth two alternate theories of liability: (1) HP did *not* intend for the Products to be incapable of functioning and performing as advertised, *i.e.* the Products suffer from a design defect; or (2) HP intentionally designed the Products to function in this manner and, through its representations and omissions, mislead Plaintiffs and Class members about the Products' features, ability to perform the stated functions, and value or benefit to consumers. HP now seeks dismissal of Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) and 9(b) based on several conclusory arguments that routinely conflate Plaintiffs' alternate theories of liability and misstate the law. *See generally*, HP's Motion to Dismiss, ECF No. 14 ("MTD").

First, HP argues "Plaintiffs have failed to plead specific facts supporting their [fraud-based] claims with the required particularity," and, resultingly, "Plaintiffs also fail to plead the elements of their fraud-based claims." MTD at pp. 7, 12. Both assertions are incorrect because Plaintiffs' complaint identifies the "who, what, where, why, and how of the misconduct charged, as well as an explanation as to why the statement or omission complained of was false or misleading." *Johnson v. Nissan North America, Inc.*, 272 F.Supp.3d 1168, 1174 (N.D. Cal. 2017), quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). HP rehashes the exact same argument at length (MTD at pp. 12-16), asserting dismissal is warranted "on the additional, independent ground that

Plaintiffs failed to plead specific elements" of their fraud-based claims. *Id.* at p. 12. Even if this argument provided an independent ground for dismissal—which it does not—it fails for the exact same reason because Plaintiffs have sufficiently pled each claim. HP's arguments with regard to unjust enrichment also fail for the same reason.

Second, HP argues Plaintiffs' breach of warranty claims must be dismissed on the basis that Plaintiffs "have failed to plead that the printers did not operate as warranted." MTD at p. 4. This mischaracterization strains credulity because HP expressly represented that the Products perform several independent functions, but, as HP acknowledges, Plaintiffs' allege "that the scanning feature would not work . . . ." *Id.,* at p. 5; *see also* Compl. ¶¶ 67, 70, 76, 79 ("HP made explicit representations that the device would be able to scan," but Plaintiffs "discovered that the device did not function as a scanner if the ink cartridges are low or empty."). Plaintiffs' warranty claims arise out of HPs statements and affirmations of fact on the Products' packaging and label. *See* UCC 2-314.

The Court should also reject HP's argument that Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule because it is a distinct claim "sound[ing] more in deceit/fraud than it does in negligence" based on Plaintiffs' allegations that they "would not have purchased" the Products if they had known about the design flaw. *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc*., No. 116CV00371DADSMS, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016), citing *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.,* No. S-07-1015 LKK/EFB, 2007 WL 2492436, at *8 (E.D. Cal. Aug. 30, 2007) (denying defendant's motion to dismiss based on economic loss rule, finding "plaintiff assert[ed] distinct claims" because the complaint alleged "plaintiff would not have entered into this contract absent alleged defendants' misrepresentations," which "sounds more in deceit/fraud than it does in negligence."). In regard to HP's remaining arguments, Plaintiffs are permitted to plead their claims for equitable relief in the alternative and have standing to bring their claims as alleged. *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D.

Cal. Jan. 19, 2022) (J. Freeman). Based on the foregoing, the Court should deny the Motion to Dismiss in its entirety.

## II.     LEGAL STANDARD

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim. *Corbett v. PharmaCare U.S., Inc.,* No. 21-cv-137 (GPC) (AGS), 2021 WL 4866124, at *12 (S.D. Cal. Oct. 19, 2021).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a plaintiff must identify the "who, what, when, where, and how" of the misconduct charged, as well as an explanation as to why the statement or omission complained of was false or misleading. *Vess*, 317 F.3d at 1106. The allegations need only "be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## II.   ARGUMENT

