<pre>
 1                 UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5   GARY FREUD AND WAYNE MCMATH,     )  C-22-03794 BLF
     INDIVIDUALLY AND ON BEHALF OF    )
 6   ALL OTHERS SIMILARLY SITUATED,   )  SAN JOSE, CALIFORNIA
                                      )
 7                  PLAINTIFFS,       )  JANUARY 5, 2023
                                      )
 8             VS.                    )  PAGES 1-28
                                      )
 9   HP INC., D/B/A HP COMPUTING AND  )
     PRINTING INC., A DELAWARE        )
10   CORPORATION,                     )
                                      )
11                  DEFENDANT.        )
     _____ )

12

13

14            TRANSCRIPT OF ZOOM PROCEEDINGS
           BEFORE THE HONORABLE BETH LABSON FREEMAN
15               UNITED STATES DISTRICT JUDGE

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFFS:   MILBERG COLEMAN BRYSON
                           PHILLIPS GROSSMAN PLLC
18                         BY:  TRENTON R. KASHIMA
                           402 WEST BROADWAY, SUITE 1760
19                         SAN DIEGO, CALIFORNIA  92101

20                         BY:  RUSSELL BUSCH
                           800 S. GAY STREET, SUITE 1100
21                         KNOXVILLE, TENNESSEE  37929

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24
            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25             TRANSCRIPT PRODUCED WITH COMPUTER
</pre>

1

2     APPEARANCES (CONTINUED)

3

4     FOR THE DEFENDANT:      MORGAN, LEWIS & BOCKIUS
                              BY:  MOLLY M. LANE
5                                  CHRISTINA CHEN
                              ONE MARKET, SPEAR STREET TOWER
6                             SAN FRANCISCO, CALIFORNIA  94105

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    SAN JOSE, CALIFORNIA                    JANUARY 5, 2023

2                    P R O C E E D I N G S

3         (ZOOM PROCEEDINGS CONVENED AT 9:00 A.M.)

