Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
tkashima@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARY FREUND** and **WAYNE MCMATH**, *individually and on behalf of all others similarly situated*,<br><br>  Plaintiffs,<br><br> v.<br><br> **HP, INC**. d/b/a **HP COMPUTING AND PRINTING INC**., a Delaware Corporation,<br><br>  Defendants. | Case No.: 22-cv-03794-BLF<br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br> 1. Fraudulent Omission;<br> 2. Violation of Cal. Civ. Code §§ 1750, *et seq.*;<br> 3. Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*;<br> 4. Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*;<br> 5. Violations of Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et seq.*;<br> 6. Violations of Minnesota's False Advertising Law, Minn. Stat. § 325F.67, *et seq.*;<br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Gary Freund and Wayne McMath, individually and on behalf of all others similarly situated ("Plaintiffs"), by and through undersigned counsel, bring this class action lawsuit against Defendant HP, Inc. d/b/a HP Computing and Printing Inc. ("HP" or "Defendant"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## INTRODUCTION

1.  Printer ink—which can exceed $80 an ounce—is more expensive than many cherished luxury items including silver, caviar and champagne. *See* Lamont Wood, *Printer Ink: Tired of Feeding the Cash Cow? InkJet refills typically cost significantly more than the printer itself*, COMPUTERWORLD, (Mar. 28, 2012), available at https://www.computerworld.com /article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 6, 2021).

2.  The not-so-hidden secret in the retail printer industry is that manufacturers like HP are very willing to lose money on the sale of printers in order to force consumers to purchase incredibly over-priced ink cartridges in perpetuity. For instance, a consumer can purchase an HP Envy 4520 All-in-One printer that costs HP roughly $120 to build for around $70 at various retailers. *See* Tercius Bufete, *Why is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018), available at https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/ (last visited Dec. 6, 2021); *see also* https://www.yoyoink.com /articles/why-is-printer-ink-expensive/ (last visited Dec. 6, 2021). Akin to the razor and blade business model, consumers are incented to purchase inkjet printers with extremely low purchase prices provided that those "loss leader" purchases will lead to billions of dollars in ink sales.

3.  The loss leader approach is particularly acute with all-in-one printers. According to HP, an All-in-One printer—also known as a Multi-Functional Printer—is a device which combines the capabilities of several separate devices into one machine, specifically, printing, scanning, copying and (depending on the model) faxing. *See* https://www.hp.com/us-en/shop /tech-takes/best-all-in-one-printers (last visited Dec. 3, 2021).

4.  On its website, HP boldly proclaims that "these [All-in-One] printers are

2

convenient because you don't have to buy a separate device for each task." *Id.* HP's representations regarding the capability and functionality of its All-in-One Printers is *not* limited to those on its website; rather, throughout its marketing and advertising, including on the product packaging for its All-in-One Printers, HP claims that the All-in-One Printers are multifunction, "all-in-one"devices that can print, copy, scan and in some cases, fax documents.

5. What HP fails to disclose is that, if even one of the ink cartridges is too low, empty, or damaged, the scanning function on the "all-in-one" printer will be disabled and will not work as advertised. None of HP's advertising or marketing materials disclose the basic fact that its All-in-One Printers do ***not*** scan documents when the devices have low or empty ink cartridges.

6. It is well-documented that ink is not required in order to scan or to fax a document, and it is certainly possible to manufacture an All-in-One printer that scans or faxes when the device is out of ink. Indeed, HP designs its All-in-One printer products so they will not work without ink. Yet, HP does not disclose this fact to consumers.

7. As a result of HP's omissions, consumers are forced to incur unexpected and unnecessary burden and expense in the form of ink purchases or be unable to scan or to fax documents despite the fact that ink is not used to accomplish those tasks. Even were it technically possible to scan a document without *all* ink cartridges present, HP does not disclose any "workaround" to consumers in any of the product packaging nor in any of HP's advertising and marketing materials regarding its multi-function devices. Accordingly, purchasers of HP All-in-One Printers have been harmed as a result of its omissions.

8. HP's intent is clear, namely, to have their multi-function devices revert to an inoperable "error state" so that a large subset of those multi-function device purchasers will purchase additional overpriced and unnecessary ink cartridges in order to be able to scan and to fax documents. The end goal is to increase the sales of one HP's largest profit makers, ink cartridges, by any and all means.

9. Plaintiffs bring this class action lawsuit because HP has intentionally manipulated the functionality of its "All-in-One" Printers in order to impermissibly increase the number of

3

ink cartridges purchased by the unsuspecting public. In addition to monetary damages, Plaintiffs seek, individually and on behalf of all those similarly situated, injunctive reliefrequiring HP to immediately cease its misleading advertising and marketing campaign and to engage in a corrective campaign to inform consumers of the misleading advertising.

