P
Trenton R. Kashima
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
T : (212) 946-9389
tkashima@milberg.com

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs*
*and the Proposed class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **GARY FREUND and WAYNE MCMATH,** individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**HP INC.,** d/b/a **HP COMPUTING AND PRINTING INC.,** Delaware corporation,<br><br>Defendant. | Case No. 5:22-cv-03794-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT HP INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS COMPLAINT**<br><br>Date:     July 27, 2023<br>Time:    9:00 am<br>Dept.:    Courtroom 3 – 5th Floor<br>Judge:   Honorable Beth L. Freeman<br><br>Date Action Filed: September 28, 2022 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES............................................................................................................ii

I.     INTRODUCTION................................................................................................................1

II.    LEGAL STANDARD ..........................................................................................................2

III.   ARGUMENT .......................................................................................................................3

      A.     Plaintiffs have Adequately Pled their Fraud-based Claims............................................3

           1.     Plaintiffs Pleaded HP's Fraudulent Omission with Sufficient Particularity. ....4

           2.     Plaintiffs Clearly Allege the Restriction Occurred Within the Warranty Period......................................................................................................................7

           3.     Defendant Had a Duty to Disclose ......................................................................8

           4.     Plaintiffs Have Adequately Pled the Elements of Their Claims ......................10

      B.     Plaintiffs' Claims for Equitable Relief Should not be Dismissed. ...............................12

      C.     Plaintiffs Have Standing to Assert Claims Relating to the Non-Purchased Printers and the Printers' Faxing Function ......................................................................................13

IV.   CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................................... 11

*Aron v. U-Haul Co. of California*,
  143 Cal. App. 4th 796 (2006) ........................................................................................ 5, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 .................................................................................................................. 3

*Baggett v. Hewlet-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ........................................................................ 8, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 3

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ............................................................................. 14

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ................................................................................................. 3

*Clay v. Cytosport, Inc.*,
  No. 15-CV-165-L-DHB, 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015) ...................... 14

*Collins v. eMachines, Inc.*,
  202 Cal.App.4th 249 (2011) ............................................................................................ 8, 9

*Colopy v. Uber Techs.*,
  No. 19-cv-06462, 2020 WL 3544982 (N.D. Cal. June 30, 2020) ................................. 13

*Czuchaj v. Conair Corp.*,
  No. 13-CV-1901-BEN RBB, 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) .................. 9

*Dawood v. Gamer Advantage LLC*, No. 222CV00562WBSKJN, 2022 WL 3108846 (E.D. Cal. Aug. 4, 2022) ............................................................................................................................................ 11

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. CV 11-9405 CAS FEMX, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ................. 5

*Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123 (N.D. Cal. 2013) ................................. 8

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................................. 9

*Flier v. FCA US LLC*,
  No. 21-CV-02553-CRB, 2022 WL 16823042 (N.D. Cal. Nov. 8, 2022) ....................... 6

*Goldsmith v. Allergan, Inc.*,
  No. CV 09–7088 PSG (Ex), 2011 WL 2909313 (C.D. Cal. May 25, 2011) ............... 10

OPPOSITION TO MOTION TO DISMISS                                          Case No: 5:22-cv-03794-BLF

*Gregory v. Albertsons, Inc.*,
  104 Cal.App.4th 845 (2002) .................................................................................................. 12

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
  432 F. App'x 700 (9th Cir. 2011) .......................................................................................... 11

*Hauck v. Advanced Micro Devices, Inc.*,
  No. 18-CV-00447-LHK, 2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) ................................. 7

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) .............................................................................................................. 13

*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ................................................................................................................................... 13

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
  315 F. App'x 603 (9th Cir. 2008) .......................................................................................... 11

*Krause-Pettai v. Unilever United States, Inc.*,
  No. 20-CV-1672-DMS-BLM, 2021 WL 1597931 (S.D. Cal. Apr. 23, 2021) ....................... 13

*Kwikset Corp. v. Super. Ct.*,
  51 Cal.4th 310 (2011) ......................................................................................................... 7, 8

*Myers v. BMW of N. Am., LLC*,
  No. 16-CV-00412-WHO, 2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ............................. 10

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ....................................................................................................... 3

*People v. McKale*,
  25 Cal. 3d 626 (1979) ........................................................................................................... 12

*Rothman v. Equinox Holdings, Inc.*, No. 22-CV-09760-CAS-MRWX, \
  2021 WL 1627490 (C.D. Cal. Apr. 27, 2021) ....................................................................... 13

*Sagastume v. Psychemedics Corp.*,
  2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) ...................................................................... 13

*Shvarts v. Budget Group, Inc.*,
  81 Cal.App.4th 1153 (2000) ................................................................................................. 12