### A.   Plaintiffs have Adequately Pled their Fraud-based Claims.

Plaintiffs assert claims for violations of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 ("FAL"); California's Unfair Competition Law CAL. BUS. & PROF. CODE §§ 17200, *et seq.* ("UCL"); Minnesota's False Advertising Law and Deceptive Trade Practices Act, MINN. STAT. § 325F.67, *et seq.* ("MDTPA"); and negligent misrepresentation based on the theory that HP purposely designed the Products so that two core features—scanning and faxing—are disabled when ink cartridges are low or empty even though ink is not required in order to carry out either function. Alternatively, the fraud-based claims are based on the theory that, although the design defect was unintentional, HP learned about the issue and continued advertising and selling the Products as "All-in-One" systems with several independent features when, in reality, two core functions were significantly impaired by the defect. Under either theory, HP's statements and representations regarding the Products are likely to mislead reasonable consumers because, contrary to the Products' packaging, the scanning and faxing features are tied to the printing feature and ink availability, inhibiting the Products' functionality. Compl. ¶ 6 ("[i]f even one of the ink cartridges is too low or empty, the scanning function on the "all-in-one" printer will be disabled and will not work as advertised . . .). Stated differently, HP's representations, advertisements, and forward-facing marketing materials are misleading because they do no not accurately reflect the Products' characteristics, functionality, or value to consumers, and Plaintiffs' complaint identifies the "who, what, when, where, and how" of the alleged misconduct:

- **Who**. HP. *See generally id.*

- **What.** The Products suffer from a design flaw that prevents them from functioning as HP advertised and warranted. *Id.* ¶¶ 40-50.

- **How.** HP misled consumers, including Plaintiffs, about the Products' functionality and

characteristics by advertising the Products as "All-in-One" devices with several independent core features—scanning, faxing, copying, and printing—when, in reality, the Products suffer from a design flaw that disable the scanning and faxing functions when ink level are low or empty. *See Id.* ¶¶ 65-82 (identifying specific marketing materials and misleading statements contained therein).

- **Where.** The complaint identifies several statements and omissions located on the Products' packaging, HP's website, and other forward-facing marketing materials. *Id.*

- **When.** Plaintiffs were misled at the point of sale. *Id.* ¶¶ 65-82.

### 1. HP's Arguments Fail to Recognize that Plaintiffs Have Alleged Affirmative Misrepresentations.

HP repeatedly asserts that the fraud-based claims must be dismissed because "Plaintiffs do not come close to pleading fraud with the particularity Rule 9(b) requires." MTD at pp. 8-9. Notably, HP ignores Plaintiffs' affirmative misrepresentation allegations in the hopes of recasting this case as one based solely on HP's omissions and incorrectly states that "Plaintiff's Fraud-Based Claims are premised upon an omission rather than an alleged misrepresentation." *Id.* at p. 11. That is incorrect.

First, Plaintiffs alleged that Defendant misrepresents the functionality of its Products. More specifically, HP claims that the All-in-One Printers are multifunction, "all-in-one" devices that can print, copy, scan and in some cases, fax documents. Compl. ¶¶ 5, 31-39. Yet, these Products do not meet a reasonable consumer's expectation of an all-in-one device, because use of the scanning and faxing capabilities are tied to the availability of ink in the Products, even though these functions do not require ink. Compl. ¶¶ 40-50; *see also* Compl. ¶¶ 65-82 (identifying affirmative misrepresentations and explaining why they are misleading).

Second, contrary to HP's arguments, Plaintiffs have not failed to allege "why the product is defective," "what happens when the product fails," or "how the defect harmed plaintiffs." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' allegations address each issue: (1) the Products are defective because the scanning and faxing functions are unnecessarily tied to ink cartridge levels; (2) both functions are "disabled" when ink levels are low, and, resultingly, "do not function as scanners or as fax machines;" and (3) the defect harmed Plaintiffs because the Products "do not work as warranted, labeled and advertised," and "[a]s a result, consumers must incur unexpected and unnecessary burden and expense by purchasing ink cartridges . . ." Compl. ¶¶ 6, 40, 43, 45.

Similarly, the Court should reject HP's argument that Plaintiffs "do not identify the cause of the alleged defect with specificity," "how the defendant manufacturer discovered the defect," or "the steps it took to conceal the defect". MTD at pp. 8-9. HP misstates the holding in *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), aff'd, 322 F. App'x 489 (9th Cir. 2009) and improperly relies on *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS FEMX, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019); and *Yagman v. Gen. Motors Co.*, No. CV-14-4696-MWF AGRX, 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014).[1,2] Unlike *Sciacca*, Plaintiffs do not merely identify "the consequences of

---

[1] For each of these citations, the analysis occurred in the context of a fraudulent omission, not an affirmative misrepresentation. HP describes *Oestreicher* as "dismissing UCL and FAL claims that conclusorily alleged that the manufacturer knew of the alleged defect but failed to disclose it to consumers," but the specific portion HP cites only discusses CLRA claims based on non-disclosure in the context of an expired warranty period—not FAL or UCL claims based on affirmative misrepresentations. *Oestreicher, supra,* at 971. "There are no allegations of misrepresentations here . . ." (*Id.* at 969).