4              THE CLERK:  OKAY, YOUR HONOR, I BELIEVE WE'RE READY

5    TO BEGIN.

6              THE COURT:  GOOD MORNING, EVERYONE.  HAPPY NEW YEAR.

7    I'M SURE WE'RE ALL GLAD TO BE IN OUR OWN LOCATIONS TODAY

8    INSTEAD OF ON THE ROAD.  I HOPE EVERYONE STAYS SAFE.

9         LET'S CALL THE CASE AND GET YOUR APPEARANCES AND WE'LL GET

10   DOWN TO WORK HERE.

11             THE CLERK:  CALLING CASE 22-3794, FREUND, ET AL,

12   VERSUS H.P. INCORPORATED.

13        COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

14   IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANTS.

15             MR. KASHIMA:  GOOD MORNING, YOUR HONOR.

16        TRENTON KASHIMA AND RUSSELL BUSCH ON BEHALF OF PLAINTIFFS.

17             THE COURT:  GOOD MORNING.

18             MS. LANE:  GOOD MORNING, YOUR HONOR.

19        MOLLY LANE AND CHRISTINA CHEN APPEARING ON BEHALF OF

20   DEFENDANT H.P., INC.

21             THE COURT:  GOOD MORNING.

22        ALL RIGHT.  LET ME GIVE YOU A FEW THOUGHTS HERE, AND THEN

23   I'D LIKE TO HEAR YOUR ARGUMENT.

24        THE DEFENDANTS HAVE RAISED A NUMBER OF ISSUES, WHICH IS

25   COMMON IN CASES OF THIS SORT.  THERE ARE A LOT OF CLAIMS THAT

1    HAVE BEEN PLED, SO LET ME GO OVER THEM.

2        ORGANIZING THEM MUCH THE WAY THE DEFENDANTS DID JUST FOR

3    EASE OF FOLLOWING THE MOTION, SOME OF THE -- THERE ARE A NUMBER

4    OF ISSUES RAISED REGARDING THE FRAUD CLAIMS.

5        AND, MR. KASHIMA, I HAVE TO TELL YOU THAT I -- I AGREE

6    WITH THE DEFENSE THAT YOUR OPPOSITION IS MORE GENEROUS IN SOME

7    THEORIES AND EXPLANATION OF THEORIES THAN THE OPERATIVE

8    COMPLAINT IS.  SO TO THE EXTENT THAT TELLS ME YOU COULD AMEND,

9    THAT'S GOOD.

10        BUT IF IT'S NOT IN THE COMPLAINT NOW, IT'S NOT THERE.  SO

11    I WOULD HAVE TO GRANT WITH LEAVE TO AMEND ON SOME OF THOSE

12    ISSUES.

13        I WILL TELL YOU THAT I'M STRUGGLING TO SEE AN AFFIRMATIVE

14    MISREPRESENTATION ALLEGATION HERE.  I THINK THAT YOU HAVE MADE

15    A -- THE BEGINNINGS OF AN OMISSIONS CASE HERE BY STATING THAT

16    THE DOCUMENTATION, OR THE ADVERTISEMENT FOR THESE, FOR THIS

17    PRODUCT IS MAYBE FACTUALLY TRUE, BUT MISLEADING, THEREFORE

18    GIVING RISE TO A POTENTIAL ADMISSION.

19        THAT'S A PERFECTLY VALID THEORY.

20        WHAT I'M MISSING, THOUGH, IS THE TRIGGER OF THE DUTY, AND

21    I THINK MS. LANE WENT THROUGH THAT PRETTY THOROUGHLY.

22        AND THEN I GO -- I GET VERY CONFUSED BECAUSE YOU SUGGEST,

23    OR YOU ARGUE DIRECTLY IN YOUR OPPOSITION, THAT YOU HAVE TWO

24    THEORIES HERE, EITHER THIS WAS AN INTENTIONAL DESIGN SUCH THAT

25    THE PRINTER WAS DESIGNED SO THAT IT WOULD NOT -- I CALL IT A

1    PRINTER -- BUT THE PRODUCT WAS DESIGNED SO THAT IT WOULD NOT

2    WORK WITHOUT A, A FULL INK CARTRIDGE; OR, ALTERNATIVELY, THAT

3    H.P. WAS SURPRISED THAT, GEE, IT DOESN'T WORK, SO IT'S A

4    MANUFACTURING DEFECT.

5        WELL, YOU'RE RIGHT AT ONE LEVEL, THAT YOU CAN PLEAD IN THE

6    ALTERNATIVE, AND SO I DON'T HAVE A PROBLEM WITH THAT.

7        BUT I HAVE TO TELL YOU THAT BY CALLING IT A DESIGN DEFECT

8    THROUGHOUT THE PAPERS, YOU REALLY SHOOT YOURSELF IN THE FOOT ON

9    YOUR BREACH OF WARRANTY CASE, BECAUSE IF IT WAS INTENTIONAL,

10   YOU DON'T HAVE A BREACH OF WARRANTY.

11       IF IT WAS AN UNINTENTIONAL GLITCH IN WHAT THEY HAD

12   INTENDED TO DESIGN, THEN YOU MIGHT HAVE A CLAIM THERE.

13       AND WHAT I'M MISSING FROM THE PLEADING IS THE SEPARATION

14   OF THE THEORIES SO THAT WE CAN REALLY EVALUATE THEM.

15       AND AS I SAID, I DON'T HAVE A PROBLEM AT THIS STAGE WITH

16   YOU HAVING CONFLICTING THEORIES, BUT YOU NEED TO KIND OF GIVE

17   ME A SIGNAL THAT UNDER THIS THEORY, THIS IS WHAT YOU'RE

18   PLEADING, AND UNDER THIS OTHER THEORY, THAT'S WHAT YOU'RE

19   PLEADING.

20       SO THAT'S A CONCERN WITH ALL OF -- MY CONCERN WITH ALL OF

21   THE FRAUD CLAIMS.

22       AND LET ME -- I HAVE TO TALK ALWAYS ABOUT THE ECONOMIC

23   LOSS RULE AND YOUR NEGLIGENT MISREPRESENTATION CLAIM.

24       I'M NOT ACTUALLY SURE YOU'RE SEEKING ANY DAMAGES THAT

25   WOULD BE OUTSIDE OF THE ECONOMIC LOSS RULE, SO WE HAVE TO THINK

1    ABOUT THAT, WHETHER THAT'S EVEN AN ISSUE.

2        I DID TOUCH ON THE ISSUE OF BREACH OF WARRANTY.  IT IS

3    LIMITED TO MANUFACTURING DEFECT, AND YOU MIGHT ACTUALLY WANT TO

4    RENAME THIS, THE DEFECT THAT YOU'VE IDENTIFIED, BECAUSE IF IT

5    IS DESIGN, THEN WE'RE JUST -- YOU'RE OFF THE RAILS ON THAT.

6        ON YOUR EQUITABLE CLAIMS, I DON'T THINK IT'S HARD TO PLEAD

7    AROUND SONNER, BUT YOU'VE GOT TO DO IT, AND I DON'T THINK YOU

8    HAVE.

9        ON YOUR REQUEST FOR INJUNCTIVE RELIEF, I THINK YOU'VE PLED

10   ENOUGH UNDER DAVIDSON, SO I'M OKAY ON THAT.

11       AND IT'S AN INTERESTING ISSUE.  ON THE UNJUST ENRICHMENT

12   CLAIM, YOU DO PLEAD A VALID WARRANTY AND, THEREFORE, YOU CANNOT

13   PLEAD UNJUST ENRICHMENT.

14       SO AS I ALWAYS SAY, I'M WAITING FOR THE LAWYER WHO CAN

15   TELL ME THEY ACTUALLY WENT TO TRIAL ON UNJUST ENRICHMENT.  IT'S