## THE PARTIES

10.     Plaintiff Gary Freund is and has been at all relevant times a resident of San Francisco, California.

11.     Plaintiff Wayne McMath is and has been at all relevant times a resident of Minneapolis, Minnesota.

12.     Defendant HP is a global Fortune 500 company and one of the world's largest manufacturers and sellers of computers.

13.     HP is incorporated in the State of Delaware and its principal place of business is located at 1501 Page Mill Road in Palo Alto, California 94304.

14.     Defendant HP utilizes the website https://www.hp.com/us-en/home.html and its related webpages (collectively, the "HP Site"), as well as third party resellers, to market and to sell personal computers, printers and related products directly to consumers throughout the United States.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees and costs and at least one Class member is a citizen of a state different from at least one Defendant.

16.     This Court has personal jurisdiction over HP because it is headquartered in the State of California, regularly conducts business in this District and has extensive contacts with this forum.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because HP is headquartered in this District and transacts substantial business here.

## COMMON FACTUAL ALLEGATIONS

### A.    HP's All-in-One Printers

18.    HP designs, develops, manufactures and sells personal computers, tablet computers, monitors, printers, workstations and accessories.

19.    HP has long been an industry leader in the manufacture and sale of personal inkjet printing devices.    *See* https://www.statista.com/statistics/541347/worldwide-printer-market-vendor-shares/ (last visited Dec. 3, 2021).

20.    The HP ink-jet All-in-One Printer models at issue in this class action lawsuit: (i) HP Deskjet 2755e; (ii) HP DeskJet 3755; (iii) HP DeskJet 4155e; (iv) HP ENVY 6055e; (v) HP ENVY 6075; (vi) HP ENVY 6455e; (vii) HP ENVY Pro 6475; (viii) HP OfficeJet 250 Mobile; (ix) HP OfficeJet Pro 7740 Wide Format and (x) HP OfficeJet Pro 8025, (xi) HP DeskJet 2622, (xii) HP DeskJet 2655 (collectively defined herein as the "All-in-One Printers" or the "Devices").    Each of these All-in-One Printers have the same software, which prohibits the printer from operating as a scan or fax machine when it is low on ink or when the ink cartridge is missing.

21.    HP's All-in-One Printers are devices marketed and sold as having three core functions: printing, copying and scanning (certain All-in-One Printers have an added fax capability function that uses the same functionality as the scanner).    https://www.hp.com/us-en/shop/vwa/printers/prnttyp=InkJet;segm=Home,Small-Office;prnttyp=Multifunction-All-in-One?orderBy=2 (last visited Dec. 3, 2021).    Throughout its marketing and advertising (as detailed below), HP promotes and promises that its All-in-One Printers provide scanning and faxing as main features and functions. HP markets its All-in-One printers as "incredibly convenient" and "exceptional values" "[b]ecause they are designed to fit within a typical home office, use standard printer paper, and handle their own maintenance tasks."    *Id.*    HP further proclaims, without disclosing the fact that consumers cannot use the All-in-One Printers with low ink, that "these [All-in-One] printers are convenient because you don't have to buy a separate device for each task."

22.    At online retail  websites, such as www.hp.com and www.amazon.com, HP

makes available for purchase numerous printers including many All-in-One printer options. For each of the inkjet All-in-One Printers available for sale online, HP allows consumers to click for more information including technical specifications.

23. For instance, HP advertises the HP ENVY 6455e All-in-One Printer (which it contends can print, copy, scan and send mobile fax) on the online retail Site amazon.com: https://www.amazon.com/HP-ENVY-6455e-Wireless-Printer/dp/B08XYRDKDV (last visited



December 8, 2021).

24. In addition to statements and representations on the HP Site, HP states the functionalities of the All-in-One Printers on the product packaging for each device. For example, on the product packaging of the ENVY 6455e All-in-One Printer, HP represents on the box that the device functions as a scanner:



FIRST CLASS ACTION COMPLAINT
Case No.: 22-cv-03794-BLF

HP makes the same representations for each of its All-in-One Printers available for sale and makes similar representations that its products have core features that include scanning and faxing.