*Sims v. Campbell Soup Co.*,
  No. 18-CV-668-PSG-SPX, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ......................... 14

*Smith v. Ford Motor Co.*
  749 F. Supp. 2d 980 (N.D. Cal. 2010) .................................................................................... 8

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................................................ 12

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ................................................................. 3

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ............................................................................................. 3, 4

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ................................................................................................... 8

*Zurba v. FCA US LLC*,
  No. 521CV01824JLSSHK, 2022 WL 17363073 (C.D. Cal. Nov. 10, 2022) ................................... 6

**<u>Rules</u>**

Fed. R. Civ. P. 9 ............................................................................................................................. 3, 4

Plaintiff Gary Freund and Plaintiff Wayne McMath ("Plaintiffs") respectfully submit this Opposition to Defendant HP Inc.'s ("HP" or "Defendant") Motion to Dismiss (ECF No. 47) (the "Motion" or "MTD") Plaintiffs' First Amended Class Action Complaint (ECF No. 43) (the "FAC"). Plaintiffs do not oppose Defendant's Request for Judicial Notice (ECF No. 47-1) ("RJN").

I.   **INTRODUCTION**

This case is about HP "All-in-One" devices (the "Products"), products touted for their convenient multifunctionality with the ability to scan, fax, copy, and print "all in one." FAC ¶¶ 65–82. The problem with the Products, however, is that HP intentionally designs them with software programmed to disable <u>all</u> functionality when the Products are low on ink, despite the fact that it requires no ink whatsoever to scan or fax a document (the "Restriction"). FAC ¶¶ 5–6, 28, 31. HP's motivation to hamstring its own products is not a mystery: the Products are sold as "loss leaders" to bolster HP's revenue from its highly lucrative ink sales. *Id.* ¶¶ 1–3, 7–8, 36. HP's representatives have admitted as much, for instance in responding to an October 2018 consumer complaint about the inability to scan a document when their Product was low on ink with the admission that the "HP Printer is designed in such a way that with the empty cartridge or without the cartridge printer will not function." *Id.* ¶ 30.

Prohibiting consumers from using scanning and faxing functionality without purchasing unnecessary ink is undoubtedly good for HP's bottom line, but the practice harms consumers, whom HP misleads with grand promises and deliberate omissions. Plaintiffs were harmed because they had to purchase additional products (at rates that can exceed $80 an ounce), *see* FAC ¶ 1 (citing Lamont Wood, *Printer Ink: Tired of Feeding the Cash Cow? InkJet refills typically cost significantly more than the printer itself*, COMPUTERWORLD, (Mar. 28, 2012), available at https://www.computerworld.com/article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 6, 2021), and incur unnecessary expenses, in order for the Products to function as advertised. Your Honor granted Defendant's initial motion to dismiss (ECF No. 14) (the "First Motion") without prejudice (ECF No. 39) (the "Order"), giving Plaintiffs leave to amend their complaint and providing guidance on amended pleadings that meet Plaintiffs' burden at the pleading stage. *See, e.g.*, Jan. 5, 2023, Court Conf. (the "MTD Conf.") 10:17–19.

Defendant brought a new motion to dismiss the Amended Complaint, recycling its arguments from the first motion, incorrectly characterizing the Amended Complaint as "virtually identical to their Original Complaint," MTD at 6, while revealing throughout its argument (as discussed in detail below) that it either failed to read or failed to understand the Amended Complaint. Defendant rests virtually its entire argument on the claim that Plaintiffs do not sufficiently allege the company had knowledge of the Restriction, when Plaintiffs' Amended Complaint makes clear the Restriction was a conscious design choice on HP's part in order to pad the sale of high-margin ink. FAC ¶¶ 20, 31, 34–39, 98. Defendant did know of its designed Restriction, and it had a duty to disclose that fact to Plaintiffs both because the knowledge was not readily available to Plaintiffs and other consumers and because HP made partial representations but failed to disclose material facts. Defendant also argues that Plaintiffs do not plead the injury occurred during the warranty period, despite the fact that the Complaint plainly states the Restriction was in the Products' software by design and thus was already present in the Products at the point of sale. *Id.* ¶¶ 6, 20, 31. Next, Defendant argues Plaintiffs' claims are barred by the Economic Loss Rule, but that Rule does not apply to claims, like the claims at issue, sounding in fraud, nor are the damages sought here implicated in the Rule in any event. Defendant also seeks dismissal of Plaintiffs' claims for restitution under a misapplication of *Sonner*, but Plaintiffs have adequately and permissibly pled equitable remedies in the alternative at the pleading stage. Finally, Defendant argues Plaintiffs should not be able to represent a Class of consumers who purchased other Products, despite the fact that each of the Products suffers from the same designed limitation and each Plaintiff and proposed Class Member suffered from the same pattern of fraudulent omission. Under the prevailing view in this circuit, Plaintiffs have standing for the entire proposed Class.