[2] *Yagman* is irrelevant and does not support HP's argument. The allegations in the case were wholly insufficient because the plaintiff "only alleged an injury, not a defect" arguing "the fact that

---

the alleged defect," nor are they "notably silent on identifying the defect that causes such consequences." Compl. ¶¶ 51-52, 62 (explaining the Products' scanning and faxing functions are "tied" to the availability of ink although "[t]here is no reason or technical basis for manufacturing the All-in-One Printers with an ink level detection function that causes the scanner to stop functioning when ink is low or empty.")

2. <u>Even if Plaintiffs' fraud-based claims were based solely on an HP's omissions—which they are not—Plaintiffs have met the requisite pleading requirements and alleged HP had a Duty to Disclose.</u>

In the context of a fraudulent omission, a duty to disclose arises in four instances, and three are relevant to this case: (1) "when the defendant ha[s] exclusive knowledge of material facts not known or reasonably accessible to the plaintiff;" (2) "when the defendant actively conceals a material fact from the plaintiff," *or* (3) "when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Johnson*, 272 F.Supp.3d at 1182, *quoting Collins v. eMachines, Inc.*, 202 Cal.App.4th 249 (2011); *see also Smith v. Ford Motor Co.* 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010), aff'd, 462 F. App'x 660 (9th Cir. 2011). A misrepresentation is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action ...." *Johnson*, 272 F.Supp.3d at 1182, *quoting Kwikset Corp. v. Super*. Ct., 51 Cal.4th 310, 332 (2011).

Plaintiffs' allegations fit squarely within this framework and demonstrate HP had a duty to disclose material facts, including but not limited to the existence of the design flaw, because HP's

the car stopped working is sufficient to support a reasonable inference that a manufacturing defect was the cause." *Yagman*, 2014 WL 4177295, at *3. Plaintiffs do not ask the Court to make an inferential leap, and the complaint identifies the cause of the defect (the scanning and faxing functions are tethered to the printing function) and HP's underlying motivation (selling more printer ink).

- 7 -

advertisements and statements are partial representations that mislead consumers by describing and promoting the Products as "All-in-One" devices that perform several independent functions when, in reality, the Products' scanning and faxing features are instead tied to, and inhibited by, the availability of ink. Compl. ¶ 40-44.[3] These facts are material because the error message inhibits the Products' ability to function as advertised, the information is not reasonably accessible, and withholding it deprives consumers of the benefit of their bargain.

3.  The Court Should Reject HP's Argument that "Plaintiffs Fail to Plead Elements of their Fraud-Based Claims."

For the reasons outlined above, Plaintiffs have plead their fraud-based claims with particularity, and the specific facts sufficiently allege that HP made false or misleading statements. Nonetheless, HP recycles the same flawed arguments in pages 12 to 16 of its MTD, arguing in favor of dismissal based on Plaintiffs' purported failure to plead "that HP knew about the alleged Design Flaw, and that HP's statements about the functionality of the All-in-One Printers are untrue or misleading." MTD at p. 12. The Court should reject this argument because scienter is not an element of the FAL[4], and Plaintiffs have explained why HP's statements and representations may be misleading to reasonable consumers. Compl. ¶ 26-28 ("HP promotes and promises that its All-in-One

---

[3] Alternatively, HP posits that the design flaw can easily be bypassed (MTD at p. 10), and, resultingly, it has a duty to inform consumers of this fact and provide information sufficient to complete the bypass.

[4] *Schwartz v. Lights of Am.*, No. CV 11- 1712-JVS MLGX, 2012 WL 4497398, at *5 (C.D. Cal. Aug. 31, 2012) ("Whereas the FAL has no scienter requirement, the false advertising laws of several other states require varying degrees of scienter.") (citing *Mosk v. Lynam*, 253 Cal.App.2d 959, 966 (1967) (no scienter requirement in FAL)).