16   A -- I THINK IT'S A VALID CLAIM.  MANY OF MY COLLEAGUES DON'T.

17       BUT THIS IS A THROWAWAY, AND SO THINK ABOUT THAT.  I WILL

18   BE DISMISSING IT BECAUSE YOU ALLEGE A VALID WARRANTY, BUT

19   WE'LL -- YOU KNOW, I WANT YOU TO THINK ABOUT WHETHER IT'S EVEN

20   WORTH THE INK AND THE TIME IT WOULD TAKE YOU TO REPLEAD IT.

21       ON THE STANDING ISSUE FOR THE UNPURCHASED PRODUCTS, YOU

22   DON'T ALLEGE ENOUGH, EVEN UNDER THE SUBSTANTIALLY SIMILAR

23   CONCEPT, FOR ME TO ALLOW THOSE PRODUCTS.  YOU DON'T EVEN TELL

24   ME THAT THEY WORK THE SAME WAY.  YOU DON'T TELL ME THAT THERE'S

25   EVEN BEEN ANY TESTING.

1          AND ON THE ISSUE OF THE FAXING, NEITHER OF THE NAMED

2     PLAINTIFFS INDICATE THAT THEY'VE HAD A PROBLEM WITH NOT BEING

3     ABLE TO SEND A FAX.

4          SO THOSE ARE -- YOU KNOW, I HOPE YOU CAN CORRECT THOSE

5     THINGS, BUT I THINK MS. LANE HAS IDENTIFIED THEM.

6          SO I THINK I'VE COVERED THE ISSUES.  I SORT OF TOOK NOTES

7     ON MY NOTES SO THAT I COULD WALK THROUGH THAT.

8          MS. LANE, THIS IS YOUR MOTION, SO LET ME TURN TO YOU FOR

9     ARGUMENT.

10              MS. LANE:  SURE, YOUR HONOR.

11          I THINK YOU COVERED MOST OF OUR ARGUMENTS AND IT SOUNDS

12     LIKE WE ARE IN ALIGNMENT ON MOST OF THOSE ARGUMENTS.

13          YOU KNOW, THE ONE THING I WOULD ADDRESS IS I DON'T BELIEVE

14     PLAINTIFFS HAVE ALLEGED EITHER THAT H.P. -- ALLEGED ENOUGH

15     FACTS TO DEMONSTRATE THAT H.P. KNEW ABOUT THIS PARTICULAR

16     ALLEGED DEFECT.

17              THE COURT:  RIGHT.

18              MS. LANE:  SO I -- WE WOULD SUBMIT, YOUR HONOR, THAT

19     THE FRAUD CLAIMS WOULD FALL AS A RESULT OF THAT.

20              THE COURT:  OKAY.

21              MS. LANE:  AND THEY HAVE NOT ALLEGED THAT THERE WAS

22     ANY SORT OF SAFETY CONCERN HERE.

23          AND SO IN TERMS OF THE OBLIGATION TO DISCLOSE, THEY

24     HAVEN'T ALLEGED THAT THESE MISREPRESENTATIONS OR ISSUES AROSE

25     DURING THE WARRANTY PERIOD SUCH THAT THEY DON'T NEED TO PLEAD

1    THAT THERE WAS A SAFETY ISSUE, AND CERTAINLY THERE'S NO

2    ALLEGATION, AND I DON'T SEE HOW THIS ARISES TO THE LEVEL OF A

3    SAFETY CONCERN.

4         SO FOR THAT REASON AS WELL, I THINK THAT THEIR FRAUD

5    CLAIMS WOULD FALL.

6         BUT I ASSUME THAT'S ALL SUBSUMED WITHIN YOUR RULING, YOUR

7    HONOR.

8              THE COURT:  YES.

9              MS. LANE:  SO I THINK WE WOULD BE WILLING TO SUBMIT,

10   BUT I'M HAPPY TO ADDRESS ANY COMMENTS THAT PLAINTIFFS' COUNSEL

11   WANT TO MAKE.

12             THE COURT:  GOOD.  THANK YOU.

13        MR. KASHIMA, LET ME HEAR YOUR ARGUMENT.  AS I SAID, I'M

14   GOING TO GIVE YOU LEAVE TO AMEND, SO YOU'RE NOT FIGHTING FOR

15   YOUR LIFE HERE AT ALL, AND I'M SURE YOU ANTICIPATED MUCH OF

16   THIS AFTER READING THE MOTION ITSELF.

17             MR. KASHIMA:  YES, YOUR HONOR.

18        AND SO, YOU KNOW, FIRST LET ME WALK THROUGH SOME OF THE

19   POINTS YOU MADE IN THE ORDER YOU GAVE THEM --

20             THE COURT:  OKAY.

21             MR. KASHIMA:  -- AND SEE IF I CAN GIVE YOU A LITTLE

22   BIT OF CLARIFICATION ON SOME OF THE ISSUES.

23             THE COURT:  GREAT.

24             MR. KASHIMA:  SO I THINK ONE OF THE BIG ISSUES THAT

25   YOU MENTIONED AT THE BEGINNING IS WHETHER THIS IS AN OMISSION

1    CASE OR AN AFFIRMATIVE MISREPRESENTATION CASE, AND FROM

2    PLAINTIFFS' POINT OF VIEW, I THINK WE UNDERSTAND YOUR POSITION,

3    BUT IT FALLS SOMEWHERE IN BETWEEN.

4         IT FALLS PROBABLY BEST BE DESCRIBED AS A PARTIAL

5    REPRESENTATION CASE.

6              THE COURT:  SO THAT'S WHAT WE CALL AN OMISSION CASE.

7    THAT'S WHERE YOU -- IT COULD BE FACTUALLY TRUE, BUT MISLEADING;

8    CORRECT?

9              MR. KASHIMA:  CORRECT.

10             THE COURT:  OKAY.

11             MR. KASHIMA:  SO OTHER NINTH CIRCUIT CASE LAW, SUCH

12   AS, YOU KNOW, WILLIAMS VERSUS GERBER, EVEN FACTUALLY TRUE

13   STATEMENTS CAN BE MISLEADING TO THE REASONABLE CONSUMER.

14             THE COURT:  THAT'S RIGHT.

15             MR. KASHIMA:  AND THAT'S WHAT WE HAVE HERE IS WE HAVE

16   PRINTERS THAT WERE REPRESENTED AS ALL-IN-ONE PRINTERS, BUT

17   CAN'T FUNCTION WITHOUT THE PRINTER PART.

18        SO THE DEFECT HERE IS ACTUALLY EXPLAINED VERY WELL IN THE

19   COMPLAINT, THAT THE PRINTER JUST DOESN'T OPERATE IF IT DOESN'T

20   HAVE INK.

21        AND AT PAGE 9 OF THE COMPLAINT, FOOTNOTE 14, WE

22   SPECIFICALLY MENTION WHAT THAT DEFECT IS.  IT IS SPECIFICALLY

23   AN ERROR CODE THAT PREVENTS THE PRINTER FROM WORKING AT ALL,

24   FUNCTIONING AS ANYTHING, UNTIL THAT ERROR CODE IS CLEARED.

25        NOW, BECAUSE THEY REPRESENT THAT THIS PRODUCT CAN WORK

1    FUNCTIONALLY AND INDEPENDENTLY AS A PRINTER, A FAX MACHINE, A

2    SCANNER, A COPIER --

3            THE COURT:  SO THAT WOULD BE GOING BEYOND WHAT YOU'VE

4    ALLEGED.  THEY DON'T SAY THAT THEY WORK INDEPENDENTLY.  I DON'T

5    REMEMBER THAT BEING ON ANY OF THE LABELS, THE WORD

6    "INDEPENDENT."