25.     For instance, HP's DeskJet 4155e All-in-One Wireless Color Printer is identified on the Amazon site as the "#1 Best Seller" in the InkJet Computer Printers category. https://www.amazon.com/HP-DeskJet-4155e-Wireless-Printer/dp/B08XYRDSL7/ref=sr_1_6?crid=26ONZAIIVY7X9&keywords=hp+all+in+one+printer&qid=1638547204&refinements=p_n_feature_five_browse-bin%3A10719423011%2Cp_89%3AHP&rnid=2528832011&s=office-electronics&sprefix=hp+all%2Caps%2C234&sr=1-6 (last visited December 3, 2021).

26.     The listing for that printer on Amazon identifies the "KEY FEATURES – Print, copy and scan in color, auto document feeder, mobile fax, mobile and wireless printing."  Further, the images for the DeskJet 4155e All-in-One printer on Amazon do *not* disclose the printer does not work when the ink is low:



27.     At no point does HP disclose to consumers that in order to scan or to fax documents, the ink cartridges (necessary for printing and copying) must not be depleted or damaged.

### B.     The All-in-One Printers Are Manufactured, Packaged, Marketed and Sold With Scanning and Faxing Capabilities Which are Tied to the Availability of Ink in the Devices

28.     HP's All-in-One Printers do not work as advertised.  Ink is *not* a necessary component to scan or to fax a document.  However, the HP All-in-One Printers are manufactured, packaged, marketed and sold to consumers in a manner which requires the devices to contain ink

7

in order to scan or to fax documents. Simply put, HP's All-in-One Printer do not function as scanners or as fax machines if the devices have low, empty or damaged ink cartridges.

29. If consumers wish to use either of two of the main functions of the device, HP forces consumers to purchase ink cartridges whether or not they intend to use ink or want to print or to copy documents. As a result, consumers must incur unexpected and unnecessary burden and expense by purchasing ink cartridges or be deprived of several of the core functions of their supposedly All-in-One printing devices. HP fails to disclose to consumers that its All-in-One Printers have the same flaw.

30. HP has known for years that its representations and advertisements regarding the All-in-One Printers being multifunction devices were false and misleading, and that it fails to disclose material information to consumers. Indeed, the Printers have been designed to function this way. In an October 2018 post on HP's community website, a customer asked why their All-in-One Printer would not scan with a damaged ink cartridge:

> My black ink cartridge cacked tonight (screen on printer and warning on computer saying it failed or was damaged) and I need to scan an important document. However, it's just saying I need to replace the cartridge and won't let me go past that screen. Is there a way to scan without having to purchase a new cartridge?

https://h30434.www3.hp.com/t5/Scanning-Faxing-Copying/Scanning-without-a-working-ink-cartridge/td-p/6777739 (last visited Feb. 6, 2023). A HP's employee responded that: "HP Printer is designed in such a way that with the empty cartridge or without the cartridge printer will not function." Put differently, Defendant designed the All-in-One Printers so that the entire Printer (including the scan and fax function) stops working if the Printer has an empty and missing cartridge. Accordingly, at all times relevant, HP was not only aware that is All-in-One Printers will not work as a scanner or fax machine without ink, it was designed that way: it was a feature not a bug.

31. Based on information and belief, the problem rests with HP's software. Each of the All-in-One Printers contains the same base software that causes the Printer to enter a "error state" when it is low or out of ink, or when the ink cartridge is missing or damaged. This error

state prevents the All-in-One Printers from function until the error is cleared (i.e. a new ink cartridge is placed into the printer). Accordingly, as HP acknowledges, its printers are "designed in such a way that with the empty cartridge or without the cartridge printer will not function." Accordingly, the fact that HP's All-in-One Printers will not work as a scanner or fax machine without ink or an ink cartridge is inherent to the Printers, and this problem exists at the time of purchase.

32. Not all multifunction printers are designed, packaged, marketed and sold to consumers so that low or no ink causes a loss in scan or fax functionality. Indeed, it is well-documented that ink is not required in order to scan or to fax a document, and it is certainly possible to manufacture an All-in-One printer that scans or faxes when the device is out of ink. Accordingly, Defendant made a conscious choice in designing and programing is All-in-One Printers.

33. HP's false, misleading and deceptive representations and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

**C.   HP's Design of its All-In-One Ink Jet Printers Is Intended to Increase Ink Sales**

34. There is no legitimate purpose for selling the All-In-One Printers with scanning or faxing functionality that is directly tied to the existence or level of ink contained in the devices. Ink is *not* needed for scanning or faxing functionality nor does ink improve scanning or faxing performance. Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices offers no benefit, and only serves to disadvantage and harm consumers financially. However, tying the scan or fax capabilities of the All-In-One Printers to ink contained in thedevices does, however, serve to benefit HP.