At bottom, each of Defendant's arguments is without merit. Any deficiencies noted by the Court at the parties' First Motion conference have been remedied. Defendant's Motion should be denied.

## II. LEGAL STANDARD

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*,

80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a plaintiff must identify the "who, what, when, where, and how" of the misconduct charged, as well as an explanation as to why the statement or omission complained of was false or misleading. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). The allegations need only "be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Although the circumstances of a fraud must be pleaded with particularity, knowledge may be pleaded generally." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679 (9th Cir. 2018) (citing Fed. R. Civ. P. 9(b)). This is because "plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

### III. ARGUMENT

#### A. Plaintiffs have Adequately Pled their Fraud-based Claims.

Defendant begins the instant Motion to Dismiss the same way it began its first, arguing that Plaintiffs have not met their burden under Rule 9(b). Your Honor gave this same argument little credence in the parties hearing on the First Motion and in the Court's Order. Instead, the Court was quite specific as to the limited deficiencies in Plaintiffs' pleadings and how to cure them. Plaintiffs needed to plead sufficient facts to allege HP knew the Products would not scan or fax without ink. MTD Conf. 10:17–19, 11:16–20, 13:7–10. Plaintiffs have done this. FAC ¶ 8, 28–31. The Amended Complaint is sufficient to allege Defendant's knowledge, which "may be pleaded generally." *WellPoint, Inc.*, 904 F.3d at 679.

As the Amended Complaint makes clear, HP's representations, advertisements, and forward-facing marketing materials are misleading because they do not accurately reflect the Products' characteristics, functionality, or value to consumer. HP explicitly advertises the convenience of its "All-in-One" devices, but purposefully omits the relevant fact that it designs the Products to disable <u>all</u> functionality when the Products' ink is low, in an effort to hawk more of its overpriced, high-margin ink. FAC ¶¶ 1–3, 7–8, 34–38. This deceptive practice gives rise to Plaintiffs' fraudulent omission claim, as well as violation of state consumer protection laws. *Id.* ¶¶ 70–136. Plaintiffs' Amended Complaint satisfies Rule 9(b), identifying the "who, what, when, where, and how" of this fraudulent omission. Here, Plaintiffs do just that. Plaintiff alleged that HP deliberately designed (thus, knew about) their software that prevents them from functioning as HP advertised and warranted. *Id.* ¶¶ 5, 28–29. Accordingly, Plaintiffs were misled at the point of sale. *Id.* ¶¶ 40–57. The complaint identifies several statements and omissions located on the Products' packaging, HP's website, and other forward-facing marketing materials. *See, e.g., id.* ¶¶ 23 (touting "main features" including printing, copying, scanning, and faxing), 26 (identifying scanning and faxing as "KEY FEATURES"), 42 ("Print, scan and copy from your phone–whenever, wherever"). And Plaintiffs explains how consumers were misled: HP misled consumers, including Plaintiffs, about the Products' functionality and characteristics by advertising the Products as "All-in-One" devices with several independent core features—scanning, faxing, copying, and printing— that can be done "anywhere, anytime," when, in reality, the Products are deliberately limited to disable the scanning and faxing functions when ink level are low or empty. *See Id.* ¶¶ 28–33. (identifying specific marketing materials and misleading statements contained therein). Nothing more is required.

### 1. **Plaintiffs Pleaded HP's Fraudulent Omission with Sufficient Particularity.**

In its brief, Defendant highlights the undisputed fact that Plaintiffs' claims sound in fraud and are therefore subject to Rule 9(b) pleading standards. Despite laying out Rule 9(b)'s *generally* heightened pleading standards in detail, MTD at 8–9, however, Defendant fails to acknowledge a single time that, under Rule 9(b), "knowledge may be pleaded generally." *WellPoint, Inc.*, 904 F.3d at 679; Fed. R. Civ. P. 9(b). This is particularly damning because a large portion of HP's argument under its Section A.1 revolves around HP's alleged knowledge of the Restriction and other information

- 4 -

internally available to Defendant, which Plaintiffs need not allege with the same level of particularity. *See id.* at 9–10. The irony here should not be lost on the Court. Much like HP's misconduct alleged in this case, Defendant's selectively cited argument here illustrates how cherry-picking truthful claims while omitting relevant information is deceptive. *See Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 807 (2006) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."); *see also* MTD Conf. 4:14–18 ("COURT: I think that you have made [] the beginnings of an omissions case here by stating that . . . the advertisement for . . . this product is maybe factually true, but misleading, therefore giving rise to a potential omission.").