Printers provide scanning and faxing . . .;" "markets its All-in-One printers as 'incredibly convenient' and 'exceptional values';" "convenient because you don't have to buy a separate device for each task;"); *Id.* ¶ 33 (despite these representations, the Products "do not work as warranted, labeled and advertised"). Moreover, the allegations indicate HP *did* have knowledge of the defect and the fact that its representations regarding the Products could be misleading to reasonable consumers. *Id*. ¶¶ 47-49 ("Not all multifunction printers are designed, packaged, marketed and sold to consumers so that low or no ink causes a loss in scan or fax functionality," so advertising the Products' as "All-in-One" devices capable of performing independent core functions could mislead consumers about the Products' functionality). Indeed, Plaintiffs even pled HP's motive in locking down the scanning and faxing functions in absence of ink. *Id*. ¶¶ 51-64 ("Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices does, however, serve to benefit HP. [¶] HP derives substantial profits from the sale of HP printer ink cartridges.").

With regard to the UCL claim, the Court should reject HP's argument as to the unlawful and unfair prongs. For the reason stated above, the UCL "unlawful" claim survives because the FAL claim survives. As to the UCL "unfair" prong, the law is far from clear regarding what constitutes an unfair business practice, but it is broader than argued by Defendant. MTD, at p. 13 ("Because Plaintiffs' "unlawful" UCL claim warrants dismissal, Plaintiffs' "unfair" UCL claim should also be dismissed."); *Gregory v. Albertsons, Inc.,* 104 Cal.App.4th 845, 251 (2002) ("The term unfair is not precisely defined in the statute, and the courts have struggled to come up with a workable definition."). When determining whether a practice is unfair, some courts "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. Ford Motor Credit Co.,* 179 Cal.App.4th 581, 595 (2009) *citing Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal.App.4th 700 (2001). Other courts have adopted the approach taken under section 5 of the Federal Trade Commission Act: "(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any

OPPOSITION TO MOTION TO DISMISS                                    Case No: 5:22-cv-03794-BLF

countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Id.*, at 709-10 *citing Orkin Exterminating Co. v. F.T.C.,* 849 F.2d 1354, 1364 (11th Cir. 1988).  But other courts have adopted the test enumerated in *Gregory,* that a business practice is unfair if it causes consumer harm in a manner "tethered" to a public policy enumerated in "specific constitutional, statutory or regulatory provisions."  *Gregory*, *supra*, at 853; *In re Insurance Installment Fee Cases,* 211 Cal.App.4th 1395, 1418 (2012) ("this Court has followed the *Gregory* line of cases."); *Graham v. Bank of Am., N.A.*, 226 Cal.App.4th 594, 613 (2014) (same).  Here, misrepresenting and mislabeling products, in order to induce consumers to purchase additional ink, passes each of these enumerated "unfair" tests (at least at the pleading stage).

Similarly, HP misstates the law with regard to the UCL's fraudulent prongs: "Plaintiffs have not sufficiently pled [HP's purported representations] to be false;" and "without pleading sufficient facts that the devices did not operate as represented, or that HP's representations were even false, Plaintiffs' 'unfair' UCL claim should be dismissed." MTD at p. 13-14. Plaintiffs need only allege that HP's statements and representations could be misleading to reasonable consumers, and they have met this burden. *Colgan v. Leatherman Tool Grp.*, 135 Cal.App.4th 663, 682 (2006) (Under the UCL, "[a] 'reasonable consumer' standard applies when determining whether a given claim is misleading or deceptive."). For example, even technically true statements can be understood as capable of misleading consumers. *See Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1255 (2009) (UCL liability exists not only for untrue representations, but also for a "'perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer.'"); *Boschma v. Home Loan Ctr., Inc.*, 198 Cal.App.4th 230, 253 (2011) (Thus a statement that " 'may be accurate on some level, but will nonetheless tend to mislead or deceive' " is actionable under the UCL.).  This case should be no different.

Last, and for the same reasons stated above, the Court should reject HP's arguments with

regard to Plaintiffs' remaining fraud-based claims for the same reasons. MTD at p. 14, (HP incorrectly asserts that Plaintiffs must "plead the falsity of HP's representations.").