7            MR. KASHIMA:  YOU KNOW, I'D HAVE TO GO BACK AND LOOK

8    AT THE LABELS.

9            THE COURT:  OKAY.

10           MR. KASHIMA:  BUT A REASONABLE CONSUMER -- YOU KNOW,

11   BASED ON THEIR LABELING, THEY DO SHOW, YOU KNOW, THIS IS A

12   PRINTER WITH A LITTLE PRINTER ICON, THIS IS A SCANNER WITH A

13   SCANNER ICON, AND TO A REASONABLE CONSUMER, THEY WOULD THINK

14   THAT.

15           THE COURT:  SO I GUESS ALL I'M SAYING IS STAY TRUE TO

16   WHAT THE FACTS ARE HERE, AND I KNOW YOU WILL.

17       I THINK THAT IF YOU CAN ALLEGE FACTS SHOWING THAT H.P.

18   KNEW THAT THEY COULD NOT SCAN AND FAX WITHOUT ADEQUATE INK,

19   THEN YOU'VE MADE OUT THIS, THIS TYPE OF OMISSIONS CASE.

20       I DON'T THINK -- I DON'T BELIEVE IN WILLIAMS VERSUS GERBER

21   THAT THE NINTH CIRCUIT CALLED THAT AN AFFIRMATIVE

22   MISREPRESENTATION.  IT'S A FACTUALLY TRUE STATEMENT THAT

23   BECOMES MISLEADING BECAUSE OF WHAT'S NOT SAID.

24           SO MAYBE WE'RE SPLITTING HAIRS.  WE CAN MOVE ON.

25           BUT I DON'T THINK YOU CAN MAKE OUT THE AFFIRMATIVE

1    MISREPRESENTATION CASE, UNLESS I'M MISREMEMBERING.  I MEAN, IF

2    THE PACKAGE SAYS YOU CAN USE THESE INDEPENDENTLY -- I DON'T

3    THINK IT'S THERE.  I THINK IT REPRESENTS THAT THE PRODUCT HAS

4    ALL OF THOSE FUNCTIONS, WITHOUT ANY PREREQUISITE OF INK BEING

5    IN THE CARTRIDGE.

6        SO THE OTHER -- SO I THINK WE'VE GOT THAT.

7        GO AHEAD.

8        MR. KASHIMA:  SO I THINK THE OTHER POINT THAT WAS

9    MADE WAS KNOWLEDGE AND DUTY.

10        THE COURT:  RIGHT.

11        MR. KASHIMA:  AND SO, YOU KNOW, GOING BACK TO THE

12    DUTY, I THINK BOTH PARTIES CITED THE SMITH VERSUS FORD CASE TO

13    NOTE THAT FRAUDULENT OMISSION CASES CAN ARISE IN A VARIETY OF

14    DIFFERENT SITUATIONS WHERE THE DUTY IS CREATED.

15        THE COURT:  UM-HUM.

16        MR. KASHIMA:  AND ONE OF THEM IS SPECIFICALLY WHEN

17    DEFENDANT MAKES A PARTIAL MISREPRESENTATION, BUT ALSO

18    SUPPRESSES SOME MATERIAL FACTS.

19        AND THIS WOULD BE WHAT WOULD CREATE THE DUTY IN THIS CASE.

20        THE COURT:  SURE.

21        MR. KASHIMA:  BECAUSE DEFENDANT MADE A PARTIAL

22    MISREPRESENTATION, AS WE'VE KIND OF JUST DISCUSSED, THAT OMITS

23    A VERY IMPORTANT FACT, THAT THE PRINTER JUST DOESN'T FUNCTION

24    WITHOUT INK, INCLUDING PARTS OF THE PRINTER THAT DON'T REQUIRE

25    INK TO OPERATE.

1        AS TO THE KNOWLEDGE REQUIREMENT --

2             THE COURT:  WELL, I THINK KNOWLEDGE -- I DON'T THINK

3        IT'S SEPARATE.  I THINK IT DOES REQUIRE A KNOWLEDGE

4        REQUIREMENT.  YOU CAN'T HAVE CONCEALMENT OF SOMETHING YOU DON'T

5        KNOW ABOUT.  SO THEY'RE REALLY ALL IN ONE.

6             MR. KASHIMA:  I TEND TO AGREE WITH YOU, YOUR HONOR.

7        BUT PLAINTIFFS HAVE ACTUALLY ALLEGED THAT AT PARAGRAPHS 47

8        AND 48 OF THE COMPLAINT.  WE HAVE SPECIFICALLY STATED THAT H.P.

9        HAS KNOWN FOR YEARS THAT ITS REPRESENTATIONS AND ADVERTISEMENTS

10       REGARDING ALL-IN-ONE PRINTERS BEING MULTIFUNCTION DEVICES WERE

11       FALSE AND MISLEADING AND FAILED TO DISCLOSE MATERIAL

12       INFORMATION TO CONSUMERS.

13            THE COURT:  BUT THAT'S NOT A FACTUAL PLEADING,

14       THOUGH.  THAT'S A --

15            MR. KASHIMA:  THE NEXT PART IS, YOUR HONOR.

16            THE COURT:  OKAY.

17            MR. KASHIMA:  INDEED, NUMEROUS ARTICLES HAVE BEEN

18       WRITTEN ABOUT THE FACT THAT INK IS NOT REQUIRED TO PERFORM TO

19       SCAN OR FAX A DOCUMENT, AND PRINTER MANUFACTURES LIKE H.P. TOUT

20       THE CONVENIENCE OF ALL-IN-ONE DEVICES AND SELL THEM AS LOSS

21       LEADERS IN ORDER TO CAPTURE THE MORE LUCRATIVE INK BUSINESS.

22            THE COURT:  BUT THAT DOESN'T TELL ME ANYTHING,

23       EITHER.

24            MR. KASHIMA:  THAT COULD HAVE BEEN MORE CLEAR.

25        BUT THEN WE --

1            THE COURT:  SO I WANT YOU TO UNDERSTAND THAT IT'S --

2    YOU CAN PUT AS MANY FOOTNOTES AS YOU WANT IN YOUR COMPLAINT.  I

3    READ ZERO OF THEM.  IT'S AS IF THEY DON'T EXIST.

4            AND IF YOU GIVE ME A WEBSITE TO GO LOOK AT, I WOULD NEVER

5    IN A MILLION YEARS DO THAT.  NEVER.

6            SO YOU CAN QUOTE IT, YOU CAN QUOTE THE PART THAT IS ABOUT

7    THIS, THESE PRINTERS THAT YOUR CLIENTS USED, AND IF THERE ARE

8    ARTICLES PUTTING -- THAT SHOW THAT H.P. WOULD HAVE BEEN ON

9    NOTICE ABOUT THIS PARTICULAR PRODUCT, I THINK THAT WOULD BE A

10   GOOD FACTUAL PLEADING.

11           MR. KASHIMA:  NO PROBLEM, YOUR HONOR.

12           THE COURT:  OKAY.  AND I'M SURE YOU HAVE HANDLED

13   DOZENS OF CASES WHERE YOU COMB THE CONSUMER WEB PAGES AND PICK

14   UP THE COMPLAINTS.  I'M SURE YOU HAVE A WHOLE TEAM OF PEOPLE

15   THAT ARE EXPERT AT DOING THAT.  THAT'S WHAT I WOULD EXPECT HERE

16   AS SOMETHING MORE.

17           BUT THE WAY YOU'VE CITED THESE ARTICLES DOESN'T TELL ME

18   ANYTHING, DOESN'T MAKE ANY SPECIFIC PLEADING, FACTUAL PLEADING,

19   ABOUT THIS PRODUCT THAT WE'RE -- THAT THE COMPLAINT IS ABOUT.