35. HP derives substantial profits from the sale of HP printer ink cartridges. Ink cartridges for the All-in-One Printers retail for approximately $30. The costs of ink for the All-in-One Printers is not trivial or fleeting as "[t]he industry figured out years ago that once people buy a printer they are committed to it, so you can sell the printer at or below cost knowing they will buy the cartridges." Charles LeCompte as quoted in *Printer ink: Tired of feeding the cash cow?,*

Lamont Wood, COMPUTERWORLD (Mar 28, 2012 6:00 am PST), https://www.computerworld.com/article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 3, 2021); *see also* Jack Houston and Irene Anna Kim, Why printer ink is so expensive, INSIDER (Updated Mar 2, 2021, 12:09 PM) https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 ("companies do everything they can to keep you buying official ink cartridges") (last visited on Dec. 6, 2021).

36.     According to a 2018 Consumer Reports article, inkjet printers are being sold at a low cost, with the expectation that companies would make their profit through sales of the ink cartridges needed for the functioning of the machines.  Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org /printers/why-is-printer-ink-so-expensive-a2101590 645/ (last Dec. 3, 2021). "Most printers are sold at a loss. A manufacturer makes money NOT by selling consumers an inkjet or laser printer, but by selling the supplies needed to print."  *Why Are Printer Ink and Toner Cartridges So Expensive?*, TONERBUZZ  https://www.tonerbuzz.com/blog/why- is-printer-ink-so-expensive/ (last visited on Dec. 3, 2021).

37.     Wing Lam, an associate director of cost benchmarking at IHS Markit stated that "[t]his is a classic razor-and-blade business model where the manufacturer sellsthe goods at a low price to help increase the sales of accessories, where the money is made." Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a210159 0645/ (last visited Dec. 3, 2021).

38.     There is no reason or technical basis for manufacturing the All-in-One Printers with an ink level detection function that causes the scanner to stop functioning when ink is low or empty.  HP designed the All-in-One Printers in such a way to require consumers to maintain ink in their devices regardless of whether they intend to print.  The result is an increase in ink sales from which HP derives significant profits. This forces consumers to incur the unexpected and unnecessary burden andexpense of additional and superfluous ink purchases or be unable to scan or fax documents using the so-called all-in-one device.

39.     Defendant could easily change is software, or offer a sof

## **EXPERIENCE OF REPRESENTATIVE PLAINTIFFS**

*Plaintiff Gary Freund*

40.     In or about July 30, 2021, Plaintiff Freund purchased an HP Envy 6455e All-in-One Wireless Color Printer from an www.amazon.com.

41.     Plaintiff Freund purchased the HP Envy 6455e All-in-One Wireless Color Printer to use for its advertised scanning purposes.

42.     HP made explicit representations that the HP Envy 6455e All-in-One Wireless Color Printer would be able to scan and did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted:

**About this item**
- BEST FOR BUSY FAMILIES – Print documents, borderless photos, homework and creative projects
- KEY FEATURES – Print, copy and scan in color, automatic 2-sided printing, auto document feeder, borderless photos, mobile and wireless printing
- HP+ SMART PRINTING SYSTEM – The optional HP+ system enables your printer to think ahead so it's more secure, more productive and ready when you are. Requires an HP account, internet connection and use of only Original HP Ink for the life of the printer.
- 6 FREE MONTHS OF INSTANT INK & AN EXTRA YEAR OF HP WARRANTY – when you activate optional HP+ and Instant Ink when setting up your printer. Only with HP+.
- EASY SETUP – Get started fast on any device with the HP Smart app that guides you step by step
- CONNECT THE WHOLE FAMILY – Easily connect everyone from virtually any device. Self-healing Wi-Fi™ helps keep you connected and reduces interruptions.
- HP SMART APP – Print, scan and copy from your phone—whenever, wherever. Get advanced features for 24 months with HP+.

43.     Further, the images for the HP Envy 6455e All-in-One Wireless Color Printer on Amazon advertise the scan function but do *not* disclose that it will not scan when the ink is low or depleted, or if the ink cartridge is damaged or missing:







44. The box packaging containing the HP Envy 6455e All-in-One Wireless Color Printer advertises the same explicit representations that the device would be able to "scan" and likewise did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted:

First Class Action Complaint                                  Case No.: 22-cv-03794-BLF



45.     After purchasing and using the device, Plaintiff Freund discovered that the device did not function as a scanner if the ink cartridges are low or empty.