First, Defendant rehashes the same argument from its First Motion that, according to Defendant, Plaintiffs failed to allege "why the product is defective," "what happens when the product fails," or "how the defect harmed plaintiffs." *Id.* As Plaintiffs noted in opposition to the First Motion, Plaintiffs' initial Complaint addressed each issue. Compl. (ECF No. 1) ¶¶ 6, 40, 43, 45. The Amended Complaint is no less clear in pleading that: (1) the Products are defective (albeit deliberately) because the scanning and faxing functions are unnecessarily tied to ink cartridge levels within Defendant's software; (2) both functions are "disabled" when ink levels are low, and, resultingly, "the entire Printer (including the scan and fax function) stops working if the Printer has an empty and missing cartridge" and (3) the Restriction harmed Plaintiffs because the Products "do not work as advertised," and "[a]s a result, consumers must incur unexpected and unnecessary burden and expense by purchasing ink cartridges . . ." FAC ¶¶ 28–30.

Similarly, HP also argues that Plaintiffs fail to "explain [] how the purported defect . . . actually renders the functions of the printers inoperable" or describe the error state rendering the Products inoperable. MTD at 8–9. HP relies on *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS FEMX, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012), but *Eisen* is inapposite. The Plaintiffs' claims in *Eisen* failed because the "plaintiff simply allege[d] that the IMS shaft 'fails' without explaining how the shaft fails and how that failure affects the vehicle." *Eisen*, 2012 WL 841019, at *3. Plaintiffs here, in contrast, have done just that. *See* FAC ¶¶ 5 ("even one of the ink cartridges is too low, empty, or damaged, the scanning function on the 'all-in-one' printer will be disabled and will not work as

advertised"), 6 ("HP designs its All-in-One printer products so they will not work without ink"), 28 ("HP All-in-One Printers are manufactured, packaged, marketed and sold to consumers in a manner which requires the devices to contain ink"), 31 ("Each of the All-in-One Printers contains the same base software that causes the Printer to enter a "error state" when it is low or out of ink, or when the ink cartridge is missing or damaged. This error state prevents the All-in-One Printers from function[ing] until . . . a new ink cartridge is placed into the printer."). Defendant also criticized for Plaintiff no describing every detail of the Restriction, such as the exact contents of the error message, the exact version of the drivers installed, and whether the error message can be cleared by simply tapping "ok." MTD at 10. Plaintiffs are aware of no case that requires such granularity at the pleading state, and Defendant cites none. Instead, Defendant cites *Zurba v. FCA US LLC*, No. 521CV01824JLSSHK, 2022 WL 17363073, at *4 (C.D. Cal. Nov. 10, 2022), which only states for the proposition that plaintiff has to plead both the effect and the *cause* of any defect. Indeed, Defendant's implication that this defect is not widespread, or can be easily cleared, is contradicted by its own employee. FAC ¶ 30 (A HP's employee admitted that: "HP Printer is designed in such a way that with the empty cartridge or without the cartridge printer will not function.").

Plaintiffs' pleadings are more than sufficient. What Defendant's arguments here attempt to do is impose a fabricated, impossibly heightened standard whereby consumers alleging injury as a result of a defendant's internally designed software functionality must allege, in detail, how that software works. *See* Def.'s MTD at 9 ("Plaintiffs also failed to provide any allegations describing the 'error state' about which they complain"). This is far beyond what is required of Plaintiffs. Indeed, "[a]t the pleading stage, Plaintiffs need only allege, not prove, the existence of the [defect]. Facts alleging enough particularity to allow the Defendant to defend a product it has internal knowledge about aligns with Rule 9(b)'s purpose. Requiring anything more from Plaintiffs would be impracticable without discovery." *Flier v. FCA US LLC*, No. 21-CV-02553-CRB, 2022 WL 16823042, at *4 (N.D. Cal. Nov. 8, 2022).

Defendant also ignores the less exacting standards under Rule 9(b) for alleging a defendant's knowledge. Plaintiff specifically alleged that Defendant designed the software, so had knowledge of its functionality, not an unreasonable allegation. FAC ¶ 31. For support, Plaintiffs cited to an HP

- 6 -

employee's open admission that its All-in-One printers are designed intentionally so as not to function at all without ink. FAC ¶ 30. Defendant counters that the statements "cannot be attributable to HP" despite the fact that the statement appeared on Defendant's own website, by a poster with an official HP employee designation. Def.'s MTD at 10; RJN, Ex. A. It should be noted that HP does not actually argue that the poster was not an HP employee, or that their statement was false, but only makes technical objections. Here, Defendant raises an *issue of fact* not appropriate for disposition on a motion for summary judgment. What the pleading demonstrates is an example of an HP employee expressing the belief, if not knowledge, that the core allegations in Plaintiffs' Amended Complaint are true. This, along with details in the pleadings describing how the Products cease to function entirely without ink, are sufficient to defeat a motion to dismiss.