4. <u>Plaintiffs' citations to extrinsic evidence do not undermine Plaintiffs' claims, and there is no basis for striking them from the complaint.</u>

HP argues that Plaintiffs' references to extrinsic materials "cannot form the basis of liability as to HP in this lawsuit," and asks the Court to strike certain references to publicly available articles. *Id.* at pp. 15-16. Ironically, HP simultaneously argues the Court need not accept Plaintiffs' allegations as true—and can thereby dismiss the Complaint in its entirety—because an open-forum message board buried deep within HP's website, purportedly "demonstrat[es] that HP did not make any misrepresentations of fact or omissions." MTD at p. 10. HP's entire argument is based on the fact that one individual *may* have cleared an error message related to the Products' scanning functions. *Id.*

HP ignores Plaintiffs' other references to argue that the existence of this message board thread, which it mischaracterizes as an "article," "contradict[s] the very allegations upon which their complaint hinges," further stating "the Court cannot credit the contradicted allegations and should dismiss the entirety of Plaintiffs' Complaint as unsupported." *Id.* at p. 10. The Court should reject this argument on several grounds, including that it cannot be offered for the truth of the matter asserted.[5]

_____

[5] In additional to be hearsay (Fed. R. Evid 802), such evidence should not be examined in deciding a motion to dismiss. While a Rule 12(b) motion is generally limited to the face of the complaint and documents attached thereto, courts may consider evidence subject to properly judicial notice. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015). While cited in the Complaint, the information on the Defendant's website is subject to dispute and is far from clear evidence that the Defect at issue can be circumvented.  Accordingly, such "evidence" should not be

Further, it is insufficient to support Defendant's position because: (1) it merely contains six posts wherein one individual, who is not employed or affiliated with Defendant, gives another individual tips for clearing an error message on his device; (2) the scope of the conversation is limited to the Deskjet 3050 All-In-One J610a, not all 10 Products identified in the complaint; (3) the product in question was not purchased by the user ("Someone gave me this computer without the ink cartridges."); (4) the product's origin is unclear (". . . printer telling me in German that both cartridges have either failed . . . [u]pon pressing the scan button it tells me in German that there is a scan error and I should try scanning from the computer."); (5) the conversation HP references occurred in 2019; and (6) statements at the bottom of the message board warn posters to "Be alert for scammers" and "If you think you have received a fake HP Support message, please report it to us by clicking on 'Flag Post'."

Moreover, the message boards' contents do not contradict Plaintiffs' claims but merely demonstrate that users commonly experience error messages when attempting to use the scanning function while their Products' ink cartridge is empty or low. The fact that one person purportedly cleared an error message does not demonstrate that the design flaw "does not exist" (MTD at p. 9) and has no bearing on whether HP made "any misrepresentation of fact or omission" because the author does mention the Products' packaging or HP's marketing materials, it web-page is buried deep within HP's website, and does not negate the fact that HP's statements with regard to the Products may be misleading to reasonable consumers.

Finally, the cases HP cites do not support its position. *Alamilla v. Hain Celestial Grp., Inc.,* 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014 ) (The court dismissed plaintiffs' false advertising claims, which

considered. *Id.*, 1028 ("the court agrees with defendants that information appearing on the third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination.")

were based on novel theory that pressurizing raw juice is the nutritional equivalent of cooking or pasteurization, finding (1) "the complaint incorporates by reference two [academic] articles that contradict this claim," and (2) "the parties agreed at the hearing that the plaintiffs have incorporated by reference the entire text of the articles they quote in their complaint."); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (although defendants did "***not*** offer the extraneous document for their truth," the court need not decide whether the district court abused its discretion because "[d]efendants' motion to dismiss lacks merit even if each extraneous document is considered.").

### B.   Plaintiffs Properly Alleged their Negligent Misrepresentation Claim.

HP contends that Plaintiffs' negligent misrepresentation claims are barred by the Economic Loss Rule. MTD at pp. 16-17. While the Economic Loss Rule prevents plaintiffs from recovering for purely monetary injuries under certain circumstances, this Rule does not bar misrepresentation claims that sound in fraud. *Dawood v. Gamer Advantage LLC*, No. 222CV00562WBSKJN, 2022 WL 3108846, at *3 (E.D. Cal. Aug. 4, 2022). Simply put, in regard to fraud-based torts, the economic loss rule does not immunize companies for their own misrepresentations. *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1021 (N.D. Cal. 2020) (explaining that plaintiff sufficiently plead defendant's fraud like omissions).

While Plaintiffs concede that neither the Ninth Circuit nor the California Supreme Court has "analyzed how and if the economic loss doctrine applies to claims for negligent misrepresentation, which 'occupy the space between negligence and fraud claims.'" *Dawood*, *supra*, at *3.[6] Nonetheless,

---

[6] *See also Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.,* No. CV F 07-1614 LJOTAG, 2008 WL 2724876, at *6 (E.D. Cal. July 11, 2008) ("This Court agrees with Barrier that Barrier's negligent misrepresentation cause of action sounds more in deceit/fraud than negligence.

two unpublished Ninth Circuit cases have suggested that negligent misrepresentation claims are not barred by the economic loss doctrine. *Id. citing Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011) (holding that a jury verdict in favor of a negligent misrepresentation claim was not barred by the economic loss doctrine); *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) ("California law classifies negligent misrepresentation as a species of fraud ... for which economic loss is recoverable.").