20           MR. KASHIMA:  UNDERSTOOD, YOUR HONOR, AND WE'LL

21   CORRECT THAT.

22           THE COURT:  ALL RIGHT.

23           MR. KASHIMA:  I THINK THAT DOES NEED TO BE AMENDED

24   BASED ON WHAT YOU JUST TOLD US.

25           WE'LL MAKE SURE THAT WE DON'T QUOTE SIGNIFICANT

1 INFORMATION THROUGH FOOTNOTES.

2   THE COURT:  THANK YOU.

3   MR. KASHIMA:  BECAUSE THE CITATIONS HERE DO LEAD TO

4 ARTICLES, AND ALSO CONSUMER COMPLAINTS ON DEFENDANT'S OWN

5 WEBSITE NOTING THIS PROBLEM.

6   THE COURT:  SO --

7   MR. KASHIMA:  SO WE'LL ADD THAT, TOO.

8   THE COURT:  I'M SURE YOU'VE DONE THIS IN MANY CASES.

9 I'M USED TO A SERIES OF BULLET POINTS THAT ACTUALLY LAY THEM

10 OUT.

11   MR. KASHIMA:  YES.

12   THE COURT:  AND SO, YOU KNOW, IT'S A PAGE OR TWO THAT

13 YOU HAVE TO ADD, AND I THINK THAT WOULD GO A LONG WAY, BECAUSE

14 MS. LANE SUGGESTS THAT THE ARTICLES ARE GENERIC, AND I'M NOT

15 ABOUT TO READ THE ARTICLES AND MAKE THAT DECISION.

16  SO --

17   MR. KASHIMA:  OKAY, YOUR HONOR.  WE UNDERSTAND THAT

18 AND WE CAN DEFINITELY AMEND --

19   THE COURT:  OKAY.

20   MR. KASHIMA:  -- TO ADD THOSE ADDITIONAL FACTS.

21  AND AS A MATTER OF FACT, I THINK WE'LL BE PREPARED TO

22 AMEND THAT DEFENDANT'S OWN EMPLOYEES ADMIT THAT THIS IS A

23 PROBLEM.

24   THE COURT:  OKAY.

25   MR. KASHIMA:  AND SO MOVING ON TO THE NEXT BIG ISSUE

1    IS ECONOMIC LOSS RULE.

2             THE COURT:  RIGHT.

3             MR. KASHIMA:  AND SO THE -- I'LL BE THE FIRST TO

4    ADMIT, THE CASE LAW INVOLVING ECONOMIC LOSS RULE IS NOT THE

5    CLEAREST IN THE WORLD.

6             THE COURT:  WELL, THE CALIFORNIA SUPREME COURT HAS A

7    CASE BEFORE IT ON THE ECONOMIC LOSS RULE ACTUALLY.

8             MR. KASHIMA:  SPECIFICALLY ON NEGLIGENT

9    MISREPRESENTATION?

10            THE COURT:  YOU KNOW, I -- I ISSUED AN ORDER ON THIS

11   JUST RECENTLY.  I THINK THAT -- I'M NOT SURE THE ECONOMIC LOSS

12   RULE IS EVER APPLIED TO NEGLIGENT MISREPRESENTATION THAT TAKES

13   PLACE BEFORE THE PRODUCT IS PURCHASED.

14      AND SO I'M NOT REALLY -- I'M NOT HAVING A PROBLEM WITH

15   THAT.

16      BUT I'M NOT SURE YOU'RE ASKING FOR ANY DAMAGES THAT

17   WOULD -- THAT ARE ONLY TORT DAMAGES.  I MEAN, YOU'RE ASKING

18   ESSENTIALLY FOR THE DIFFERENCE BETWEEN THE VALUE OF WHAT YOU

19   GOT AND WHAT YOU PAID.  RIGHT?

20            MR. KASHIMA:  AND THAT'S TRUE, YOUR HONOR.  WE'RE

21   ASKING FOR DAMAGES THAT RESULTED FROM THE DAMAGE TO THE

22   PRODUCT.

23            THE COURT:  YEAH.

24            MR. KASHIMA:  SO IT'S QUESTIONABLE WHETHER THE

25   ECONOMIC LOSS RULE APPLIES ANYWAYS.

1          THE COURT:  YEAH.

2          MR. KASHIMA:  BUT EVEN IF IT DOES, THE ECONOMIC LOSS

3     RULE DOESN'T APPLY TO FRAUD, AND THE CALIFORNIA COURT MAKES

4     THIS EXTREMELY CLEAR IN THE CASE CITED BY DEFENDANT, THE

5     ROBINSON HELICOPTER VERSUS DANA CORPORATION CASE.

6          AND OTHER COURTS HAVE NOTED THAT NEGLIGENT

7     MISREPRESENTATION IS A SPECIES OF FRAUD THAT IS EXTREMELY CLOSE

8     ACTUALLY TO CALIFORNIA'S CAUSE OF ACTION FOR DECEIT.

9          AND, INDEED, DEFENDANTS ACTUALLY KIND OF AGREE WITH US

10    HERE.  IF WE LOOK AT THE MOTION AT PAGE 7 AND 8, THEY'RE EVEN

11    ASKING THIS CASE -- THIS COURT TO APPLY RULE 9 TO THE NEGLIGENT

12    MISREPRESENTATION CLAIMS THAT THEY KNEW THEY SOUND IN FRAUD.

13          SO, YOU KNOW --

14          THE COURT:  SO I THINK THAT A LOT OF THIS WILL BE

15    HELPED WHEN YOU MAKE THE AMENDMENT TO THE FRAUD CLAIMS AND

16    REALLY DELINEATE BETWEEN -- OF WHAT KIND OF FRAUD YOU'RE

17    TALKING ABOUT.  IS IT A -- IS IT AN OMISSION OR IS IT AN

18    AFFIRMATIVE MISREP?

19          I'M NOT TELLING YOU THAT -- I'M NOT FORBIDDING YOU FROM

20    AMENDING ON THE AFFIRMATIVE MISREP.  I JUST DON'T THINK YOU'VE

21    ALLEGED ONE YET.

22          AND I KNOW YOU'LL GIVE IT CAREFUL THOUGHT AS TO WHETHER

23    THAT'S A ROAD YOU WANT TO GO DOWN.

24          MR. KASHIMA:  NO PROBLEM, YOUR HONOR.

25          AND WITH REST OF THE POINTS, I DO BELIEVE -- YOU KNOW, I

1   UNDERSTAND WITH SONNER THAT WE NEED TO PROBABLY ALLEGE A LITTLE

2   BIT MORE.  IT'S NOT A DIFFICULT ALLEGATION TO MAKE, AND HERE IT

3   REALLY ISN'T A DIFFICULT ALLEGATION TO MAKE BECAUSE DEFENSE

4   COUNSEL IS TRYING TO CLAIM THAT THERE IS NO WARRANTY CLAIM,

5   THERE IS NO DAMAGES CLAIM HERE.

6        SO TO THE EXTENT THERE ISN'T, THE INJUNCTIVE -- I MEAN THE

7   EQUITABLE RELIEF CLAIMS COULD MOVE FORWARD.

8        NOW, THAT KIND OF LEAVES US WITH THE WARRANTY CLAIM, AND

9   THIS IS THE MOST DIFFICULT ONE --

10             THE COURT:  RIGHT.

11             MR. KASHIMA:  -- BECAUSE AS THE COURT MENTIONS, THERE

12   IS THIS DICHOTOMY BETWEEN IS IT A DESIGN MANUFACTURING DEFECT

13   OR IS IT INTENTIONAL CONDUCT?

14        AND THIS IS KIND OF DIFFICULT FROM PLAINTIFFS' SIDE, TOO,

15   AND WE MIGHT HAVE TO PLEAD THIS IN THE ALTERNATIVE AND PLEAD IT

16   A LITTLE BIT MORE CAREFULLY FOR THE COURT --