46.     Plaintiff Freund suffered injury and was damaged as a result of HP's conduct.

47.     Plaintiff Freund would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents.

48.     Plaintiff Freund may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue.

**Plaintiff Wayne McMath**

49.     In or about September 2019, Plaintiff McMath purchased an HP Deskjet 2655 All-in-One Compact Printer from an online retailer.

50.     Plaintiff McMath purchased the HP Deskjet 2655 All-in-One Compact Printer to use for its advertised scanning purposes.

51.     HP made explicit representations that the device would be able to scan and did

13

not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted:

- Main functions of this HP compact color printer: print, scan, copy, wireless printing, AirPrint, Instant Ink ready so you'll never run out of ink, and more

- Print, copy, and scan while saving money and space with a wireless all-in-one printer.

- The power of your printer in the palm of your hand: The HP Smart app allows you to easily set up your printer, scan from your smartphone. https://www.amazon.com/HP-DeskJet-2655-Compact-Replenishment/dp/B06XH XWB7B (last visited Dec. 6, 2021) (highlighting added).

52.     Further, the images for the HP Deskjet 2655 All-in-One Compact Printer online do *not* do *not* disclose that it will not scan when the ink is low or depleted, or if the ink cartridge is damaged or missing:



53.     The box packaging containing the HP Deskjet 2655 All-in-One Compact Printer advertises the same explicit representations that the device would be able to "scan" and likewise did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted:



54.     After purchasing and using the device, Plaintiff McMath discovered that the device did not function as a scanner if the ink cartridges are low or empty.

55.     Plaintiff McMath suffered injury and was damaged as a result of HP's conduct.

56.     Plaintiff McMath would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents.

57.     Plaintiff McMath may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

All persons who purchased a HP All-in-One Printer, in the United States, for personal/household use, at any time within the applicable statute of limitations (the "Nationwide Class").

59. Plaintiff Freund brings this action individually and on behalf of the following California subclass:

All persons residing in California who purchased a HP All-in-One Printer for personal/household use, at any time within the applicable statute of limitations (the "California subclass").

60. Plaintiff McMath brings this action individually and on behalf of the following Minnesota subclass:

All persons residing in Minnesota who purchased a HP All-in-One Printer for personal/household use, at any time within the applicable statute of limitations (the "Minnesota subclass").

61. Specifically excluded from the Classes are HP, its officers, directors, agents, trustees, representatives, employees, principals, servants, partners, joint venturers or entities controlled by HP, and their heirs, successors, assigns, or other persons or entities related to or affiliated with HP and/or its officers and/or directors, the judge assigned to this action and any member of the judge's immediate family.

62. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Classes should be expanded, narrowed, divided into subclasses or otherwise modified in any way.

63. **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**. The members of the Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable. Plaintiffs are informed and believes—based upon the publicly-available information discussed herein—that there are millions of class members, making joinder impracticable. Those individuals' identities are available through HP's records and class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

64. **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) & 23(b)(3)**. HP has acted with respect to Plaintiffs and the other members of the proposed Classes in a manner generally applicable to each of them. There is a well-defined community of interest

in the questions of law and fact involved, which affect all class members.  The questions of law and fact common to the Classes predominate over the questions that may affect individual class members include the following:

      a.      Whether HP intentionally designed its All-in-One Printers so that the scanning and faxing functionality was disabled if the devices were low or out of ink;

      b.      Whether HP disclosed to consumers that its All-in-One Printers would not scan nor fax if the devices were low or out of ink;

      d.      Whether the fact that the All-in-One Printers would not scan nor fax if the devices were low or out of ink was material to reasonable consumers;

      e.      Whether the omission that the All-in-One Printers would not scan nor fax if the devices were low or out of ink was deceptive to reasonable consumers;

      f.      Whether HP All-in-One Printers function as a scanner with low or empty ink and

      g.      The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Classes are entitled.

65.     **Typicality: Federal Rule of Civil Procedure 23(a)(3)**.  Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

66.     **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate class representatives because their interests do no conflict with the interests of class members whom they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The class members' interests will be fairly and adequately protected by Plaintiffs and counsel.

67.     **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish

17

incompatible standards of conduct for HP. Such individual actions would create a risk of adjudication that would be dispositive of the interests of other class members and impair their interests. HP has acted and/or refused to act on grounds generally applicable to the Classes, making injunctive relief or corresponding declaratory relief appropriate.

68. **Superiority: Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against HP, so it would be impracticable for class members to individually seek redress for HP's wrongful conduct. Even if class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent and or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

69. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT OMISSION
### (On behalf of Plaintiffs & the Nationwide Class)

70. Plaintiffs reincorporate and re-allege each preceding paragraph herein and bring this claim on behalf of the Nationwide Class.