Defendant's final citation, to *Hauck v. Advanced Micro Devices, Inc.* falls flat. Unlike Plaintiffs here, the *Hauck* plaintiffs alleged a vague "defect" which was comprised of "20 years of serious security vulnerabilities." *Hauck v. Advanced Micro Devices, Inc.,* No. 18-CV-00447-LHK, 2018 WL 5729234, at *5 (N.D. Cal. Oct. 29, 2018). Also, unlike Plaintiffs here, the *Hauck* plaintiffs did not even *allege* prior knowledge of the defect at issue. *Compare*, *Hauck*, 2018 WL 5729234, at *6 ("none of the allegations state AMD knew of the Defect before the California Plaintiffs' purchase dates"), *with* FAC ¶ 30 ("HP has known for years that its representations and advertisements regarding the All-in-One Printers being multifunction devices were false and misleading, and that it fails to disclose material information to consumers").

### 2. **Plaintiffs Clearly Allege the Restriction Occurred Within the Warranty Period.**

Defendant next argues that the omission claims are deficient because, according to HP, "they do not identify whether the alleged flaw occurs outside the warranty period." Def.'s MTD at 11. The Court should make short shrift of this argument for the simple fact that Plaintiffs clearly and repeatedly allege the Products were *designed* with the Restriction. FAC ¶¶ 2–3, 6, 8, 30–32, 38. This is not a case where a potential, latent, unintentional defect in design might manifest years down the road. Plaintiffs and every Class Member received a Product with the Restriction already implemented in the Product's software *at the point of sale*—indisputably within the Products' warranty period. *Id.* ¶¶ 6,

- 7 -

20, 31. Defendant cites to *Elias v. Hewlett-Packard Co.* in its argument, and *Elias* acknowledges that the Ninth Circuit only applies the "safety concern" requirement for defects arising *outside of* the warranty period. 950 F. Supp. 2d 1123, 1135 (N.D. Cal. 2013); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012) (noting a duty to disclose on the part of Hewlett-Packard Co. in multiple cases without alleging a safety concern because "the defect manifested during the express warranty period"). *Baggett v. Hewlet-Packard Co.*, another case in which HP printers were designed with deceptive practices to increase ink sales, is instructive. 582 F. Supp. 2d 1261 (C.D. Cal. 2007). The Products in *Baggett* were supposed to notify users when the ink cartridges were empty but the *Baggett* plaintiff alleged the Products were designed to falsely alert their owners that the ink cartridges were empty when they were not, in fact, empty. *Id.* at 1264, 1267 ("HP chose to program its printers to cease printing and display 'empty' signals before the cartridges run out of ink"). The *Baggett* court found that the plaintiff had sufficiently alleged fraudulent concealment. *Id.* at 1268. In *Wilson*, the Ninth Circuit acknowledged *Baggett* did not implicate its "safety concern" requirement because "the defect manifested during the express warranty period." *Wilson*, 668 F.3d at 1143. A different result should follow here.

### 3. Defendant Had a Duty to Disclose

In the context of a fraudulent omission, a duty to disclose arises in four instances, and two are relevant to this case: (1) "when the defendant ha[s] exclusive knowledge of material facts not known or reasonably accessible to the plaintiff;" *or* (2) "when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Johnson*, 272 F.Supp.3d at 1182, *quoting Collins v. eMachines, Inc.*, 202 Cal.App.4th 249 (2011); *see also Smith v. Ford Motor Co.* 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010), aff'd, 462 F. App'x 660 (9th Cir. 2011). A misrepresentation is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action ...." *Johnson*, 272 F.Supp.3d at 1182, *quoting Kwikset Corp. v. Super*. Ct., 51 Cal.4th 310, 332 (2011). Plaintiffs' allegations fit squarely within both of these two instances where a duty to disclose arises and thus HP had a duty to disclose material facts here, including but not limited to the existence of the Restriction.