Here, while Plaintiffs allege contract-based claims, their negligence misrepresentation claim arises from the falsity of HP's statements when inducing consumers to purchase the products.  This is not a difference without distinction:

> Although the court is mindful the economic loss rule may bar negligent misrepresentation claims where the allegation runs "closely parallel" to a concurrent breach of contract claim, *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc*., No. CIV. S-07-1015 LKK/EFB, 2007 WL 2492436, at *8 (E.D. Cal. Aug. 30, 2007), the claims plaintiff asserts in this case are, by nature, different. Here, plaintiff's breach of contract claim alleges defendants failed to make good on their warranty when they failed to replace the field, whereas the negligent misrepresentation claim essentially alleges that plaintiff would not have entered into this contract absent alleged defendants' misrepresentations. This negligent misrepresentation claim sounds more in deceit/fraud than it does in negligence. As such, the court is not persuaded that plaintiff's negligent misrepresentation must be dismissed as it is pled.

---

Negligent misrepresentation damages arise from misrepresentation of past or existing material facts and are distinguishable from negligence and strict liability damages. Glidden fails to convince this Court that the economic loss rule bars Barrier's (fifth) negligent misrepresentation cause of action.") (citing California Civil Code section 1710.)

- 14 -

*Bret Harte Union High Sch. Dist.*, 2016 WL 3519294, at *5. Accordingly, at this stage of the litigation, Plaintiffs' negligence misrepresentation claims should not be dismissed pursuant to the Economic Loss Rule. *Dawood*, 2022 WL 3108846, at *3.

### C.   Plaintiffs Sufficiently Plead Their Breach of Express Warranty Claim.

Under California law, "[a] defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical products from the same manufacturer." Cal. Jury Instr. (BAJI) No. 9.00.3. "For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect." *Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 429 (1978). The classic example is "the one soda bottle in ten thousand that explodes without explanation." *Id.* at 428 (citing *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453 (1944)). On the other hand, a product is defective in design "if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," or "if there is a risk of danger inherent in the design which outweighs the benefits of that design." BAJI No. 9.00.5. Unlike a manufacturing defect, a design defect "cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design." *Barker*, 20 Cal.3d at 429.

HP expressly represented the Products as multifunction devices that include scanning and faxing features without any limitations or qualifications. Compl. ¶¶ 14-15; 2-28. Plaintiffs alleged that the scanning and faxing features of the All-in-One Printers do not work independently and only function when ink levels are full, and this undisclosed contingency breaches the All-in-One Printer's representations that the printers ordinarily function as scanners and fax machines. Plaintiffs are not required to produce more facts at this stage of litigation. Further, prior to more discovery Plaintiffs cannot plead whether all HP All-in-One printers contain this defect or solely the models plead in the complaint. Until more discovery is taken to determine which models contain the defect alleged herein,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

it is premature to dismiss Plaintiffs' breach of express warranty claim as solely alleging a "design defect". *Johnson*, 272 F. Supp. 3d at 1178 ("Discovery may show that this defect is one in design, and Nissan is welcome to revisit the issue later in the proceedings. For now, plaintiffs' allegations are sufficient to establish their right to discovery to investigate the potential causes."); *Barakezyan v. BMW of N. Am., LLC,* 715 F. App'x 762 (9th Cir. 2018) ("the SAC meets that standard by alleging that BMW's CCBs have tension relief cracks, deviating from BMW's design. And furthermore, the SAC does not allege an entirely uniform CCB defect because it states that the defect manifests at different mileages, temperatures, and severities—allegations which must be taken as true when adjudicating a motion to dismiss."); *Rollolazo v. BMW of North Am.*, 2017 WL 6888501, at *8 (C.D. Cal. May 2, 2017) ("[w]here a defect is common to all vehicles, such defect is typically considered one of design, rather than a manufacturing defect," this is not always the case."); *Wong v. Am. Honda Motor Co.*, No. 219CV10537JLSKES, 2022 WL 3696616, at *6 (C.D. Cal. June 21, 2022) "Although the defective AC Systems in Class Vehicles may be the result of a design defect, it is also plausible that the Systems suffer from uniform manufacturing defects such that they differ from Honda's intended product."). Accordingly, Plaintiffs should be allowed discovery to further investigate Defendant's breach of warranty.