17             THE COURT:  OKAY.

18             MR. KASHIMA:  -- BECAUSE WE DON'T KNOW WHAT THE

19   ORIGIN OF THIS PARTICULAR SOFTWARE CODE IS.  IT MIGHT HAVE BEEN

20   ORIGINALLY A DEFECT THAT NEVER GOT CORRECTED BECAUSE DEFENDANT

21   FOUND OUT IT ENCOURAGED PEOPLE TO BUY MORE INK.

22        OR, ALTERNATIVELY, IT COULD HAVE BEEN, YOU KNOW, A

23   FEATURE, NOT AN ERROR.

24        SO IT COULD HAVE BEEN SOMETHING THAT THEY PUT IN THE FIRST

25   PLACE IN ORDER TO ENCOURAGE PEOPLE TO BUY MORE INK.

1          AND SO WE'LL DO A LITTLE BIT MORE RESEARCH ON THAT, BUT TO

2     THE EXTENT WE PLEAD --

3               THE COURT:  YEAH.

4               MR. KASHIMA:  -- THE DEFECT CLAIM, WE'LL PLEAD IT IN

5      THE ALTERNATIVE.

6               THE COURT:  OKAY.  SO IT ALSO RAISES AN ISSUE THAT I

7      DIDN'T ADDRESS THAT MS. LANE PUTS IN HER PAPERS.  SHE ARGUES

8      THAT YOU HAVE NOT IDENTIFIED THE SOURCE OF THE DEFECT.  YOU'VE

9      JUST NOW SAID IT WAS SOFTWARE CODE, AND SHE SUGGESTS, WAS IT

10     HARDWARE, WAS IT SOFTWARE, WHAT WAS IT?

11          IT LOOKS LIKE YOU REALLY BELIEVE THAT IT WAS A SOFTWARE

12     ISSUE.  WHETHER IT WAS INTENTIONALLY EMBEDDED OR MISTAKENLY

13     CONFIGURED, YOU KNOW, THOSE ARE YOUR ALTERNATE THEORIES.  BUT I

14     THINK YOU SHOULD ALLEGE THAT IT IS ON INFORMATION AND BELIEF

15     THAT IT'S A SOFTWARE ERROR.

16               MR. KASHIMA:  YES, AND WE CAN DO THAT, AND WE DO

17     ACTUALLY BELIEVE IT.

18               THE COURT:  OKAY.

19               MR. KASHIMA:  AND I THINK IT'S RAISED FROM AN

20     INFERENCE IN THE COMPLAINT THAT BECAUSE OF THAT -- THIS WHOLE

21     KIND OF DEFECT, INTENTIONAL CONDUCT, WHATEVER WE CALL IT,

22     ARISES FROM AN ERROR CODE THAT JUST SIMPLY CAN'T BE CLEARED

23     ONCE INK RUNS LOW.

24               THE COURT:  YEAH, OKAY.

25          AND I WANT YOU TO KNOW, MS. LANE HAD SOME ARGUMENT ABOUT

1        THE FACT THAT, IN FACT, THERE'S A WORKAROUND.

2            BUT I'M NOT CREDITING THE ISSUE THAT SOME PEOPLE HAVE

3        FIGURED OUT HOW TO HACK THE PRODUCT SO THAT YOU CAN WORK AROUND

4        THIS.  YOU DON'T NEED TO WORRY ABOUT THAT.  IT'S INTERESTING

5        THAT IT CAN BE WORKED AROUND, BUT I CAN'T TAKE -- I MEAN, I

6        CAN'T EVEN CREDIT THAT AS BEING ACCURATE.  IT'S WHAT SOMEBODY

7        SAID ON SOME WEBSITE ABOUT HOW TO WORK AROUND IT.

8            SO YOU DON'T NEED TO WORRY ABOUT THAT.

9                MR. KASHIMA:  NO PROBLEM.  AND IT IS KIND OF

10       INTERESTING, YOUR HONOR, BECAUSE THE WORKAROUNDS ARE PRETTY

11       EXTREME.

12               THE COURT:  ARE THEY?

13               MR. KASHIMA:  IT INVOLVES USING CABLES THAT AREN'T

14       PROVIDED WITH THE PRODUCT, YOU KNOW, HARD RESETTING THE

15       PRODUCT.  SO, YOU KNOW, THESE ARE NOT NORMAL OPERATIONS.

16               THE COURT:  OKAY.

17               MR. KASHIMA:  AND THAT'S SOMETHING WE CAN INCLUDE IN

18       THE COMPLAINT.

19               THE COURT:  ALL RIGHT.

20           THEN LET'S -- I THINK THE LAST THING I WANT TO HEAR YOU

21       ADDRESS IS THE STANDING ISSUE ON THE UNPURCHASED PRODUCTS AND

22       THE FAXING PROBLEM.

23               MR. KASHIMA:  OKAY.

24           SO, YOUR HONOR, LET'S START WITH THE FAXING ISSUE FIRST

25       AND USE THAT TO LEAD INTO THE OTHER PRODUCTS.

1          THE COURT:  OKAY.

2          MR. KASHIMA:  SO THE FAXING ISSUE, WHETHER IT'S

3     SCANNING OR FAXING, THEY ALL BASE OFF THE SAME BASICALLY

4     DEFECT, WHICH RENDERS THE PRINTER COMPLETELY INOPERABLE FOR ALL

5     INTENTS AND PURPOSES ONCE THIS ERROR CODE IS ESTABLISHED.

6          AND SO IT RENDERS IT NOT ONLY INOPERABLE FOR PRINTING, BUT

7     FOR ALL NON-PRINTING PROCESSES.

8          SO AT THIS POINT, THE ERROR, WHETHER IT'S BEING USED FOR

9     SCANNING OR FAXING, ARISES FROM THE SAME ISSUE, SUBSTANTIALLY

10    THE SAME ISSUES, SAME DEFECT, AND ENGENDERS THE SAME

11    MISREPRESENTATIONS.

12         AND I'M NOT SURE IF THERE IS A SCANNER THAT JUST HAS A

13    FAX, BUT NOT THE SCANNING FUNCTION.  I DON'T THINK THERE IS, SO

14    THIS MIGHT BE A MOOT POINT.

15          THE COURT:  YEAH.

16          MR. KASHIMA:  BECAUSE THE MISREPRESENTATION'S GOING

17    TO BE THE SAME FOR EACH OF THE PRODUCTS.

18          THE COURT:  NOBODY FAXES ANYMORE, ANYWAY.

19          MR. KASHIMA:  YEAH.

20          THE COURT:  OKAY.  I THOUGHT THAT WAS THE LESS

21    SIGNIFICANT POINT.

22         I THINK THE UNPURCHASED PRODUCTS IS A SERIOUS ISSUE HERE.

23    I JUST DON'T KNOW ANYTHING ABOUT THEM.  THE CLASSIC CASE WAS

24    THE CHOBANI YOGURT CASE IN DIFFERENT FLAVORS WHERE IT DIDN'T

25    MATTER.

1    BUT HERE I THINK -- I MEAN, AS MS. LANE POINTS OUT, THESE

2    DIFFERENT PRODUCTS ARE CONFIGURED DIFFERENTLY.  SOME HAVE FLAT

3    BED SCANNERS, SOME HAVE SOMETHING ELSE.  IT'S -- YOU HAVEN'T

4    GIVEN ME ANY FACTS TO EVEN SHOW THAT THEY'RE REMOTELY SIMILAR

5    EXCEPT IN THEIR ULTIMATE FUNCTIONS.

6    MR. KASHIMA:  YES, YOUR HONOR.  WE CAN DO THAT.