71. HP intentionally omitted certain material facts regarding its All-in-One Printers.

72. Specifically, HP failed to warn consumers that its All-in-One Printers will disable the scanning and faxing functionality if the device is low or out of ink, despite the fact that ink is not required to perform either function.

73. Had HP disclosed these issues, rather than falsely advertising the convenience and functionality of the All-in-One Printers, consumers would not have purchased or, alternatively,

would have paid significantly less for the devices.

74.     The advertisements, which were made expressly through uniform representations from HP were material and would have been considered by a reasonable consumer in making purchasing decisions.

75.     Plaintiffs and Nationwide Class members acquired the All-in-One Printers believing they would function as advertised.

76.     As a result, Plaintiffs and class members were directly and proximately injured by HP's failure to inform Plaintiffs and Nationwide Class members of the All-in-One Printers will disable the scanning and faxing functionality if the device is low or out of ink despite the fact that ink is not required to perform either function.

## COUNT II
### California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of Plaintiff Freund and California Subclass Members)

77.     Plaintiff Freund repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

78.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

79.     HP intentionally omitted certain material facts regarding its All-in-One Printers.

80.     Specifically, HP failed to warn consumers that its All-in-One Printers will disable the scanning and faxing functionality if the device is low or out of ink despite the fact that ink is not required to perform either function.

81.     HP's false and misleading advertising and other policies, acts, and practices were designed to, and did, induce the purchase and use of the All-in-One Printers for personal, family, or household purposes by Plaintiff Freund and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or

    benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

82. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised All-in-One Printers to unwary consumers.

83. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

84. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff Freund provided a letter to Defendant noticing its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. Defendant did not respond to the letter within the period required, accordingly Plaintiff Freund seeks monetary relief, including restitution and actual and punitive damages under the Consumers Legal Remedies Act. Pursuant to California Civil Code §1780, Plaintiff Freund further seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT III
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW,
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of Plaintiff Freund and California Subclass Members)

85. Plaintiff Freund reincorporate and reallege each preceding paragraph herein and brings this claim on behalf himself and the California Subclass.

86. HP is a "person[]" as defined by Cal. Bus. & Prof. Code § 17201.

87. HP violated Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

88. Defendant's conduct is "Fraudulent" as Defendant's misrepresentation of the functionality of its All-in-Printers likely to mislead reasonable consumers. Specifically, Defendant actively conceals a material fact from consumers and makes partial representations, suppressing

material facts as alleged herein.

89.     Specifically, HP failed to warn consumers that its All-in-One Printers will disable the scanning and faxing functionality if the device is low or out of ink despite the fact that ink is not required to perform either function.

90.     Defendant's "unfair" acts and practices include:

    a.     Knowingly designing, developing, manufacturing, advertising and selling All-in-Printers to not be operational without ink or with low ink;

    b.     Concealing material information from consumers regarding their All-in-One Printers require ink to use the scan and fax functions;

    c.     Using uniform, deceptive business practices causing consumers to spend additional money to secure additional ink cartridges in order to get their devices to work.

91.     HP's conduct with respect to the labeling, advertising, and sale of All-in-Printers is also unfair because it violates public policy as described below.

92.     HP has engaged in "unlawful" business practices by violating multiple laws including Cal. Bus. & Prof. Code §§ 17500, *et seq*., and California common law.

93.     HP's unlawful, unfair, and deceptive acts and practices include:

    a.     Knowingly designing, developing, manufacturing, advertising and selling All-in-Printers with significant Design Flaws that result in the devices not operating as intended, represented or advertised under normal usage;

    b.     Concealing material information from consumers regarding their All-in-One Printers require ink to use the scan and fax functions; and

    c.     Using uniform, deceptive business practices requiring consumers to spend additional money to secure additional ink cartridges in order to get their devices to work.

94.     HP violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising by omitting material facts from purchasers of their Devices.

95.     This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive and unscrupulous as the severity of the conduct—advertising All-in-One printers as convenient and capable of scanning and faxing (among other things) but not disclosing that the devices will not scan or fax without ink—outweighs any alleged benefit.

96.     HP engaged in this conduct to gain an unfair commercial advantage over its competitors.  Defendant withheld critical and material information from Plaintiff Freund and California Subclass Members, competitors and the marketplace, all to their unfair competitive advantage. Thus, consumers are not able to avoid the injury described herein.

97.     As a direct and proximate result of HP's unfair, unlawful and fraudulent acts and practices, Plaintiff Freund and California Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing the devices, and increased time and expense in dealing with the devices' performance issues.