a. *Knowledge of the Restriction Was Not Reasonably Accessible to Plaintiffs*

A duty to disclose arises where, as here, "according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins*, 202 Cal.App.4th at 256. *Falk,* also cited by Defendant, is instructive. The court in *Falk* found exclusive knowledge because "customers only became aware of the problem if they actually experienced it first-hand." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007). So too here. HP All-in-One printers are touted for their "convenience," and so it is no wonder HP does not make the existence of the Restriction it coded into the Products more widely known. FAC ¶ 4 (noting that HP advertises the convenience of the Products "because you don't have to buy a separate device for each task"). Nowhere on the Products' packaging or HP's website is it made clear that the Products are intentionally disabled by the Restriction. In fact, both Plaintiffs learned of the Restriction only *after* purchasing and using their Product. FAC ¶ 45, 54. *Falk* made clear that if the only way for a consumer to discover a defect was through online sleuthing, the information is not reasonable accessible to consumers:

> It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the [defect]. Some may have. But [defendant] is alleged to have known a lot more about the [defect], including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.

*Falk*, 496 F. Supp. 2d at 1097. Indeed, HP possesses "a lot more" information about the Restriction than Plaintiffs. HP designed and implemented the software that enforces the Restriction. FAC ¶¶ 20, 31, 98; *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014) ("Exclusivity is not applied with rigidity, and is analyzed in part by determining whether the defendant has "superior" knowledge of the defect. [citation] Courts have persuasively found that exclusive knowledge is not automatically defeated by the presence of information online.").

b. *Defendant Made Partial Representations but Failed to Disclose Material Facts*

Despite Defendant's bold claim that "Plaintiffs fail to identify any actionable partial representations or the facts that materially qualify the facts that were disclosed," Def.'s MTD at 14, Plaintiffs' Amended Complaint offers numerous examples of HP's advertisements and statements that

constitute partial representations that mislead consumers by describing and promoting the Products as "All-in-One" devices that perform several independent functions when, in reality, the Products' scanning and faxing features are instead tied to, and inhibited by, the availability of ink. FAC ¶¶ 4, 21–27.  Incredibly, Defendant *completely ignores* these allegations in its brief, instead spinning the fiction that "Plaintiffs do not, however, identify what those partial representations are."

These facts are material because the error message inhibits the Products' ability to function as advertised, as all-in-one devices with independent printing, copying, scanning, and faxing functionality. *Goldsmith v. Allergan, Inc.*, No. CV 09–7088 PSG (Ex), 2011 WL 2909313, at *5 (C.D. Cal. May 25, 2011) (finding partial representation where defendant made "literal[ly]" true product representation but a reasonable consumer could not use the product in the manner represented); *Myers v. BMW of N. Am., LLC*, No. 16-CV-00412-WHO, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016) (A partial representation that "[t]o lock the vehicle, the remote control must be located outside of the vehicle," is actionable when a defect "spontaneously activate the locks on its own while the remote is inside the vehicle.")  And more critically, if consumers knew the truth about the Restriction, they would think twice about buying the Products.  *See Baggett*, 582 F.Supp.2d at 1268 ("To show that information is material, a plaintiff must demonstrate that had the omitted information been disclosed, the reasonable consumer would have been aware of it and behaved differently.") (internal quotations and citations omitted); *see also* FAC ¶¶ 47 ("Plaintiff Freund would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents."), 56 ("Plaintiff McMath would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents"). This is sufficient. *Myers,* 2016 WL 5897740, at *5 (plaintiff may state a cause of action by alleged any of the four theories of omission under the CLRA and UCL).

4. **Plaintiffs Have Adequately Pled the Elements of Their Claims**

a. *Plaintiffs' Fraudulent Omission Claim is not Barred by the Economic Loss Rule*

As an initial matter, Your Honor already rightly expressed skepticism for the application of the economic loss rule in this case.  MTD Conf. 15:11–19 ("COURT: I'm not sure the economic rule is ever applied to negligent misrepresentation that takes place before the product is purchased.  And

- 10 -

so . . . I'm not having a problem with that. But I'm not sure you're asking for any damages that [] are only tort damages."). While the Economic Loss Rule bars recovery for purely monetary injuries under certain circumstances, the Rule critically does not bar claims that sound in fraud. *Dawood v. Gamer Advantage LLC*, No. 222CV00562WBSKJN, 2022 WL 3108846, at *3 (E.D. Cal. Aug. 4, 2022). This is because the Economic Loss Rule is not intended to immunize companies for their own fraudulent misrepresentations. *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1021 (N.D. Cal. 2020) (explaining that plaintiff sufficiently plead defendant's fraud-like omissions).