Defendant's contention that Plaintiffs only alleged a design defect within the All-in-One Printers is simply incorrect. Plaintiffs have provided sufficient facts to support Plaintiffs' breach of warranty allegations. Compl. ¶¶ 40, 61, 118, 138, 141. Plaintiffs are not required to provide more information at this stage.

### D. Plaintiffs' Claims for Equitable and Injunctive Relief Should not be Dismissed.

Contrary to HP's argument, Plaintiffs are entitled to equitable relief, and their claims for restitution and injunctive relief should stand. First, regarding restitution, HP invokes *Sonner* to challenge Plaintiffs' ability to bring claims for restitution and money damages, but it is inapplicable

1 to this case because of the nature of the relief Plaintiffs seek and the early procedural posture. *Sonner*

2 *v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In *Sonner*, the plaintiff sought the same

3 monetary relief for her legal and equitable claims. *Id*. at 837. After years of litigation, the plaintiff

4 knowingly and voluntarily dropped her legal claims to avoid a jury trial. Given the advanced

5 procedural posture in that case, *Sonner* simply held that a plaintiff "must establish that she lacks an

6 adequate remedy at law before securing" equitable relief–[but] not before pleading it. *Id.* at 844. None

7 of those facts are present here. *See Krause-Pettai v. Unilever United States, Inc*., No. 20-CV-1672-

8 DMS-BLM, 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021) (declining to dismiss claims because,

9 as here, the plaintiff could pursue alternative remedies at pleading stage); *Rothman v. Equinox*

10 *Holdings, Inc.*, No. 22-CV-09760-CAS-MRWX, 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021)

11 (same).

12        Indeed, courts in this circuit routinely allow legal and equitable claims to be pled in the

13 alternative at this stage of the litigation. *See, e.g., Colopy v. Uber Techs.*, No. 19-cv-06462, 2020 WL

14 3544982, at *2 (N.D. Cal. June 30, 2020) ("[A]t this early stage, Plaintiffs may plead alternative

15 theories; while Plaintiffs may not recover twice, they need not choose between competing legal

16 theories at this time."); *Jeong*, 2022 WL 174236, at *27 ("The Court finds that in light of *Sonner*'s

17 limited applicability to the pleading stage, there is no binding precedent that holds that pleading

18 equitable restitution in the alternative is improper") (collecting cases); *Sagastume v. Psychemedics*

19 *Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may

20 not seek alternative remedies at the pleading stage.") (citations omitted); *Krause-Pettai*, 2021 WL

21 1597931, at *4 (S.D. Cal. Apr. 23, 2021). HP's *Sonner* argument is therefore premature, and dismissal

22 is unwarranted.

23        Regarding injunctive relief, HP fails to even address the issue in its brief. *See* MTD at pp. 19–

24 20 (arguing Plaintiffs have an adequate remedy at law for past damages under *Sonner*, making no

argument whatsoever regarding Plaintiffs' threat of future harm, and nonetheless lumping injunctive relief into its conclusion that "their claims for equitable monetary and injunctive relief must be dismissed"). The reason HP does not mention the threat of future harm is because it is a losing argument—no adequate remedy exists at law with regard to Plaintiffs' threat of future harm. Indeed, "a previously deceived consumer may have standing to seek an injunction," even if the consumer now knows of the fraudulent practices, so long as the consumer plausibly alleges a threat of future harm. *Goldstein v. General Motors LLC*, No. 19-CV-1778-LL-AHG, 2022 WL 484995, at *7 (S.D. Cal. Feb. 16, 2022) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (citation omitted)). "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at *7 (quoting *Davidson*, 889 F.3d at 969-70).

Plaintiffs have sufficiently alleged a threat of future harm to warrant injunctive relief. "Defendant's practices…have mislead Plaintiffs'…in the past and will continue to mislead in the future." (Compl. ¶ 89) (emphasis supplied). Plaintiff Freund alleged that he "would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents" but also that he "may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue." Compl. ¶¶ 72–73. Plaintiff McMath alleged the same thing. *Id.* ¶¶ 81–82. As Plaintiffs alleged, "HP's conduct is ongoing and continues to this date." *Id.* ¶ 143. This unlawful conduct "continues to have a likelihood to deceive." *Id.* ¶ 153. Thus, Plaintiffs and proposed Class Members will continue to suffer harm as a result of HP's unlawful conduct unless injunctive relief is granted.