7    BUT, YOU KNOW, WHAT IS IMPORTANT TO MENTION HERE IS, YOU

8    KNOW, WITH -- ESPECIALLY IN THE CHOBANI CASE OR THE CLAY VERSUS

9    CYTOSPORT CASE THAT ALSO INVOLVED A NUMBER OF DIFFERENT

10   PRODUCTS AND DIFFERENT FLAVORS, THE ISSUE IS WHETHER THE

11   MATERIAL PORTIONS OF THE PRODUCT ARE SIMILAR.

12   AND SO FOR THE --

13   THE COURT:  BUT YOU HAVEN'T ALLEGED THAT.

14   MR. KASHIMA:  UM-HUM.  AND SO IN THIS CASE, YOU KNOW,

15   A LOT OF THE CONFIGURATIONS THAT THE DEFENDANT IS TALKING

16   ABOUT, WHETHER THERE'S A FLAT BED OR FEED THROUGH SCANNER, HAS

17   USB CAPABILITY OR OTHER CAPABILITIES, THAT DOESN'T CHANGE THE

18   FACT THAT THE ERROR CODE WOULD PREVENT THE USE OF ANY OF THOSE

19   PRODUCTS.

20   THE COURT:  SO AM I RIGHT THAT SOMEBODY HAS TESTED

21   THESE OTHER PRODUCTS AND YOU'RE SURE THAT THEY GET THE SAME

22   ERROR CODE?  OR ARE YOU JUST LUMPING THEM TOGETHER AND WAITING

23   TO FIND OUT?

24   MR. KASHIMA:  NO, YOUR HONOR.  THEY HAVE BEEN TESTED.

25   THE COURT:  OKAY.

1          MR. KASHIMA:  BUT THE BIGGER ISSUE IS -- AND I THINK

2     WE'LL PUT IN MORE FACTS -- IS THIS ISSUE IS A SYSTEMIC ISSUE

3     THAT ARISES FOR ALL OF H.P. PRODUCTS BECAUSE IT'S SOFTWARE

4     BASED.  AND I DON'T BELIEVE THEY CREATE NEW SOFTWARE FOR EACH

5     OF THESE PRODUCTS.

6          THE COURT:  WELL, THEN I THINK IT'LL BE REALLY

7     HELPFUL WHEN YOU AMEND TO ALLEGE THAT THE DEFECT IS IN THE

8     SOFTWARE, AND THEN YOU CAN CARRY THOSE FACTUAL ALLEGATIONS

9     THROUGH TO INDICATE THAT YOU BELIEVE THAT THE SOFTWARE IS

10    IDENTICAL OR SIMILAR OR WHATEVER IN THESE OTHER PRODUCTS.  THEN

11    WE CAN EVALUATE THE QUALITY OF THAT PLEADING.

12        SO I THINK THAT BY IDENTIFYING EXPRESSLY THE SOURCE OF THE

13    DEFECT, I THINK THAT MAY HELP A LOT.

14         MR. KASHIMA:  UNDERSTOOD, YOUR HONOR.

15         THE COURT:  OKAY.

16         MR. KASHIMA:  SO IT WON'T BE DIFFICULT FOR US TO

17    PLEAD THAT.

18         THE COURT:  OKAY.

19         MR. KASHIMA:  AND, YOU KNOW, AGAIN, SOME OF THIS

20    INFORMATION WAS PROVIDED IN THE FOOTNOTES.  WE'LL RAISE THAT TO

21    THE BODY OF THE COMPLAINT.

22        I UNDERSTAND YOUR POSITION.  I USED TO TEACH AND OFTEN MY

23    STUDENTS PUT NOTES AND I WOULD GLANCE OVER THEM.  SO I

24    UNDERSTAND YOUR POSITION ON THAT ONE.

25         THE COURT:  SO I JUST WANT -- YOU KNOW, YOUR

1    FOOTNOTES DON'T ACTUALLY PROVIDE ANY INFORMATION.  THEY PROVIDE

2    WEBSITES.  I COULDN'T EVEN -- I MEAN, I GUESS WHAT I'M GOING TO

3    SAY TO YOU IS THAT'S LIKE SAYING NOTHING.

4         FIRST OF ALL, EVEN IF YOU DIRECT ME TO AN ARTICLE, WHAT AM

5    I SUPPOSED TO READ IN THE ARTICLE?

6         MR. KASHIMA:  NO, YOUR HONOR.

7         THE COURT:  HOW DO I KNOW THAT -- AND I'M LOOKING AT

8    YOUR FOOTNOTE 10, LAST VISITED DECEMBER 3RD, 2021.  HOW DO I

9    KNOW IT SAYS THE SAME THING AS WHEN YOU LAST VISITED IT OVER A

10   YEAR AGO?

11        MR. KASHIMA:  UNDERSTOOD, YOUR HONOR.

12        THE COURT:  SO THAT'S REALLY -- YOU KNOW, I

13   APPRECIATE THE ENORMOUS AMOUNT OF RESEARCH AND INVESTIGATION

14   THAT YOU'VE PUT INTO THIS, AND I RESPECT THAT.

15        AND CLEARLY, I MEAN, YOU KNOW, THE NUMBER OF FOOTNOTES

16   IS -- AND SUPPORT THAT YOU SUBMIT SHOWS THE EXTRAORDINARY

17   AMOUNT OF WORK YOU PUT IN.  SO IT'S JUST THAT THAT'S NOT

18   PLEADING FACTS.

19        MR. KASHIMA:  UNDERSTOOD, YOUR HONOR.

20        THE COURT:  GOOD.  OKAY.

21        ALL RIGHT.  MS. LANE, DID YOU WANT TO FOLLOW UP ON ANY OF

22   THESE POINTS?

23        MS. LANE:  I CERTAINLY HAVE SOME FOLLOW-UP, YOUR

24   HONOR, BUT I DON'T -- IT SOUNDS LIKE WE ARE ALIGNED ON THIS.

25        THE COURT:  OKAY.

1          MS. LANE:  AND I CAN ADDRESS -- FOR EXAMPLE, WE HAVE

2     A DIFFERENT VIEW ON THE ECONOMIC LOSS DOCTRINE ISSUE, AND I CAN

3     CERTAINLY GET INTO THAT.

4          THE COURT:  WHY DON'T YOU GIVE ME YOUR COMMENTS ON

5     ECONOMIC LOSS DOCTRINE?

6          MS. LANE:  SURE.

7        SO I THINK, YOUR HONOR, IF YOU TAKE A LOOK AT THE

8     ROBINSON HELICOPTER CASE, WHICH IS REALLY THE SEMINAL CASE IN

9     CALIFORNIA ON THE ECONOMIC LOSS DOCTRINE, WHAT THAT CASE HELD

10    WAS THAT THE ECONOMIC LOSS DOCTRINE DOES NOT, DOES NOT IMPACT

11    CLAIMS FOR FRAUD THAT ARE BASED ON SEPARATE REPRESENTATIONS,

12    SEPARATE APART FROM THE REPRESENTATIONS THAT WERE MADE IN

13    CONNECTION WITH THE CONTRACT.

14         SO, FOR EXAMPLE, IN THAT CASE, THERE WERE REPRESENTATIONS

15    MADE BY THE DEFENDANT AFTER THE CONTRACT WAS ENTERED INTO

16    REGARDING THE -- LET ME MAKE SURE I HAVE THE FACTS CORRECT

17    HERE -- REGARDING THE CERTIFICATE OF COMPLIANCE THAT WAS

18    SUBMITTED IN CONNECTION WITH THE CLUTCHES THAT WERE AT ISSUE.

19         THERE WERE ALSO REPRESENTATIONS MADE REGARDING THE SERIAL

20    NUMBERS OF THE CLUTCHES THAT WERE AT ISSUE, AND THOSE

21    REPRESENTATIONS OCCURRED AFTER THE FACT.

22         THE ROBINSON HELICOPTER CASE ALSO SAID THAT TO THE EXTENT