98.     Plaintiff and the California Subclass do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful omissions. Damages will only address past injuries visited on Plaintiff and the California Subclass. Only injunctive relief can prevent any future harm. For example, Defendant can remedy the software issue that prevents consumers from using the scan and fax functions when an ink cartridge is low, missing or damaged.  Alternatively, Defendant should be required to disclose the fact that the scan and fax does not function when an ink cartridge is low, missing or damaged.

99.     Additionally, Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 827 (9th Cir. 2014) (same); *Caro v. Procter & Gamble Co*., 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

100.     But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007), as modified (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

101.     Plaintiff Freund and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution stemming from HP's unfair, unlawful and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

**COUNT IV**
**VIOLATIONS OF CALIFORNIA'S FALSE**
**ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF FREUND & THE CALIFORNIA SUBCLASS)**

102.     Plaintiff Freund reincorporates and realleges each preceding paragraph herein and brings this claim on behalf themselves and the California Subclass.

103.     By its actions and omissions as set forth herein, HP disseminated uniform advertising regarding the All-in-One Printers into California.

104.     The advertising was, by its very nature, unfair, deceptive, untrue and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.*

105.     Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

106.     The above-described false, misleading and deceptive advertising HP disseminated continues to have a likelihood to deceive in that HP failed to disclose the fact that its All-in-One printers will disable the scanning and faxing functionality if the device is low or out of ink despite the fact that ink is not required to perform either function.

107.     Had HP disclosed these issues, rather than falsely advertising the convenience and functionality of the All-in-One printers, consumers would not have purchased or, alternatively, paid significantly less for the devices.

108. In making and disseminating the statements alleged herein, HP knew, or should have known, its advertisements were untrue and misleading in violation of California law.

109. Plaintiff Freund and California Subclass Members based their purchasing decisions on HP's omission of certain material facts.

110. The revenue attributable to products sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars.

111. Plaintiff Freund and California Subclass Members were injured in fact and lost money and property as a result.

112. The omission by Defendant of the material facts described and details herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof. Code § 17500, *et seq*.

113. Plaintiff and the California Subclass do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful omissions. Damages will only address past injuries visited on Plaintiff and the California Subclass. Only injunctive relief can prevent any future harm. For example, Defendant can remedy the software issue that prevents consumers from using the scan and fax functions when an ink cartridge is low, missing or damaged. Alternatively, Defendant should be required to disclose the fact that the scan and fax does not function when an ink cartridge is low, missing or damaged.

114. Additionally, Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. *Cortez*, 23 Cal.4th at 177 (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez*, 589 F. App'x at 827 (same); *Caro*, 18 Cal. App. 4th at 661 ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

115. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion

in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe*, 150 Cal. App. 4th at 68 (2007) (noting that restitution is available even in situations where damages may not be available).

116. Plaintiff Freund and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

### COUNT V
### VIOLATIONS OF MINNESOTA'S DECEPTIVE TRADE PRACTICES ACT,
### Minn. Stat. § 325D.44, *et seq.*
### (On behalf of Plaintiff McMath and Minnesota Subclass Members)

117. Plaintiff McMath reincorporate and reallege each preceding paragraph herein and brings this claim on behalf himself and the Minnesota Subclass.

118. Defendant intentionally concealed the material fact that the scan and fax functions on the All-in-One Printers does not work when an ink cartridge is low, missing or damaged.

119. The following are ways in which Defendant violated Minn. Stat. § 325D.44 :

    a.    Knowingly designing, developing, manufacturing, advertising and selling Knowingly designing, developing, manufacturing, advertising and selling All-in-Printers to not be operational without ink or with low ink;

    b.    Concealing material information from consumers regarding their All-in-One Printers require ink to use the scan and fax functions;

    c.    Using uniform, deceptive business practices causing consumers to spend additional money to secure additional ink cartridges in order to get their devices to work.

120. The Minnesota statutes prohibiting unfair and deceptive trade practices apply because Defendant's deceptive scheme was carried out in Minnesota and affected Plaintiff McMath and the Minnesota Subclass who purchased All-in-One Printers which would not work as a fax

machine or scanner with a low, missing, or damaged ink cartridge.

121.     HP engaged in this conduct to gain an unfair commercial advantage over its competitors.  Defendant withheld critical and material information from Plaintiff McMath and the Minnesota Subclass Members, competitors and the marketplace, all to their unfair competitive advantage.