Here, both parties agree that Plaintiffs' claims sound in fraud. *See* Def.'s MTD at 8 ("All of Plaintiffs' claims in their FAC are grounded in fraud."); *see also Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011) (holding that a jury verdict in favor of a negligent misrepresentation claim was not barred by the economic loss doctrine); *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) ("California law classifies negligent misrepresentation as a species of fraud ... for which economic loss is recoverable.").

b. *Plaintiffs Have Adequately Pleaded Their State Law Claims*

Defendant next argues that Plaintiffs' state law claims should be dismissed, completely rehashing its failed arguments addressed above. Defendant argues Plaintiffs' UCL claim under the "unlawful" prong fails because, according to Defendant, Plaintiffs' FAL claim fails. In turn, Defendant contends Plaintiffs' FAL claim fails "for the reasons stated above" (referring to its arguments in Sections A.1–3). Defendant then offers the same rationale to attempt to defeat Plaintiffs' UCL claims under the "fraudulent" prong: "as discussed above." Def.'s 17. HP also misstates the law with regard to the UCL's fraudulent prongs, arguing that "Plaintiffs have not sufficiently pled [HP's purported representations] to be false."[1] However, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Aron*, 143 Cal. App. 4th at 807 . Defendant did just that here. FAC ¶¶ 4, 21–27.

Next, Defendant contends Plaintiffs' UCL claim under the "unfair" prong should be dismissed

---

[1] Plaintiffs might have accused Defendant of "rehashing" a meritless argument from its First Motion here, but it appears that rather than rehashed, the argument was instead copy-and-pasted verbatim.

- 11 -

"[b]ecause Plaintiffs' 'unlawful' UCL claim warrants dismissal." Def.'s MTD at 17. But the UCL establishes three separate and independent types of unfair competition: "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157 (2000). An "unlawful business activity" includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d 626, 632 (1979) (internal citation omitted). On the other hand, the law is less clear regarding what constitutes an unfair business practice. Courts often "weigh the utility of the defendant's conduct against the gravity of the harm." *Gregory v. Albertsons, Inc.,* 104 Cal. App. 4th 845, 851-53 (2002). Plaintiffs' "unfair" claims do not depend on Plaintiffs' misrepresentation or unlawful allegations—that is, these claims do not rise and fall with the "fraudulent" allegations. Here, because Defendant does not really challenge Plaintiffs unfair claim, it should not be dismissed.

Finally, Defendant contends Plaintiffs' claims under Minnesota law should be dismissed. In doing so, Defendant simply refers to its arguments against Plaintiffs' UCL, FAL, and CLRA claims. *Id.* at 18. Because each of Defendant's arguments attacking Plaintiffs' Minnesota state law claims are, in essence, "for the reasons stated above," its arguments for dismissal fall with its arguments in Sections A.1–3.

### B.     Plaintiffs' Claims for Equitable Relief Should not be Dismissed.

Next, Defendant invokes *Sonner* to challenge Plaintiffs' claims for restitution and monetary damages, another argument the Court was not persuaded by in its First Motion, stating "[o]n your equitable claims, I don't think it's hard to plead around *Sonner*, but you've got to do it, and I don't think you have." MTD Conf. 6:6–7. Now with Plaintiffs' Amended Complaint, they have. FAC ¶¶ 99–100 ("Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult."), 114–115 (same, for Plaintiffs' FAL claim). Such pleading is adequate at this early procedural posture. Indeed, the plaintiff in *Sonner* sought identical monetary and equitable relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020). After *years* of litigation, including fulsome discovery, the *Sonner* plaintiff chose to drop her legal claims as a legal ploy to avoid a jury trial. Given the advanced stage of litigation, *Sonner* simply acknowledged the plaintiff there had no remedies

- 12 -

available in equity that were not attainable at law, *id.* at 844—something that cannot be known, as in the instant case, at the pleading stage. *See Jeong,* 2022 WL 174236, at *27 ("The Court finds that in light of *Sonner*'s limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper") (collecting cases); *Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.") (citations omitted); *see also Krause-Pettai v. Unilever United States, Inc.*, No. 20-CV-1672-DMS-BLM, 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021) (declining to dismiss claims because, as here, the plaintiff could pursue alternative remedies at pleading stage); *Rothman v. Equinox Holdings, Inc.*, No. 22-CV-09760-CAS-MRWX, 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021) (same).

Defendant cites *In re MacBook Keyboard Litig.* for the statement that "[c]ourts *generally* hold that monetary damages are an adequate remedy for claims based on an alleged product defect." No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020). While Defendant's citation denotes "collecting cases," Def.'s MTD at 18, the only two cases it collects are opinions denying motions for class certification—critically, a far cry from dismissal at the pleading stage. Indeed, "at this early stage, Plaintiffs may plead alternative theories; while Plaintiffs may not recover twice, they need not choose between competing legal theories at this time." *Colopy v. Uber Techs.*, No. 19-cv-06462, 2020 WL 3544982, at *2 (N.D. Cal. June 30, 2020).