Nothing more is required of Plaintiffs at this stage for injunctive relief to be warranted, and Plaintiffs' claims should survive dismissal.

1

### E.    Plaintiffs' Unjust Enrichment Claims Are Properly Plead

As a threshold matter, and as discussed above, Plaintiffs properly plead their fraud-based claims, and therefore this Court should ignore HP's argument regarding Plaintiffs' unjust enrichment claims entirely. Moreover, Plaintiffs properly allege their unjust enrichment claims because "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Glenn v. Hyundai Motor Am.*, No. SACV152052DOCKESX, 2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Furthermore, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." (emphasis added) (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)) (internal quotation marks omitted). Thus, "a claim for restitution is permitted" for example, "even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement*." Rutherford Holdings*, 223 Cal. App. 4th at 231. Further, even if there were overlap among Plaintiffs' claims, Fed. R. Civ. P. 8(d)(2) explicitly permits "[a] party [to] set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." *See also, Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) (holding that plaintiffs alleging deceptive advertising regarding "natural" products were allowed to make duplicate claims and that defendants induced them to purchase the product through their fraudulent advertising, resulting in unjust enrichment). Thus, Plaintiffs' unjust enrichment claims should proceed.

### F.    Plaintiffs Have Standing to Assert Claims Relating to the Non-Purchased Printers and the Printers' Faxing Function

HP argues "Plaintiffs do not have standing to assert claims for the Non-Purchased Printers because Plaintiffs did not suffer any injury relating to those printers" and that Plaintiffs fail to allege

- 19 -

they suffered an injury regarding the fax function of the Printers. MTD at pp. 21, 23. While there is a split of authority regarding plaintiffs' standing to bring claims for products they did not personally purchase, "the prevailing view" in the Ninth Circuit is that class action plaintiffs can bring claims for products they didn't purchase "as long as the products and alleged misrepresentations are substantially similar." *Sims v. Campbell Soup Co.,* No. 18-CV-668-PSG-SPX, 2018 WL 7568640, at *3 (C.D. Cal. Sept. 24, 2018). The proper time to make the "substantial similarity" determination is at class certification. *Id.*; *see also Clay v. Cytosport, Inc.*, No. 15-CV-165-L-DHB, 2015 WL 5007884, at *7 (S.D. Cal. Aug. 19, 2015) (refusing to dismiss class claims for products not purchased by named plaintiff "[i]n light of the alleged similarity of ingredients, labels, and misrepresentations at issue in this case" and holding the issue is better addressed at the class certification stage); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 965 (N.D. Cal. 2013) (adopting substantial similarity standard and holding that "Brazil is not asserting standing to sue over injuries he did not suffer; rather, Brazil asserts that the injuries he suffered as a result of buying the [p]urchased [p]roducts and the injuries suffered by the unnamed class members who purchased the [s]ubstantially [s]imilar [p]roducts are one in the same."). Here, Plaintiffs allege that HP has made identical misrepresentations regarding all of the Products, including those purchased by Plaintiffs and those not. Compl. ¶ 5, 6 7. Under the prevailing view within the Ninth Circuit, Plaintiffs' claims should proceed, and for the same reasons, Plaintiffs also have standing to pursue their claims regarding the Prooducts' fax functions. *Id.* ¶ 10 ("As a result of HP's intentional Design Flaw, consumers are forced to incur unexpected and unnecessary burden and expense in the form of ink purchases or be able to scan or to fax documents despite the fact that ink is not used to accomplish those tasks.")

## III.   **CONCLUSION**

For the reasons stated above, Plaintiffs, individually and on behalf of others similarly situated, respectively requests that the Court deny HP's Motion to Dismiss in full.

Dated: October 17, 2022                    Respectfully submitted,

                                          */s/ Trenton R. Kashima*
                                          Trenton R. Kashima
                                          **MILBERG COLEMAN BRYSON PHILLIPS**
                                          **GROSSMAN PLLC**
                                          402 W. Broadway, Suite 1760
                                          San Diego, CA 92101
                                          T : (866) 252-0878
                                          tkashima@milberg.com

                                          *Attorneys for Plaintiffs*
                                          *and Putative Class*

- 21 -