23    THAT THERE ARE INTENTIONAL MISREPRESENTATIONS THAT ARE MADE IN

24    CONNECTION WITH THE EXECUTION OF A CONTRACT, THAT MAY FALL

25    OUTSIDE THE ECONOMIC LOSS DOCTRINE.

1        BUT IF YOU TAKE A LOOK AT THE CASE THAT'S CITED IN OUR

2   PAPERS, THE SOIL RETENTION PRODUCTS VERSUS BRENTWOOD INDUSTRIES

3   CASE, AND THAT'S AT 521 F.SUPP. 3D 929 AT 953, THE COURT THERE

4   NOTED THAT COURTS HAVE DISMISSED NEGLIGENT MISREPRESENTATION

5   CLAIMS WHERE THE REPRESENTATIONS AT ISSUE WERE THOSE THAT WERE

6   MADE IN THE FORMATION OF THE CONTRACT.  THAT DECISION WAS CITED

7   IN THE BRET HARTE UNION CASE THAT THE PLAINTIFFS RELY UPON.

8        SO FROM OUR PERSPECTIVE, YOUR HONOR, TO THE EXTENT THE

9   ALLEGED MISREPRESENTATIONS WERE MADE IN CONNECTION WITH THE

10  FORMATION OF THE CONTRACT, THOSE ARE SUBJECT TO THE ECONOMIC

11  LOSS DOCTRINE.

12       IT'S ONLY SEPARATE REPRESENTATIONS THAT ARE NOT IN

13  CONNECTION WITH THE EXECUTION OF THE CONTRACT, OR INTENTIONAL

14  MISREPRESENTATIONS THAT MAY, THAT MAY FALL OUTSIDE THAT

15  DOCTRINE.

16       SO I DON'T THINK IT'S AS EASY TO SAY THAT ECONOMIC LOSS

17  DOCTRINE DOES NOT APPLY TO NEGLIGENT MISREPRESENTATION BECAUSE

18  THE CASE LAW CERTAINLY DOESN'T BEAR THAT OUT.

19            THE COURT:  SO LET ME JUST FOLLOW UP, AS I DID WITH

20   MR. KASHIMA.

21       IF THE ECONOMIC LOSS RULE APPLIES AS YOU ARGUE, WHAT

22  DIFFERENCE IN THE DAMAGES REQUESTED BY PLAINTIFF WOULD THERE

23  BE?  BECAUSE I READ THE COMPLAINT AS ASKING FOR THE DIFFERENCE

24  BETWEEN WHAT THE PLAINTIFF PAID AND WHAT THE PRODUCT WAS WORTH,

25  AND THAT WOULD BE -- THAT WOULD BE ACCEPTABLE UNDER THE

1    ECONOMIC LOSS RULE, WOULDN'T IT?

2              MS. LANE:  I AGREE WITH YOU ON THAT, YOUR HONOR.

3         I GUESS FROM OUR PERSPECTIVE, IT COMES DOWN TO AN ISSUE OF

4    PROOF.  IT COMES DOWN TO AN ISSUE OF DISCOVERY.

5         AND WE WOULD SUBMIT THAT THAT'S A DIFFERENT BURDEN ON

6    THOSE CLAIMS, AND IF WE'RE JUST SHOOTING AT ONE, IT MAKES IT A

7    LOT EASIER THAN HAVING TO ADDRESS TWO SEPARATE CLAIMS WHERE THE

8    RECOVERY IS REALLY THE SAME.

9         AND WHAT THE ECONOMIC LOSS DOCTRINE WAS DESIGNED TO

10   PREVENT WAS A SITUATION WHERE YOU'RE TRYING TO USE TORT CLAIMS

11   TO RECOVER THE VERY SAME DAMAGES THAT YOU'RE ENTITLED TO UNDER

12   A BREACH OF CONTRACT CLAIM, AND THAT'S EXACTLY WHAT'S HAPPENING

13   HERE.

14             THE COURT:  OKAY.

15             MS. LANE:  SO THAT'S OUR POSITION ON THAT, YOUR

16   HONOR.

17             THE COURT:  THAT'S HELPFUL, AND I DO APPRECIATE THAT.

18        OKAY.  ALL RIGHT.

19        SO, MR. KASHIMA, WE HAVE A COUPLE THINGS HERE.  FIRST OF

20   ALL, I WANT TO GIVE YOU ADEQUATE TIME TO PREPARE AN AMENDED

21   PLEADING, BECAUSE MY VIEW IS THAT YOUR CLAIMS ARE GOING TO BE

22   IN OR OUT AT THE NEXT -- THAT'S OUR GOAL -- AT THE NEXT MOTION

23   TO DISMISS, OR MS. LANE WILL SIMPLY ADVISE HER CLIENT TO ANSWER

24   THE COMPLAINT BECAUSE IT'S BEYOND DISPUTE THAT YOU'VE MADE YOUR

25   CLAIMS.

1        SO HOW MUCH TIME -- AND THAT WOULD BE FROM THE DATE OF MY

2    WRITTEN ORDER.  BUT HOW MUCH TIME WOULD YOU LIKE?

3            MR. KASHIMA:  ASSUMING YOUR WRITTEN ORDER IS GOING TO

4    BE FORTHCOMING, I THINK WE ONLY NEED FOUR WEEKS TO FILE AN

5    AMENDED COMPLAINT.

6            THE COURT:  OKAY.

7            MR. KASHIMA:  THE ONLY REASON I'M LEAVING A LITTLE

8    BIT OF WIGGLE ROOM IS SOMEHOW I GOT SADDLED WITH A BUNCH OF

9    DEPOSITIONS EARLY NEXT MONTH, SO I WANT TO LEAVE A LITTLE BIT

10   OF WIGGLE ROOM ASSUMING THAT THE ORDER COMES OUT SHORTLY.

11           THE COURT:  OKAY.  SO I'M JUST GOING TO TELL YOU, I

12   WENT THROUGH THIS IN PRETTY GOOD DETAIL, I THINK, SO I'M GOING

13   TO ISSUE A FAIRLY BRIEF ORDER AND REFER YOU TO THE TRANSCRIPT

14   OF THIS PROCEEDING, BECAUSE I THINK WE'VE HAD A GOOD

15   OPPORTUNITY TO TALK IT OUT, AND YOU'RE AN EXPERT IN THIS FIELD,

16   SO I THINK YOU CERTAINLY WERE PROBABLY ANTICIPATING MANY OF MY

17   COMMENTS AND ARE READY TO MAKE YOUR AMENDMENTS.

18       ALL RIGHT.  AND JUST SO THAT YOU KNOW, IT WILL BE FOUR

19   WEEKS FROM THE DATE OF MY WRITTEN ORDER, NOT FROM TODAY, SO

20   THAT'LL GIVE YOU A LITTLE BIT MORE TIME AS WELL.

21       IT'S ALWAYS MY HOPE THAT I CAN GET THIS OUT IN THE NEXT

22   WEEK, BUT WE'RE ALL -- WE'RE STILL TRYING TO MANAGE A LITTLE

23   BIT WITH THE STORMS AND GET BACK FROM THE HOLIDAYS, SO I CAN'T

24   BE QUITE SURE WHETHER IT'LL BE NEXT WEEK OR THE WEEK AFTER.

25           ALL RIGHT.  THANK YOU ALL, AND I WILL SEE YOU AT THE NEXT

1    HEARING.

2              MR. KASHIMA:  THANK YOU, YOUR HONOR.

3              MS. LANE:  THANK YOU, YOUR HONOR.

4              THE COURT:  THANK YOU.

5         (THE PROCEEDINGS WERE CONCLUDED AT 9:32 A.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

      LEE-ANNE SHORTRIDGE, CSR, CRR

17    CERTIFICATE NUMBER 9595

18            DATED:  JANUARY 19, 2023

19

20

21

22

23

24

25