122.     As a direct and proximate result of HP's unfair, unlawful and fraudulent acts and practices, Plaintiff McMath and the Minnesota Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing the devices, and increased time and expense in dealing with the devices' performance issues.

123.     Plaintiff McMath and the Minnesota Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution and all profits stemming from HP's unfair, unlawful and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs; injunctive relief and other appropriate equitable relief.

### COUNT VI
### VIOLATIONS OF MINNESOTA'S FALSE ADVERTISING LAW, MINN. STAT. § 325F.67, *ET SEQ.*
### (ON BEHALF OF PLAINTIFF MCMATH & THE MINNESOTA SUBCLASS)

124.     Plaintiff McMath reincorporates and realleges each preceding paragraph herein and brings this claim on behalf themselves and the Minnesota Subclass.

125.     By its omissions as set forth herein, HP disseminated uniform advertising regarding the All-in-One Printers into Minnesota.

126.     The advertising was, by its very nature, unfair, deceptive, untrue and misleading within the meaning of Minn. Stat. § 325F.67, *et seq.*

127.     Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

128.     The above-described false, misleading and deceptive advertising HP disseminated continues to have a likelihood to deceive in that HP failed to disclose that its All-in-One Printers will disable the scanning and faxing functionality if the device is low or out of ink despite the fact that ink is not required to perform either function.

First Class Action Complaint                                    Case No.: 22-cv-03794-BLF

129.    Had HP disclosed these issues, rather than falsely advertising the convenience and functionality of the All-in-One printers, consumers would not have purchased or, alternatively, paid significantly less for the devices.

130.    In making and disseminating the statements alleged herein, HP knew, or should have known, its advertisements were untrue and misleading in violation of Minnesota law.

131.    Plaintiff McMath and Minnesota Subclass Members based their purchasing decisions on HP's omission of certain material facts.

132.    The revenue attributable to products sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars.

133.    Plaintiff McMath and Minnesota Subclass Members were injured in fact and lost money and property as a result.

134.    The misrepresentations and non-disclosures by Defendant of the material facts described and details herein constitute false and misleading advertising and, therefore, constitute violations of Minn. Stat. § 325F.67, *et seq*.

135.    As a result of Defendant's wrongful conduct, Plaintiff McMath and Minnesota Subclass Members lost money in an amount to be proven at trial.  Plaintiff McMath and Minnesota Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

136.    Plaintiff McMath and Minnesota Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs; injunctive relief and other appropriate equitable relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, request that this Court enter judgment against HP, Inc. d/b/a HP Computing and Printing Inc. and in favor of Plaintiffs and the Class and Subclasses, and award the following relief:

a.    Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Nationwide Class and Subclasses, and Plaintiffs' counsel as counsel for the Nationwide Class and Subclasses;

b.       Awarding declaratory relief and enjoining HP from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

c.       Ordering HP to pay actual, compensatory, and statutory damages (including punitive damages) or, in the alternative, restitution to Plaintiffs and the other class members, as allowable by law;

d.       Order HP to pay both pre-and post-judgment interest on any amounts awarded;

e.       Ordering HP to pay attorneys' fees and cost of suit and

f.       Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: February 10, 2023                    Respectfully submitted,

/s/ Trenton R. Kashima
Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
tkashima@milberg.com
klaukaitis@shublawyers.com

Nick Suciu*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

Gary Klinger*
Russell Busch*
**MILBERG COLEMAN BRYSON PHILLIPS**

**GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.:    (866) 252-0878
Email: gklinger@milberg.com
          rbusch@milberg.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the Class*

## <u>AFFIDAVIT OF TRENTON R. KASHIMA</u>

I, Trenton Kashima, declare as follows:

1.    I am an attorney duly licensed and entitled to practice law in the state of California. I am an attorney of the law firm Milberg Coleman Bryson Phillips Grossman PLLC, attorneys for Plaintiffs in above-captioned action. I have personal knowledge of the facts stated herein, and if called to do so, could and would competently testify thereto.

2.    Based on information from Defendant's website and the California Secretary of State, Defendant Defendant HP, Inc. d/b/a HP Computing and Printing Inc. resides, has its principal place of business, is registered to do business and/or is in-fact doing business at Palo Alto, California, located within the County of Santa Clara County.

3.    Accordingly, pursuant to California Code of Civil Procedure, section 1780, the United States District Court for the Northern District of California is the proper venue for Plaintiff's California Consumer Legal Remedies Act claims because the Court's jurisdiction includes Santa Clara County, the principal place of business of Defendant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 10, 2023 in San Diego, California.

                                    */s/ Trenton Kashima*
                                    Trenton Kashima