Finally, Defendant argues Plaintiffs' claims for damages and restitution under the Minnesota Uniform Deceptive Trade Practices Act must be dismissed because the MDTPA provides for injunctive relief as its sole remedy. Plaintiffs agree and concede their claims for monetary damages or restitution under the MDTPA.

    **C.**    **Plaintiffs Have Standing to Assert Claims Relating to the Non-Purchased Printers and the Printers' Faxing Function**

Defendant's final argument is a Rule 23 question of "substantial similarity" smuggled into a standing argument. As a threshold matter, Minnesota standing law, California standing law, and Eighth Circuit standing law are irrelevant to this case. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("standing in federal court is a question of federal law"). The only standing law that matters

to this case is Ninth Circuit standing law. In turn, "the prevailing view" in the Ninth Circuit is that class action plaintiffs can bring claims for products they didn't purchase "as long as the products and alleged misrepresentations are substantially similar." *See Sims v. Campbell Soup Co.,* No. 18-CV-668-PSG-SPX, 2018 WL 7568640, at *3 (C.D. Cal. Sept. 24, 2018); *see also Clay v. Cytosport, Inc.*, No. 15-CV-165-L-DHB, 2015 WL 5007884, at *7 (S.D. Cal. Aug. 19, 2015) (refusing to dismiss class claims for products not purchased by named plaintiff "[i]n light of the alleged similarity of ingredients, labels, and misrepresentations at issue in this case" and holding the issue is better addressed at the class certification stage).

While Defendant notes there is a "split" between courts in this circuit, the split is not over "whether plaintiffs can assert claims for substantially similar products," as Defendant contends. Def.'s MTD at 22. Instead, "some courts decline to address whether a plaintiff may assert claims based on products he did not purchase *until ruling on a motion for class certification*," while others address the question preliminarily at the pleading stage and "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 965 (N.D. Cal. 2013). The defendant in *Brazil* made the same argument Defendant attempts to make here—that the plaintiff cannot possibly have suffered this economic injury for products he did not buy." *Id.* The court noted, however, that "the majority of courts in this District and elsewhere in California hold otherwise." *Id.*

Whether addressed now, at the pleading stage, or later, at class certification, Plaintiffs' and Class Members' injuries are substantially similar. HP's fraudulent omission is *identical* for each of the Products, including those purchased by Plaintiffs and those not. FAC ¶¶ 18–33. Defendant subjected Plaintiffs and proposed Class Members to a common course of conduct, in that it shipped each of the Products with software implementing the Restriction at issue, and it advertised each of the Products as a convenient "All-in-One" Printer with printing, copying, scanning, and faxing functionality all the while saddling the Products with a Restriction for the sole purpose of padding HP's bottom line. *Id.* ¶¶ 34–39. Under the prevailing view within this circuit, Plaintiffs' claims should proceed.

Plaintiffs also have standing to pursue their claims regarding the Products' fax functions for the same reason. FAC ¶ 7 ("As a result of HP's intentional Design Flaw, consumers are forced to incur unexpected and unnecessary burden and expense in the form of ink purchases or be able to scan or to fax documents despite the fact that ink is not used to accomplish those tasks."). In addition, just because a consumer has yet to use one of the "All-in-One" Printer's features does not mean they never will. Indeed, Plaintiffs have alleged economic injuries for being sold a Product that does not function as advertised and is therefore worth less than Plaintiffs bargained for. *Id.* ¶¶ 5, 9 28. HP does not claim, nor could it, that some of the Products contain a modified version of the Restriction software which prohibits scanning but not faxing. Plaintiffs and each proposed Class Member received Products worth less because they contained the Restriction. That some consumers have already been inconvenienced by the inability to timely fax a document while others may in the future is irrelevant. The alleged harm is not only the inconvenience of being unable to scan or fax documents. The alleged harm is also being fraudulently induced to purchase a Product that does not work as advertised and is therefore worth less. *Id.*

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs, individually and on behalf of others similarly situated, respectively request that the Court deny HP's Motion to Dismiss.


Dated: April 7, 2023                                                          Respectfully submitted,

                                                                                  */s/ Trenton R. Kashima*
                                                                                Trenton R. Kashima
                                                                                **MILBERG COLEMAN BRYSON**
                                                                                **PHILLIPS GROSSMAN PLLC**
                                                                                402 W. Broadway, Suite 1760
                                                                                San Diego, CA 92101
                                                                                T : (866) 252-0878
                                                                                tkashima@milberg.com

                                                                                *Attorneys for Plaintiffs*
                                                                                *and Proposed Class*