1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MORGAN, LEWIS & BOCKIUS LLP**
Molly Moriarty Lane, Bar No. 149206
molly.lane@morganlewis.com
Christina Chen, Bar No. 294921
christina.chen@morganlewis.com
Phillip J. Wiese, Bar No. 291842
phillip.wiese@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:     +1.415.442.1001

*Attorneys for Defendant*
*HP Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GARY FREUND and WAYNE MCMATH, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>HP INC., d/b/a HP COMPUTING AND PRINTING INC., Delaware corporation,<br>              Defendant. | Case No. 5:22-cv-03794-BLF<br><br>**DEFENDANT HP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date:  July 27, 2023<br>Hearing Time:  9:00 am<br><br>Judge:      Honorable Beth L. Freeman<br>Court:      Courtroom 3 – 5th Floor |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 2

    A.   Plaintiffs Have Failed to Allege Facts to Support Their Fraud-Based Claims. .......... 2

        1.   Plaintiffs Cannot Identify the "Who, What, When, Where, and How" of HP's Alleged Fraud, Necessitating Dismissal of Each Cause of Action. ................................................................................................ 2

        2.   Plaintiffs Have Not Pled Facts About the Warranty Period. .......................... 5

        3.   HP Had No Duty to Disclose the Alleged Flaw. ............................................ 6

            a.   Lack of Exclusive Knowledge ........................................................... 6

            b.   Partial Representations ...................................................................... 8

    B.   Plaintiffs' Fraudulent Omission Claim is Barred by the Economic Loss Rule. .......... 8

    C.   Plaintiffs Have Not Stated a Claim for Their State Law Claims. ............................. 10

    D.   Plaintiffs Have Not Pled They Are Entitled to Equitable Restitution. ..................... 11

    E.   Plaintiffs Lack Standing for Products They Did Not Purchase. .............................. 12

    F.   Plaintiffs Should Not Be Granted Leave to Amend ................................................ 14

III. CONCLUSION ................................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

5

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................................8

6

7

*Aleksick v. 7-Eleven, Inc.*,
   205 Cal. App. 4th 1176 (2012) .............................................................................10

8

*Anderson v. Apple Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................................11

9

10

*Baba v. Hewlett-Packard Co.*,
   No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ....................2, 5

11

12

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ..................................................................6

13

*Berenblat v. Apple, Inc.*,
   Nos. 08-4969 JF, 09-1649 JF, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ..........5

14

15

*Brazil v. Dole Food Co.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ...................................................................13

16

17

*Brazil v. Dole Food Co.*,
   No. 12-cv-01831, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .........................13

18

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ..............................................................13, 14

19

20

*Brown v. Madison Reed, Inc.*,
   21-cv-01233, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ................................11

21

22

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ...............................................................................14

23

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ..................................................................................6

24

25

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ...................................................................................2

26

*Czuchaj v. Conair Corp.*,
   No. 13-cv-1901-BEN RBB, 2014 WL 166235 (S.D. Cal. Apr. 18, 2014) ..............7

27

28

*Davis v. HSBC, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ..................................................................................6

*Elias v. Hewlett-Packard Co.*,
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) ...................................................................6

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) ...................................................................................10

*Goldstein v. Gen. Motors LLC*,
    517 F. Supp. 3d 1076 (S.D. Cal. 2021) ...................................................................8

*Guthrie v. Transamerica Life Ins. Co.*,
    561 F. Supp. 3d 869 (N.D. Cal. 2021) ...................................................................11

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................10

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*,
    483 F. Supp. 3d 838 (C.D. Cal. 2020) ...................................................................9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...................................................................2

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................................................10

*Lazar v. Hertz Corp.*,
    69 Cal. App. 4th 1494 (1999) ...................................................................10

*Medina v. Safe-Guard Prods. Intern., Inc.*
    164 Cal. App. 4th 105 (2008) ...................................................................14

*Rattagan v. Uber Techs., Inc.*,
    19 F.4th 1188 (9th Cir. 2021) ...................................................................8

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ...................................................................8, 9

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ...................................................................8

*TopDevz, LLC v. LinkedIn Corp.*,
    20-cv-08324, 2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) ...................................................................11

*United States ex rel. Anita Siligno v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ...................................................................2

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ...................................................................14

*Watkins v. MGA Ent., Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ...................................................................11

1

**OTHER AUTHORITIES**

2

Fed. R. Civ. P. 9(b) ................................................................................................1, 2, 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.   **INTRODUCTION**

2   As set forth in more detail in HP's motion to dismiss Plaintiffs' FAC,[1] Plaintiffs squandered

3   the opportunity to correct their pleading deficiencies the Court granted them when it dismissed their

4   original Complaint.  Plaintiffs' Opposition ("Opp."), only further underscores that this is so:

5   Plaintiffs there rely again almost exclusively on the same allegations this Court previously found to

6   be insufficient to state their claims.[2]  And the few new allegations Plaintiffs do point to from the

7   FAC are conclusory, non-factual, and insufficient to fill the gaps in their pleading that caused their

8   claims to be dismissed in the first place, including, as examples:

9          (1) Four years prior to filing this lawsuit, an unnamed and unverified customer posted on an

10             HP community forum that he or she had problems scanning from a printer model that is

11             not even at issue in this litigation (FAC, ¶30);

12         (2) An alleged HP employee responded on the public forum that the unrelated printer was

13             designed not to work when the print cartridge was empty or missing[3] (FAC ¶ 30); and

14         (3) Upon information and belief, the printers that Plaintiffs claim are at issue in this

15             litigation—and that Plaintiffs previously represented they had tested—use the same

16             unidentified software that contains the same unidentified "defect" that Plaintiffs have still

17             not adequately alleged or described (FAC ¶¶ 20, 31).

18   Because Plaintiffs rely in their Opposition on recycled allegations from their original

19   Complaint and a few inconsequential new allegations from their FAC, their claims should be

20   dismissed on the same grounds on which the original Complaint was dismissed.  As before: (1)

21   Plaintiffs have failed to plead their fraud-based claims with the particularity required under Rule

22

23   [1] HP incorporates all abbreviations from its Memorandum of Points and Authorities in support of its

24   Motion to Dismiss (the "Opening Brief").

25   [2] To illustrate this point, HP has compared, side-by-side, the factual allegations from the FAC that

26   Plaintiffs rely on in their Opposition with the corresponding allegations in the original Complaint.

27   *See* **Appendix A**.

28   [3] The full response was: "HP Printer is designed in such a way that with the empty cartridge or

     without the cartridge printer will not function."  FAC ¶ 30.

                                          NOT. OF MOT. AND MOT. TO DISMISS
                                          PLAINTIFFS' FIRST AMENDED COMPLAINT

9(b); (2) Plaintiffs have failed to plead that the alleged flaw occurred within the warranty period or otherwise implicates a safety concern; (3) Plaintiffs have not alleged sufficiently that HP had a duty to disclose the facts that Plaintiffs contend they omitted; (4) Plaintiffs' fraudulent omission claim is barred by the economic loss doctrine; (5) Plaintiffs have not alleged facts demonstrating that they lack an adequate remedy at law as is necessary to allege their equitable claims; and (6) Plaintiffs have not alleged that the products at issue are substantially similar to the products they purchased to confer standing to assert their claims.  Plaintiffs have now had two opportunities to plead their claims and failed to do so despite specific guidance from this Court on what was needed.  They have not pled their claims because they cannot plead their claims.  Further amendment would be futile. The FAC should be dismissed with prejudice.

## II. __ARGUMENT__

### A. Plaintiffs Have Failed to Allege Facts to Support Their Fraud-Based Claims.

#### 1. Plaintiffs Cannot Identify the "Who, What, When, Where, and How" of HP's Alleged Fraud, Necessitating Dismissal of Each Cause of Action.

In its Motion, HP demonstrated that Plaintiffs have still failed to meet their heightened burden under Rule 9(b) to plead their fraud-based claims with particularity because they have not identified specifically "'the who, what, when, where, and how' of the alleged fraudulent conduct." [4] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  In an effort to defeat HP's motion, in their Opposition, Plaintiffs cite to paragraphs and sections of the First Amended Complaint that are virtually or entirely identical to the original Complaint.  The Court already found that the original Complaint did not state a claim for

---

[4] Plaintiffs argue that they need not meet the Rule 9(b) standard because "knowledge may be pleaded generally." Opp. at 4:25-26.  Not so.  Plaintiffs must "set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred." *United States ex rel. Anita Siligno v. WellPoint, Inc.*, 904 F.3d 667, 679-80 (9th Cir. 2018).  As demonstrated below, the only facts Plaintiff allege to demonstrate HP's knowledge of the alleged flaw is a single post on the HP community forum, which is not sufficient to allege corporate knowledge. *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011).

1  fraud (Order Granting Motion to Dismiss Complaint with Leave to Amend ("MTD Order") at 3:18–

2  23 (Dkt. 39)), and Plaintiffs cannot expect a different result by citing to those very same allegations.

3        For example, Plaintiffs argue in their Opposition that they have satisfied the Rule 9(b)

4  standard by alleging that "HP deliberately designed (thus knew about) their software that prevents

5  them from functioning as HP advertised and warranted." In support of this argument, Plaintiffs cite

6  to FAC paragraphs 5, 28, and 29 (Opp. at 4:9–10) but those paragraphs are identical to the

7  corresponding paragraphs in the original Complaint with the exception of minor edits.  *See*

8  Appendix A, at FAC ¶ 5, 28 & 29.  The minor edits to FAC paragraphs 5, 28, and 29 do not provide

9  additional facts about the "who, what, when, where, and how" of the alleged fraudulent omission

10  (Opp. at 4:7–9) beyond what the Court has already rejected, and they do not save Plaintiff's fraud-

11  based claims.

12        There are only three new allegations in the FAC on which Plaintiffs rely in an effort to prop

13  up their fraud-based claims:

14      1.  The "All-in-One Printer models" at issue "have the same software" and the

15         same alleged "Restriction" (FAC ¶ 20);

16      2.  A different printer that is not at issue here had a problem with a cracked ink

17         cartridge in October 2018, and an unidentified person who claimed to be an

18         HP employee remarked on an HP forum that that printer was designed in such

19         a way that it would not work if the ink cartridge is empty (FAC ¶ 30); and

20      3.  Upon ***information and belief***, the apparent "Restriction" about which

21         Plaintiffs complain is based on "HP's software." (FAC ¶ 31).

22  These three allegations do not save Plaintiffs' fraud-based claims.

23        In Paragraphs 20 and 31, Plaintiffs allege that the purported defect was caused by HP's

24  software.  But in its order granting HP's last motion, the Court asked more of Plaintiffs, noting that

25  they should allege "further facts about the nature of the software problem." (MTD Order, 6:11–15.)

26  Despite this admonition, Plaintiffs have not alleged those facts.  They have not alleged a description

27  of the software and/or software versions used in the at-issue-printers, whether each of the at-issue

28

1   printers used the same software or software versions, whether the at-issue printers all had the same

2   error code, or whether Plaintiffs observed the specific defect in each of the printers.

3          At the motion to dismiss hearing, Plaintiffs represented that they had tested all of the

4   products to ensure they had the same error code and the same defects:

5                **THE COURT:**  So am I right that somebody has tested these other

6                products and you're sure that they get the same error code?  Or are you just

7                lumping them together and waiting to find out?

8                **MR. KASHIMA:**  No, your honor.  They have been tested.

9   Hr'g Tr., Jan. 5, 2023 ("1/5/23 Hearing"), 21:20–24 (Dkt. 37).  Despite this representation, Plaintiffs

10  have said absolutely nothing about the results of their supposed tests in their FAC or Opposition and,

11  instead, their allegations are based on "information and belief."  FAC ¶ 31.  Allegations based on

12  information and belief beg the question of whether any testing has actually been done or whether the

13  results were incompatible with Plaintiffs' allegations.

14         Paragraph 20 suffers from the same problem, alleging in conclusory terms that the at-issue

15  printers "have the same software."  Plaintiffs have failed to allege detail consistent with the Court's

16  prior instructions.

17         Plaintiffs' reliance on discussions on an HP forum are also insufficient to save their claims.

18  In Paragraph 30, Plaintiffs allege that an HP customer asked on an HP community website "why

19  their All-in-One Printer would not scan with a damaged ink cartridge."  Plaintiffs allege that an HP

20  employee[5] responded that the "HP Printer is designed in such a way that with the empty cartridge or

21  without the cartridge printer will not function."  However, the alleged HP employee did not say

22  anything about the printers at issue in this case.  FAC ¶ 30.  The printer to which the customer was

23  referring was an unrelated HP Envy 5530 printer.  *See* RJN, Ex. A (identifying the "Product" as

24  ────────────────────

25  [5] The webpage upon which Plaintiffs rely expressly notes that "[t]he opinions expressed above are

26  the personal opinions of the authors, not of HP."  *See* HP community forum,

27  https://h30434.www3.hp.com/t5/Scanning-Faxing-Copying/Scanning-without-a-working-ink-

28  cartridge/td-p/6777739 (last visited Apr. 20, 2023).  HP previously requested judicial notice of this

    webpage.  HP's RJN in Supp. of Mot. to Dismiss, Ex. A (Dkt. 47-1) ("RJN, Ex. A").

NOT. OF MOT. AND MOT. TO DISMISS
                                                PLAINTIFFS' CLASS ACTION COMPLAINT

1    "Envy 5530").  Plaintiffs do not allege that they tested the HP Envy 5530 and found it had the same

2    error as the at-issue printers or that the HP Envy 5530 was designed in the same manner as the at-

3    issue printers.  Because the HP Envy 5530 is a 5000-series printer, and the at-issue "Envy" printers

4    are all from the 6000-series (*see* FAC ¶ 20), it is possible, and even likely, that they were designed

5    differently or used different software or software versions.

6         Even if the customer's comments on the HP community forum were valid, they cannot save

7    Plaintiffs' claims from dismissal.  As this Court previously held, "allegations of a few complaints on

8    the Internet are insufficient to support [plaintiff's] claim that HP engaged in corporate fraud by

9    making misrepresentations and omissions regarding a known defect."  *Baba*, 2011 WL 317650, at

10   *3; *see also Berenblat v. Apple, Inc.*, Nos. 08-4969 JF, 09-1649 JF, 2010 WL 1460297, at *9 (N.D.

11   Cal. Apr. 9, 2010) (noting that "complaints posted on Apple's consumer website merely establish

12   that some consumers were complaining.  By themselves, they are insufficient to show that Apple had

13   knowledge of [the alleged defect] and sought to conceal that knowledge from consumers").

14        The only new allegations in Plaintiffs' FAC are insufficient to support any of Plaintiffs'

15   fraud-based claims.

16              **2.    Plaintiffs Have Not Pled Facts About the Warranty Period.**

17        Plaintiffs also fail to explain in their Opposition how they alleged sufficiently that the

18   purported defects in the at-issue printers "occur[ed] within the warranty period or otherwise

19   implicate a safety concern."  MTD Order, 5:21–23.  The FAC does not reference, even once, the

20   warranty period for the at-issue printers or how long it lasts.  This is fatal to Plaintiffs' claim.

21        Plaintiffs argue that the products were "designed with the Restriction," and, therefore, the

22   alleged flaw occurred "at the point of sale—indisputably within the Products' warranty period."

23   Opp. at 7:23–8:1.  But as with their fraud claims, Plaintiffs largely cite to stale allegations in the

24   FAC that are entirely or virtually the same as the allegations in the original Complaint that this Court

25   found lacking.  *See* Appendix A, at FAC ¶¶ 2–3, 6, 8, 30, 38.  Plaintiffs' only new allegations are

26   contained in paragraphs 30 and 31, and these paragraphs are insufficient for the reasons described

27   above.  Plaintiffs fail to plead, as the Court instructed, "whether the alleged defects are occurring

28   within the warranty period or otherwise implicate a safety concern."  MTD Order, 5:21–23.

1  Plaintiffs' citation to *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007)

2  does not save their claim.  In *Baggett*, the court did not analyze the warranty period at all, and

3  instead found, without reasoning or explanation, that the plaintiff had sufficiently alleged

4  concealment.  *Id.* at 1268.  Later cases, however, instruct that the warranty period is a key factor in

5  the pleading analysis.  If a defect manifested outside the warranty period, then Plaintiff must plead

6  that the alleged flaw posed safety concerns.  *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249,

7  257 (2011) (plaintiff sufficiently stated a claim because they alleged that the flaw occurred "during

8  and before the warranty expired"); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1136 (N.D.

9  Cal. 2013) (noting that a plaintiff "may allege fraudulent omissions beyond safety-related concerns if

10  those omissions led to malfunctions during the warranty period).  Here, Plaintiffs have not pled

11  anything about the warranty period, including its length, whether their alleged issues with the

12  printers occurred within the period, or even whether the at-issue printers had a warranty period at all.

13  Their claims remain deficient.

14  **3.    HP Had No Duty to Disclose the Alleged Flaw.**

15  Plaintiffs also fail to plead that HP had any duty to disclose to its customers the alleged flaw

16  in its printers and, for that separate reason, its fraudulent omission-based claims fail.  Plaintiffs claim

17  that two circumstances obligated HP to disclose the alleged flaw: (1) HP's knowledge of the alleged

18  flaw that was not reasonably accessible to the Plaintiffs; and (2) HP's partial representations and

19  failure to disclose material facts.  Opp. at 8-9.  The FAC supports neither theory.

20  **a.    *Lack of Exclusive Knowledge***

21  Plaintiffs have not pled any facts to suggest that HP knew or should have reasonably known

22  about the alleged defect and concealed it at the time of sale.  *See, e.g., Davis v. HSBC, N.A.*, 691

23  F.3d 1152, 1161 (9th Cir. 2012).  In their Opposition, Plaintiffs glide past the knowledge

24  requirement, saying only that "HP possesses 'a lot more' information about the Restriction than

25  Plaintiffs.  HP designed and implemented software that enforces the Restriction."  Opp. at 9:19–20

26  (citing FAC ¶¶ 20, 31 & 98).  But the allegations to which Plaintiffs cite in the FAC do not establish

27  that HP had any knowledge of the alleged flaw:

28

- Paragraph 20 states, in relevant part and in summary fashion, that the "All-in-One Printers have the same software, which prohibits the printer from operating as a scan or fax machine when it is low on ink or when the ink cartridge is missing." Taken at face value, this only alleges (albeit conclusorily) that there is a software problem that affects each of the at-issue printers. It does not establish that HP had knowledge of the alleged flaw or that it had more knowledge about the alleged flaw than Plaintiffs.

- Paragraph 31 states in relevant part that "Each of the All-in-One Printers contains the same base software that causes the Printer to enter a 'error state' when it is low or out of ink, or when the ink cartridge is missing or damaged. This error state prevents the All-in-One Printers from function [sic] until the error is cleared (i.e. a new ink cartridge is placed into the printer). Accordingly, as HP acknowledges, its printers are 'designed in such a way that with the empty cartridge or without the cartridge printer will not function.'" This paragraph simply states that an unrelated printer (and specifically the HP Envy 5530) did not work when the print cartridge is empty or missing.

- Paragraph 98 refers to Plaintiffs and the putative subclass's remedy at law and does not allege any facts about HP's knowledge.

In support of their argument regarding HP's purported knowledge, Plaintiffs cite to *Czuchaj v. Conair Corp.*, No. 13-cv-1901-BEN RBB, 2014 WL 166235 (S.D. Cal. Apr. 18, 2014), but their reliance on that case is puzzling. There, despite customers noting the problems on consumer websites, the court found the plaintiffs had not alleged that the manufacturer knew "a lot more about the defect" or had information unavailable to the public. *Id.* at *5. On that basis, the court granted the manufacturer's motion to dismiss because plaintiffs had not sufficiently alleged the exclusivity of the manufacturer's knowledge. *Id.*

The same result should hold here. Nothing in the FAC demonstrates HP knew its All-In-One Printers would not fax or scan when its ink cartridges are low or depleted much less that HP had "superior" or "exclusive" knowledge. At best, the allegations in the FAC demonstrate that a customer posted on the HP community forum that there was an issue scanning on an unrelated

1   printer when the print cartridge was damaged.  In response, someone, purporting to be an HP

2   employee, said that the print function of the printer does not work when the print cartridge is empty

3   or missing.  FAC ¶ 30.

4        Based on the facts alleged, HP had no duty to disclose based on having "exclusive

5   knowledge of material facts not known to [Plaintiffs]."  *Smith v. Ford Motor Co.*, 749 F. Supp. 2d

6   980, 987 (N.D. Cal. 2010).

7                    b.    *Partial Representations*

8        In response to HP's assertion that Plaintiffs failed to identify any actionable partial

9   representations, Plaintiffs refer to eight paragraphs in the FAC.  Opp. 9:25–10:4 (citing FAC ¶¶ 4,

10  21–27).  Yet, these FAC allegations are identical to those from the original Complaint that the Court

11  already found did not sufficiently allege that HP had a duty to disclose.  *See* Appendix A at FAC

12  ¶¶ 4, 21–27.  Plaintiffs offer no new facts or allegations to support their theory that HP made partial

13  representations while suppressing some material facts.[6]  Plaintiffs do not even quote one such partial

14  representation from the FAC.   Plaintiffs' failure to identify a single new allegation is fatal to their

15  claim.  *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 578-89 (N.D. Cal. 2019).

16  **B.    Plaintiffs' Fraudulent Omission Claim is Barred by the Economic Loss Rule.**

17       In their Opposition, Plaintiffs argue that the economic loss rule does not bar claims for

18  fraudulent omission and cite four cases they contend support their argument. *See* Opp. at 10–11.

19  Plaintiffs fail to capture, however, the full jurisprudence on the economic loss doctrine and

20  misrepresent the judicial landscape on the doctrine's application to fraudulent *omissions*. Whether

21  fraudulent concealment or omission claims are barred by the economic loss rule remains unsettled in

22  California law and the Ninth Circuit, although the weight of authority is in HP's favor. *See Rattagan*

23  *v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (certifying the question to the California

24  Supreme Court); *see also Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1093 (S.D. Cal.

25  2021) (holding "[t]he narrowly tailored exception to the economic loss rule articulated in *Robinson*

26  ─────────────────

27  [6] The referenced allegations do not identify what the partial representations are, what material

28  qualifying facts were withheld, or that Plaintiffs relied on those partial representations.  Opening

    Brief, at 14:10-26.

1   *Helicopter* does not extend to fraudulent omission claims"); *In re Ford Motor Co. DPS6 Powershift*

2   *Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 849 (C.D. Cal. 2020) (holding *Robinson*

3   established "a claim for fraud by affirmative misrepresentation may avoid the economic loss rule,

4   but it does not establish any other exception").

5       In *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004), the plaintiff's

6   misrepresentation and fraud claims were based on the actions the defendant took *after* the parties

7   entered into a contract to purchase aviation parts, including the provision of false certificates of

8   conformance about the quality of those parts.  The California Supreme Court laid out the traditional

9   rule that when "a purchaser's expectations in a sale are frustrated because the product he bought is

10  not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic'

11  losses."  *Id.* at 988.  But there, the Court found that the manufacturer's misrepresentations regarding

12  the quality of the aviation parts on the certificates of conformance fell outside that rule.  Those

13  misrepresentations constituted a tort independent of the contract to purchase the parts and occurred

14  after the initial sale.  The Court found the economic loss rule did not apply because there was a harm

15  "above and beyond a broken contractual promise."  *Id.* at 988.  The Court held that its decision was

16  "limited to a defendant's *affirmative* misrepresentations on which a plaintiff relies and which expose

17  a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 993.

18  The economic loss rule "requires a purchaser to recover in contract for purely economic loss due to

19  disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual

20  promise." *Id.* at 988. A harm is "above and beyond" the breach of contract, when it "violates a duty

21  independent of the contract arising from principles of tort law." *Id.* at 989.

22      The situation here is distinguishable.  Unlike in *Robinson*, where the defendant made

23  *affirmative* misrepresentations, Plaintiffs here allege that HP made fraudulent *omissions*.  The Court

24  in *Robinson* did not decide whether its holding extended to omissions.  Moreover, in *Robinson*, the

25  defendant's misrepresentations were based on conduct that occurred ***after*** the contract was formed—

26  i.e., after the purchase of the aviation parts—and, thus, were separate, and distinct from the

27  plaintiff's breach of contract claim.  *Id.* at 990–91.  Here, Plaintiffs allege they were "misled at the

28  point of sale."  Opp. at 4:11.  Plaintiffs claim HP's "representations, advertisements, and forward-

1    facing marketing materials are misleading" and induce the customer to purchase its "defected" All-

2    in-One printers.  *Id.* at 4–7.  And the losses that Plaintiffs seek to recover are the same economic

3    losses to which they would be entitled in a breach of contract action, namely, all or part of the

4    purchase price for their printers.  FAC, ¶¶ 47 and 56 (Plaintiffs would "not have purchased the

5    device or would not have paid as much for it had [they] known that [they] would have to maintain

6    ink in the device in order to scan documents.").  Notably missing are any allegations regarding HP's

7    purported misrepresentations after Plaintiffs purchased the at-issue printers.  Plaintiffs' failure to

8    allege any misrepresentations outside the context of Plaintiffs' purchase of their printers forecloses

9    Plaintiffs' fraud-based claims under the economic loss rule.  *See Erlich v. Menezes*, 21 Cal. 4th 543,

10   552 (1999) ("[C]ourts will generally enforce the breach of a contractual promise through contract

11   law, except when the actions that constitute the breach violate a social policy that merits the

12   imposition of tort remedies.").

13          **C.      Plaintiffs Have Not Stated a Claim for Their State Law Claims.**

14          Plaintiffs do not meaningfully grapple with HP's arguments as to the UCL.  As described

15   above, Plaintiffs have not sufficiently alleged that HP committed any fraudulent acts, and, therefore,

16   there is no claim under the "fraudulent" prong.  Plaintiffs have not alleged sufficiently that their

17   printers did not operate as represented or that HP's representations (to the extent Plaintiffs allege

18   any) were false, misleading, or deceived members of the public.  *Kowalsky v. Hewlett-Packard Co.*,

19   771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011).  The only allegations Plaintiffs cite to support their

20   "fraudulent" UCL claim are identical to the previously-rejected allegations in the original

21   Complaint.  Opp. at 11:24–25.

22          The "unlawful" UCL claim is derivative of the FAL claim, and Plaintiffs must allege a

23   violation of that law to state an "unlawful" UCL claim.  *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th

24   1494, 1505 (1999).  Plaintiffs have not sufficiently alleged a violation of the FAL for the reasons

25   stated above and, therefore, because their statutory claim fails, their derivative UCL claim also fails.

26   *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012).

27          With respect to the "unfair" prong, Plaintiffs do not distinguish *Hadley v. Kellogg Sales Co.*,

28   243 F. Supp. 3d 1074, 1104–1105 (N.D. Cal. 2017), which held that an "unfair" UCL claim cannot

survive where business practices alleged under the "unfair" prong (1) overlap entirely with a defective "unlawful" UCL claim; and (2) are based on the same factual contentions regarding defendants' conduct.  That is precisely the situation here.  Plaintiffs instead vaguely state that courts may "weigh the utility of the defendant's conduct against the gravity of the harm" without citing any authority where a court has allowed a similar UCL claim to proceed.  Opp. at 12:7–8.

Finally, Plaintiffs appear to agree that the Minnesota state law claims rise and fall with their UCL, FAL, and CLRA claims because they offer no independent reasons why those claims should remain in the case.  As described above, and in HP's Opening Brief, Plaintiffs have not sufficiently pled their UCL, FAL, and CLRA claims, and so, like those claims, the Minnesota state law claims must also be dismissed.

### D.    Plaintiffs Have Not Pled They Are Entitled to Equitable Restitution.

In response to HP's assertion that Plaintiffs have not pled a claim for equitable restitution, Plaintiffs cite numerous cases that stand for the proposition that damages and equitable restitution may be pled in the alternative.  Opp. at 12:24-13:10.  This principle is not seriously in question.  The Court made the same observation in its Order granting HP's first Motion to Dismiss.  MTD Order, 9:22–25 (citing *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020)).

As the Court noted, though, Plaintiffs must "plead that they lack an adequate remedy at law." MTD Order, 9:27–10:2.  This is consistent with numerous decisions in the Northern District.  *See, e.g.*, *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) ("[P]laintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done."); *Brown v. Madison Reed, Inc.*, 21-cv-01233, 2021 WL 3861457, *12 (N.D. Cal. Aug. 30, 2021) (Plaintiffs must "expressly allege that their remedies at law are inadequate"); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 837 (N.D. Cal. 2021) ("Plaintiffs' equitable-relief claim requires them to plead facts that, if proven, would show legal remedies would be inadequate."); *TopDevz, LLC v. LinkedIn Corp.*, 20-cv-08324, 2021 WL 3373914, at *5 (N.D. Cal. Aug. 3, 2021) (dismissing claim "because nowhere in the complaint

1   do Plaintiffs allege that the damages they seek are inadequate or otherwise distinguish their request

2   for restitution from their request for damages").

3         Plaintiffs have not satisfied that pleading standard or pled sufficiently that they lack an

4   adequate remedy at law.  Plaintiffs instead equivocate by saying they "seek restitution ***if monetary***

5   ***damages are not available***."  FAC ¶ 99 (emphasis added).  Plaintiffs also allege that "even if

6   damages were available, such relief would not be adequate to address the[ir] injury."  *Id.* ¶ 100.  This

7   is not sufficient because "Plaintiffs must plead facts as to why their claims . . . provide inadequate

8   remedies at law."  MTD Order at 10:2–4.  Plaintiffs do not allege any facts about why or in what

9   circumstances monetary damages are not available, nor do they distinguish in any way their

10   restitution request from their damages claims.  *See* FAC ¶¶ 99–100, 114–15.  This Court dismissed

11   the equitable restitution claims from the original Complaint, and it should do so again here for the

12   same reason.

13       **E.**     **Plaintiffs Lack Standing for Products They Did Not Purchase.**

14         As the Court acknowledged, Plaintiffs may have standing to assert claims for products they

15   did not purchase "so long as ***the products*** and ***alleged misrepresentations*** are substantially similar."

16   MTD Order, 11:8–11 (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D.

17   Cal. 2012); *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 887 (D. Minn. 2021))

18   (emphasis added).  Plaintiffs focus on the second part of the test, by claiming that HP made the same

19   omissions for each of the at-issue products, but they ignore entirely the first part as they fail to allege

20   whether the products themselves are the same.  They are not, and for that reason, Plaintiffs lack

21   standing to assert claims based on those products.

22         As was noted at the hearing on the last motion to dismiss, the products are not similar.  For

23   example, some have flatbed scanners, others have feed-through scanners, and some have USB or

24   other capabilities.  1/5/23 Hearing Tr., at 21:14-16.  Indeed, Plaintiffs themselves allege that not all

25   of the at-issue printers have fax capabilities (*see* FAC ¶ 3, 4), and the FAC confirms that the HP

26   ENVY 6455e has Auto 2-Sided printing while the HP DeskJet 4155e does not.  These product

27   differences go to the function of the printers themselves.  While Plaintiffs claim that this does not

28   matter because each of the at-issue printers run the same software, they do not allege facts sufficient

1    to demonstrate that could be true.  Plaintiffs simply claim in conclusory fashion that each of the at-

2    issue printers contain the same software that causes the same error.  FAC ¶ 31.  As discussed

3    previously, when the Court specifically asked for information about this exact topic at the hearing,

4    Plaintiffs represented that they had done testing to determine that all of the at-issue printers had the

5    same error code.  1/5/23 Hearing Tr., at 21:20–24.  If Plaintiffs tested each of the printers, however,

6    that is not apparent from the FAC or Plaintiffs' Opposition.  Plaintiffs simply plead, "on information

7    and belief, the problem rests with HP's software."  FAC ¶ 31.  This is simply not sufficient to show

8    that the ***products*** were substantially similar.

9          Even with respect to the ***alleged misrepresentations*** part of the test, which Plaintiffs actually

10   attempt to address, they have failed to allege or argue sufficiently that the alleged misrepresentations

11   were substantially similar.  Plaintiffs claim that HP "advertised each of the Products as a convenient

12   'All-in-One' Printer with printing, copying, scanning, and faxing functionality . . . ."  Opp. at 14:22–

13   27 (citing FAC ¶¶ 34–39).  But the paragraphs to which Plaintiffs cite do not refer to HP's

14   advertisements for any of the at-issue printers, but instead relate to the cost of ink and ink sales.

15   FAC ¶¶ 34–39.  Elsewhere in the FAC, Plaintiffs cite advertising for the HP ENVY 6455e and HP

16   DeskJet 4155e printers, but they do not plead with specificity the contents of the advertisements for

17   any of the other ten at-issue products.  Plaintiffs simply, and confusingly, say "HP's All-in-One

18   Printers are devices marketed and sold as having three core functions:  printing, copying and

19   scanning," while omitting any reference to faxing.  FAC ¶ 21.

20         Plaintiffs' citation to the *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 965 (N.D. Cal. 2013)

21   (*Brazil I*)[7] is unavailing.  In *Brazil II*, the plaintiffs brought suit alleging that fruit and fruit product

22   food labels contained the same "all natural" misrepresentation.  The court found that the products

23   were substantially similar, because there is no meaningful difference between "Dole Mixed Fruit in

24   Cherry Gel" and "Dole Mixed Fruit in Black Cherry or Peach Gel."  *Brazil II*, 2013 WL 5312418, at

---

[7] The quoted material in Plaintiffs' brief cannot be found in *Brazil*.  It appears that Plaintiffs meant

26   to cite *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d at 890 and *Brazil v. Dole Food Co.*, No.

27   12-cv-01831, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) (*Brazil II*).  HP refers to *Brazil II*, which

28   appears to be the case Plaintiffs intended to cite.

NOT. OF MOT. AND MOT. TO DISMISS
                                         PLAINTIFFS' CLASS ACTION COMPLAINT

1    *7.  That is different from the circumstances here, where, as described above, the printers have

2    different features and different functionality.

3         Plaintiffs additionally fault HP for citing California, Minnesota, and Eight Circuit law in its

4    standing analysis (Opp. 13:26–14:1), but Plaintiffs' statutory claims each have individual standing

5    requirements as well.  *Brown*, 913 F. Supp. 2d at 890 (citing Cal. Bus. & Prof. Code § 17204; Cal.

6    Civil Code § 1780(a)); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)

7    (finding that plaintiffs lacked standing without alleging that specific, at-issue products suffered from

8    the alleged defect).  In addition to considering whether Plaintiffs have sufficiently alleged Article III

9    standing, the Court must look to California and Minnesota substantive law to decide whether

10   Plaintiffs have statutory standing to assert their claims.

11        Finally, with respect to the fax functionality, the Court instructed Plaintiffs to "include

12   factual allegations to suggest that the fax functionality suffers from a substantially similar defect."

13   MTD Order, 11:18–20.  They have not done so.  Instead, Plaintiffs once again cite paragraphs in the

14   FAC that are virtually identical to the paragraphs in the Complaint that the Court already rejected.

15   Because Plaintiffs have failed to add any new allegations about the fax functionality, they do not

16   have standing to pursue claims related to fax functionality, and those claims should be dismissed.

17        **F.    Plaintiffs Should Not Be Granted Leave to Amend.**

18        Plaintiffs have not satisfied their burden to show that they can amend the FAC to plead their

19   claims properly.  *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th

20   Cir. 2011) (finding leave to amend should be denied when past amendments have failed to cure

21   pleading deficiencies and "future amendment would be futile"); *see also Medina v. Safe-Guard*

22   *Prods. Intern., Inc.* 164 Cal. App. 4th 105, 112 n.8 (2008) (noting that it is plaintiff's burden to show

23   that an amendment to the complaint will change its "legal effect").  Plaintiffs have already had two

24   opportunities to plead their case and have not even asked for a third.  The Court should dismiss

25   Plaintiffs' claims without leave to amend.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    <u>CONCLUSION</u>

Based on the foregoing, and on the reasons in HP's Opening Brief, the Court should dismiss Plaintiffs' First Amended Class Action Complaint in its entirety for failure to state a claim, without leave to amend.

Dated:  April 28, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

By  */s/ Molly Moriarty Lane*

Molly Moriarty Lane
Christina Chen
Phillip J. Wiese

Attorneys for Defendant
HP Inc.

NOT. OF MOT. AND MOT. TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT

**APPENDIX A**

*A comparison of the factual allegations cited in Plaintiffs' Opposition between the First Amended Complaint ("FAC") and the in the original Complaint. Alterations between the two are noted by double-underlining.*

| FAC Citations | Original Complaint Citations |
|---|---|
| ¶ 1: Printer ink—which can exceed $80 an ounce—is more expensive than many cherished luxury items including silver, caviar and champagne. *See* Lamont Wood, *Printer Ink: Tired of Feeding the Cash Cow? InkJet refills typically cost significantly more than the printer itself*, COMPUTERWORLD, (Mar. 28, 2012), available at https://www.computerworld.com/article/2503 134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 6, 2021). | ¶ 1: Printer ink—which can exceed $80 an ounce—is more expensive than many cherished luxury items including silver, caviar and champagne.<br><br>FN 1: See Lamont Wood, Printer Ink: *Tired of Feeding the Cash Cow? InkJet refills typically cost significantly more than the printer itself*, COMPUTERWORLD, (Mar. 28, 2012), available at https://www.computerworld.com/article/2503 134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 6, 2021). |
| ¶ 2: The not-so-hidden secret in the retail printer industry is that manufacturers like HP are very willing to lose money on the sale of printers in order to force consumers to purchase incredibly over-priced ink cartridges in perpetuity. For instance, a consumer can purchase an HP Envy 4520 All-in-One printer that costs HP roughly $120 to build for around $70 at various retailers. *See* Tercius Bufete, *Why is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018), available at https://www.consumerreports.org/printers/wh y-is-printerink-so-expensive-a2101590645/ (last visited Dec. 6, 2021); *see also* https://www.yoyoink.com/articles/why-is-printer-ink-expensive/ (last visited Dec. 6, 2021). Akin to the razor and blade business model, consumers are incented to purchase inkjet printers with extremely low purchase prices provided that those "loss leader" purchases will lead to billions of dollars in ink sales. | ¶ 2: The not-so-hidden secret in the retail printer industry is that manufacturers like HP are very willing to lose money on the sale of printers in order to force consumers to purchase incredibly over-priced ink cartridges in perpetuity. For instance, a consumer can purchase an HP Envy 4520 All-in-One printer that costs HP roughly $120 to build for around $70 at various retailers. Akin to the razor and blade business model, consumers are incented to purchase inkjet printers with extremely low purchase prices provided that those "loss leader" purchases will lead to billions of dollars in ink sales.<br><br>FN 2: See Tercius Bufete, *Why is Printer Ink So Expensive*?, CONSUMER REPORTS (September 15, 2018), available at https://www.consumerreports.org/printers/wh y-is-printer-ink-soexpensive-a2101590645/ (last visited Dec. 6, 2021); *see also* https://www.yoyoink.com/articles/why-is-printer-ink-expensive/ (last visited Dec. 6, 2021) |
| ¶ 3: The loss leader approach is particularly acute with all-in-one printers. According to HP, an All-in-One printer—also known as a Multi-Functional Printer—is a device which combines the capabilities of several separate devices into one machine, specifically, printing, scanning, copying and (depending on the model) faxing. *See* https://www.hp.com/us-en/shop /tech- | ¶ 3: The loss leader approach is particularly acute with all-in-one printers. According to HP, an All-in-One printer—also known as a Multi-Functional Printer—is a device which combines the capabilities of several separate devices into one machine, specifically, printing, scanning, copying and (depending on the model) faxing.<br><br>FN 3: See https://www.hp.com/us- |

| FAC Citations | Original Complaint Citations |
|---|---|
| takes/best-all-in-one-printers (last visited Dec. 3, 2021). | en/shop/tech-takes/best-all-in-one-printers (last visited Dec. 3, 2021). |
| ¶ 4: On its website, HP boldly proclaims that "these [All-in-One] printers are convenient because you don't have to buy a separate device for each task." *Id.* HP's representations regarding the capability and functionality of its All-in-One Printers is *not* limited to those on its website; rather, throughout its marketing and advertising, including on the product packaging for its All-in-One Printers, HP claims that the All-in-One Printers are multifunction, "all-in-one" devices that can print, copy, scan and in some cases, fax documents. | ¶ 4: On its website, HP boldly proclaims that "these [All-in-One] printers are convenient because you don't have to buy a separate device for each task." FN 4: *Id.* ¶ 5: HP's representations regarding the capability and functionality of its All-in-One Printers is *not* limited to those on its website; rather, throughout its marketing and advertising, including on the product packaging for its All-in-One Printers, HP claims that the All-in-One Printers are multifunction, "all-in-one" devices that can print, copy, scan and in some cases, fax documents. |
| ¶ 6: It is well-documented that ink is not required in order to scan or to fax a document, and it is certainly possible to manufacture an All-in-One printer that scans or faxes when the device is out of ink. <u>Indeed, HP designs its All-in-One printer products so they will not work without ink. Yet, HP does not disclose this fact to consumers.</u> | ¶ 8: It is well-documented that ink is not required in order to scan or to fax a document, and it is certainly possible to manufacture an All-in-One printer that scans or faxes when the device is out of ink. |
| ¶ 7: As a result of HP's <u>omissions</u>, consumers are forced to incur unexpected and unnecessary burden and expense in the form of ink purchases or be unable to scan or to fax documents despite the fact that ink is not used to accomplish those tasks. Even were it technically possible to scan a document without *all* ink cartridges present, HP does not disclose any "workaround" to consumers in any of the product packaging nor in any of HP's advertising and marketing materials regarding its multi-function devices. <u>Accordingly, purchasers of HP All-in-One Printers have been harmed as a result of its omissions.</u> | ¶ 10: As a result of HP's <u>intentional Design Flaw</u>, consumers are forced to incur unexpected and unnecessary burden and expense in the form of ink purchases or be unable to scan or to fax documents despite the fact that ink is not used to accomplish those tasks. ¶ 11: Even were it technically possible to scan a document without *all* ink cartridges present, HP does not disclose any "workaround" to consumers in any of the product packaging nor in any of HP's advertising and marketing materials regarding its multi-function devices. |
| ¶ 8: HP's intent is clear, namely, to have their multi-function devices revert to an inoperable "error state" so that a large subset of those multi-function device purchasers will purchase additional overpriced and unnecessary ink cartridges in order to be able to scan and to fax documents. The end goal is to increase the sales of one HP's largest profit makers, ink cartridges, by any and all means. | ¶ 12: HP's intent is clear, namely, to have their multi-function devices revert to an inoperable "error state" so that a large subset of those multi-function device purchasers will purchase additional overpriced and unnecessary ink cartridges in order to be able to scan and to fax documents. The end goal is to increase the sales of one HP's largest profit makers, ink cartridges, by any and all means. |

| FAC Citations | Original Complaint Citations |
|---|---|
| ¶ 9: Plaintiffs bring this class action lawsuit because HP has intentionally manipulated the functionality of its "All-in-One" Printers in order to impermissibly increase the number of ink cartridges purchased by the unsuspecting public. In addition to monetary damages, Plaintiffs seek, individually and on behalf of all those similarly situated, injunctive relief requiring HP to immediately cease its misleading advertising and marketing campaign and to engage in a corrective campaign to inform consumers of the misleading advertising. | ¶ 13: Plaintiffs bring this class action lawsuit because HP has intentionally manipulated the functionality of its "All-in-One" Printers in order to impermissibly increase the number of ink cartridges purchased by the unsuspecting public. In addition to monetary damages, Plaintiffs seek, individually and on behalf of all those similarly situated, injunctive relief requiring HP to immediately cease its misleading advertising and marketing campaign and to engage in a corrective campaign to inform consumers of the misleading advertising. |
| ¶ 18: HP designs, develops, manufactures and sells personal computers, tablet computers, monitors, printers, workstations and accessories. | ¶ 23: HP designs, develops, manufactures and sells personal computers, tablet computers, monitors, printers, workstations and accessories. |
| ¶ 19: HP has long been an industry leader in the manufacture and sale of personal inkjet printing devices. *See* https://www.statista.com/statistics/541347/worldwide-printer-marketvendor-shares/ (last visited Dec. 3, 2021) | ¶ 24: HP has long been an industry leader in the manufacture and sale of personal inkjet printing devices.<br><br>FN 6: *See* https://www.statista.com/statistics/541347/worldwide-printer-market-vendor-shares/ (last visited Dec. 3, 2021). |
| ¶ 20: The HP ink-jet All-in-One Printer models at issue in this class action lawsuit: (i) HP Deskjet 2755e; (ii) HP DeskJet 3755; (iii) HP DeskJet 4155e; (iv) HP ENVY 6055e; (v) HP ENVY 6075; (vi) HP ENVY 6455e; (vii) HP ENVY Pro 6475; (viii) HP OfficeJet 250 Mobile; (ix) HP OfficeJet Pro 7740 Wide Format and (x) HP OfficeJet Pro 8025, (xi) HP DeskJet 2622, (xii) HP DeskJet 2655 (collectively defined herein as the "All-in-One Printers" or the Devices"). <u>Each of these All-in-One Printers have the same software, which prohibits the printer from operating as a scan or fax machine when it is low on ink or when the ink cartridge is missing.</u> | FN 5: The HP ink-jet All-in-One Printer models at issue in this class action lawsuit: (i) HP Deskjet 2755e; (ii) HP DeskJet 3755; (iii) HP DeskJet 4155e; (iv) HP ENVY 6055e; (v) HP ENVY 6075; (vi) HP ENVY 6455e; (vii) HP ENVY Pro 6475; (viii) HP OfficeJet 250 Mobile; (ix) HP OfficeJet Pro 7740 Wide Format and (x) HP OfficeJet Pro 8025, (xi) HP DeskJet 2622, (xii) HP DeskJet 2655 (collectively defined herein as the "All-in-One Printers" or the "Devices"). |
| ¶ 21: HP's All-in-One Printers are devices marketed and sold as having three core functions: printing, copying and scanning (certain All-in-One Printers have an added fax capability <u>function that uses the same functionality as the scanner</u>). https://www.hp.com/usen/shop/vwa/printers/prnttyp=InkJet;segm=Home,Small Office;prnttyp=Multifunction-All-inOne?orderBy=2 (last visited Dec. 3, 2021). Throughout its marketing and advertising (as | ¶ 25: HP's All-in-One Printers are devices marketed and sold as having three core functions: printing, copying and scanning (certain All-in-One Printers have an added fax capability feature).<br><br>FN 7: https://www.hp.com/us-en/shop/vwa/printers/prnttyp=InkJet;segm=Home,Small-Office;prnttyp=Multifunction-All-in-One?orderBy=2 (last visited Dec. 3, 2021).<br><br>¶ 26: Throughout its marketing and |

NOT. OF MOT. AND MOT. TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

| FAC Citations | Original Complaint Citations |
|---|---|
| detailed below), HP promotes and promises that its All-in-One Printers provide scanning and faxing as main features and functions. HP markets its All-in-One printers as "incredibly convenient" and "exceptional values" "[b]ecause they are designed to fit within a typical home office, use standard printer paper, and handle their own maintenance tasks." *Id.* HP further proclaims, without disclosing the fact that consumers cannot use the All-in-One Printers with low ink, that "these [All-in-One] printers are convenient because you don't have to buy a separate device for each task." | advertising (as detailed below), HP promotes and promises that its All-in-One Printers provide scanning and faxing as main features and functions. <br><br> ¶ 27: HP markets its All-in-One printers as "incredibly convenient" and "exceptional values" "[b]ecause they are designed to fit within a typical home office, use standard printer paper, and handle their own maintenance tasks. <br><br> FN 8: *Id.* <br><br> ¶ 28: HP further proclaims, without disclosing the Design Flaw, that "these [All-in One] printers are *convenient* because you don't have to buy a separate device for each task." |
| ¶ 22: At online retail *websites*, such as www.hp.com and www.amazon.com, HP makes available for purchase numerous printers including many All-in-One printer options. For each of the inkjet All-in-One Printers available for sale online, HP allows consumers to click for more information including technical specifications. | ¶ 29: At online retail websites, such as ww.hp.com and www.amazon.com, HP makes available for purchase numerous printers including many All-in-One printer options. <br><br> ¶ 30: For each of the inkjet All-in-One Printers available for sale online, HP allows consumers to click for more information including technical specifications. |
| ¶ 23: For instance, HP advertises the HP ENVY 6455e All-in-One Printer (which it contends can print, copy, scan and send mobile fax) on the online retail Site amazon.com: https://www.amazon.com/HP-ENVY-6455e-Wireless-Printer/dp/B08XYRDKDV (last visited December 8, 2021). | ¶ 31: For instance, HP advertises the HP ENVY 6455e All-in-One Printer (which it contends can print, copy, scan and send mobile fax) on the online retail Site amazon.com: <br><br> FN 9: https://www.amazon.com/HP-ENVY-6455e-Wireless-Printer/dp/B08XYRDKDV (last visited December 8, 2021). |
| ¶ 24: In addition to statements and representations on the HP Site, HP states the functionalities of the All-in-One Printers on the product packaging for each device. For example, on the product packaging of the ENVY 6455e All-in-One Printer, HP represents on the box that the device functions as a scanner: | ¶ 32: In addition to statements and representations on the HP Site, HP states the functionalities of the All-in-One Printers on the product packaging for each device. For example, on the product packaging of the ENVY 6455e All-in-One Printer, HP represents on the box that the device functions as a scanner: |
| ¶ 25: For instance, HP's DeskJet 4155e All-in-One Wireless Color Printer is identified on the Amazon site as the "#1 Best Seller" in the InkJet Computer Printers category. https://www.amazon.com/HP-DeskJet-4155e-Wireless- | ¶ 34: For instance, HP's DeskJet 4155e All-in-One Wireless Color Printer is identified on the Amazon site as the "#1 Best Seller" in the InkJet Computer Printers category. <br><br> FN 10: https://www.amazon.com/HP- |

| FAC Citations | Original Complaint Citations |
|---|---|
| Printer/dp/B08XYRDSL7/ref=sr_1_6?crid=2 6ONZAIIVY7X9&keywords=hp+all+in+one +printer&qid=1638547204&refinements=p_n _feature_five_browsebin%3A10719423011% 2Cp_89%3AHP&rnid=2528832011&s=office electronics&sprefix=hp+all%2Caps%2C234 &sr=1-6 (last visited December 3, 2021) | DeskJet-4155e-Wireless-Printer/dp/B08XYRDSL7/ref=sr_1_6?crid=2 6ONZAIIVY7X9&keywords=hp+all+in+one +printer&qid=1638547204&refinements=p_n _feature_five_browse-bin%3A10719423011%2Cp_89%3AHP&rnid =2528832011&s=office-electronics&sprefix=hp+all%2Caps%2C234 &sr=1-6 (last visited December 3, 2021). |
| ¶ 26: The listing for that printer on Amazon identifies the "KEY FEATURES – Print, copy and scan in color, auto document feeder, mobile fax, mobile and wireless printing." Further, the images for the DeskJet 4155e All-in-One printer on Amazon do not disclose <u>the printer does not work when the ink is low</u>: | ¶ 37: The listing for that printer on Amazon identifies the "KEY FEATURES – Print, copy and scan in color, auto document feeder, mobile fax, mobile and wireless printing." <br><br>¶ 38: Further, the images for the DeskJet 4155e All-in-One printer on Amazon do not disclose <u>the Design Flaw</u>: |
| ¶ 27: At no point does HP disclose to consumers that in order to scan or to fax documents, the ink cartridges (necessary for printing and copying) must not be depleted <u>or damaged</u>. | ¶ 39: At no point does HP disclose to consumers that in order to scan or to fax documents, the ink cartridges (necessary for printing and copying) must not be depleted. |
| ¶ 28: HP's All-in-One Printers do not work as advertised. Ink is not a necessary component to scan or to fax a document. However, the HP All-in-One Printers are manufactured, packaged, marketed and sold to consumers in a manner which requires the devices to contain ink in order to scan or to fax documents. Simply put, HP's All-in-One Printer do not function as scanners or as fax machines if the devices have low, empty <u>or damaged</u> ink cartridges. | ¶ 40: HP's All-in-One Printers do not work as <u>warranted, labeled and</u> advertised. <br><br>¶ 41: Ink is not a necessary component to scan or to fax a document. <br><br>¶ 42: However, the HP All-in-One Printers are manufactured, packaged, marketed and sold to consumers in a manner which requires the devices to contain ink in order to scan or to fax documents. <br><br>¶ 43: Simply put, HP's All-in-One Printers do not function as scanners or as fax machines if the devices have low or empty ink cartridges. |
| ¶ 29: If consumers wish to use either of two of the main functions of the device, HP forces consumers to purchase ink cartridges whether or not they intend to use ink or want to print or to copy documents. As a result, consumers must incur unexpected and unnecessary burden and expense by purchasing ink cartridges or be deprived of several of the core functions of their supposedly All-in-One printing devices. HP fails to disclose to consumers that its All-in-One Printers <u>have the same flaw</u>. | ¶ 44: If consumers wish to use either of two of the main functions of the device, HP forces consumers to purchase ink cartridges whether or not they intend to use ink or want to print or to copy documents. <br><br>¶ 45: As a result, consumers must incur unexpected and unnecessary burden and expense by purchasing ink cartridges or be deprived of several of the core functions of their supposedly All-in-One printing devices. <br><br>¶ 46: HP fails to disclose to consumers that its All-in-One Printers <u>suffer from the</u> |

| FAC Citations | Original Complaint Citations |
|---|---|
|  | Design Flaw. |
| ¶ 30: HP has known for years that its representations and advertisements regarding the All-in-One Printers being multifunction devices were false and misleading, and that it fails to disclose material information to consumers. Indeed, the Printers have been designed to function this way. In an October 2018 post on HP's community website, a customer asked why their Allin-One Printer would not scan with a damaged ink cartridge: 'My black ink cartridge cacked tonight (screen on printer and warning on computer saying it failed or was damaged) and I need to scan an important document. However, it's just saying I need to replace the cartridge and won't let me go past that screen. Is there a way to scan without having to purchase a new cartridge?' https://h30434.www3.hp.com/t5/Scanning-Faxing-Copying/Scanning-without-a-working-inkcartridge/td-p/6777739 (last visited Feb. 6, 2023). A HP's employee responded that: "HP Printer is designed in such a way that with the empty cartridge or without the cartridge printer will not function." Put differently, Defendant designed the All-in-One Printers so that the entire Printer (including the scan and fax function) stops working if the Printer has an empty and missing cartridge. Accordingly, at all times relevant, HP was not only aware that is All-in-One Printers will not work as a scanner or fax machine without ink, it was designed that way: it was a feature not a bug. | ¶ 47: HP has known for years that its representations and advertisements regarding the All-in-One Printers being multifunction devices were false and misleading, and that it fails to disclose material information to consumers. |
| ¶ 31: Based on information and belief, the problem rests with HP's software. Each of the All-in-One Printers contains the same base software that causes the Printer to enter a "error state" when it is low or out of ink, or when the ink cartridge is missing or damaged. This error state prevents the All-in-One Printers from function until the error is cleared (i.e. a new ink cartridge is placed into the printer). Accordingly, as HP acknowledges, its printers are "designed in such a way that with the empty cartridge or without the cartridge printer will not function." Accordingly, the fact that HP's All-in-One Printers will not work as a scanner or fax machine without ink or an ink cartridge is inherent to the Printers, and this problem |  |

| FAC Citations | Original Complaint Citations |
|---|---|
| exists at the time of purchase." | |
| ¶ 32: Not all multifunction printers are designed, packaged, marketed and sold to consumers so that low or no ink causes a loss in scan or fax functionality. Indeed, it is well documented that ink is not required in order to scan or to fax a document, and it is certainly possible to manufacture an All-in-One printer that scans or faxes when the device is out of ink. <u>Accordingly, Defendant made a conscious choice in designing and programing is All-in-One Printers.</u> | ¶ 49: Not all multifunction printers are designed, packaged, marketed and sold to consumers so that low or no ink causes a loss in scan or fax functionality. Indeed, it is well-documented that ink is not required in order to scan or to fax a document, and it is certainly possible to manufacture an All-in-One printer that scans or faxes when the device is out of ink. |
| ¶ 33: HP's false, misleading and deceptive representations and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances. | ¶ 50: HP's false, misleading and deceptive representations and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances. |
| ¶ 34: There is no legitimate purpose for selling the All-In-One Printers with scanning or faxing functionality that is directly tied to the existence or level of ink contained in the devices. Ink is not needed for scanning or faxing functionality nor does ink improve scanning or faxing performance. Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices offers no benefit, and only serves to disadvantage and harm consumers financially. <u>However, tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices does, however, serve to benefit HP.</u> | ¶ 51: There is no legitimate purpose for selling the All-In-One Printers with scanning or faxing functionality that is directly tied to the existence or level of ink contained in the devices. <br>¶ 52: Ink is not needed for scanning or faxing functionality nor does ink improve scanning or faxing performance. <br>¶ 53: Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices offers no benefit, and only serves to disadvantage and harm consumers financially. <br>¶ 54: Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices does, however, serve to benefit HP. |
| ¶ 35: HP derives substantial profits from the sale of HP printer ink cartridges. Ink cartridges for the All-in-One Printers retail for approximately $30. The costs of ink for the All-in-One Printers is not trivial or fleeting as "[t]he industry figured out years ago that once people buy a printer they are committed to it, so you can sell the printer at or below cost knowing they will buy the cartridges." Charles LeCompte as quoted in *Printer ink: Tired of feeding the cash cow?*, Lamont Wood, COMPUTERWORLD (Mar 28, 2012 6:00 am PST), https://www.computerworld.com/article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 3, 2021); *see also* Jack Houston and Irene Anna Kim, Why printer ink is so expensive, INSIDER | ¶ 55: HP derives substantial profits from the sale of HP printer ink cartridges. <br>¶ 56: Ink cartridges for the All-in-One Printers retail for approximately $30. <br>¶ 57: The costs of ink for the All-in-One Printers is not trivial or fleeting as "[t]he industry figured out years ago that once people buy a printer they are committed to it, so you can sell the printer at or below cost knowing they will buy the cartridges." <br>FN 17: 17 Charles LeCompte as quoted in *Printer ink: Tired of feeding the cash cow?*, Lamont Wood, COMPUTERWORLD (Mar 28, 2012 6:00 am PST), https://www.computerworld.com/article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 3, 2021); *see also* |

| FAC Citations | Original Complaint Citations |
|---|---|
| (Updated Mar 2, 2021, 12:09 PM) https://www.businessinsider.com/whyprinter-ink-so-expensive-2019-8 ("companies do everything they can to keep you buying official ink cartridges") (last visited on Dec. 6, 2021). | Jack Houston and Irene Anna Kim, *Why printer ink is so expensive*, INSIDER (Updated Mar 2, 2021, 12:09 PM) https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 ("companies do everything they can to keep you buying official ink cartridges") (last visited on Dec. 6, 2021). |
| ¶ 36: According to a 2018 Consumer Reports article, inkjet printers are being sold at a low cost, with the expectation that companies will make their profit through sales of the ink cartridges needed for the functioning of the machines. Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590 645/ (last Dec. 3, 2021). "Most printers are sold at a loss. A manufacturer makes money NOT by selling consumers an inkjet or laser printer, but by selling supplies needed to print." *Why Are Printer Ink and Toner Cartridges So Expensive?*, TONERBUZZ https://www.tonerbuzz.com/blog/why-is-printer-ink-so-expensive/ (last visited on Dec. 3, 2021). | ¶ 58: According to a 2018 Consumer Reports article, inkjet printers are being sold at a low cost, with the expectation that companies will make their profit through sales of the ink cartridges needed for the functioning of the machines.<br><br>FN 18: Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/ (last Dec. 3, 2021).<br><br>¶ 59: "Most printers are sold at a loss. A manufacturer makes money NOT by selling consumers an inkjet or laser printer, but by selling the supplies needed to print.<br><br>FN 19: *Why Are Printer Ink and Toner Cartridges So Expensive?*, TONERBUZZ https://www.tonerbuzz.com/blog/why-is-printer-ink-so-expensive/ (last visited on Dec. 3, 2021). |
| ¶ 37: Wing Lam, an associate director of cost benchmarking at IHS Markit stated that "[t]his is a classic razor-and-blade business model where the manufacturer sells the goods at a low price to help increase the sales of accessories, where the money is made." Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a210159 0645/ (last visited Dec. 3, 2021). | ¶ 60: Wing Lam, an associate director of cost benchmarking at IHS Markit stated that "[t]his is a classic razor-and-blade business model where the manufacturer sells the goods at a low price to help increase the sales of accessories, where the money is made."<br><br>FN 20:Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/ (last visited Dec. 3, 2021). |
| ¶ 38: There is no reason or technical basis for manufacturing the All-in-One Printers with an ink level detection function that causes the scanner to stop functioning when ink is low or empty. HP designed the All-in-One Printers in such a way to require consumers to maintain ink in their devices regardless of whether they intend to print. The result is an increase in ink sales from which | ¶ 61: There is no reason or technical basis for manufacturing the All-in-One Printers with an ink level detection function that causes the scanner to stop functioning when ink is low or empty.<br><br>¶ 62: HP designed the All-in-One Printers in such a way to require consumers to maintain ink in their devices regardless of |

| FAC Citations | Original Complaint Citations |
|---|---|
| HP derives significant profits. <u>This forces consumers to incur the unexpected and unnecessary burden and expense of additional and superfluous ink purchases or be unable to scan or fax documents using the so-called all-in-one device.</u> | whether they intend to print.<br><br>¶ 63: The result is an increase in ink sales from which HP derives significant profits.<br><br>¶ 64: <u>The Design Flaw</u> forces consumers to incur the unexpected and unnecessary burden and expense of additional and superfluous ink purchases or be unable to scan or fax  documents using the so-called all-in-one device. |
| ¶ 39: <u>Defendant could easily change is software, or offer a sof.</u> | |
| ¶ 40: In or about July 30, 2021, Plaintiff Freund purchased an HP Envy 6455e All-in-One Wireless Color Printer from an www.amazon.com. | ¶ 65: In or about July 30, 2021, Plaintiff Freund purchased an HP Envy 6455e All-in-One Wireless Color Printer from an www.amazon. |
| ¶ 41: Plaintiff Freund purchased the HP Envy 6455e All-in-One Wireless Color Printer to use for its advertised scanning purposes. | ¶ 66: Plaintiff Freund purchased the HP Envy 6455e All-in-One Wireless Color Printer to use for its advertised scanning purposes. |
| ¶ 42: HP made explicit representations that the HP Envy 6455e All-in-One Wireless Color Printer would be able to scan and did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted: | ¶ 67: HP made explicit representations that the HP Envy 6455e All-in-One Wireless Color Printer would be able to scan and did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted: |
| ¶ 43: Further, the images for the HP Envy 6455e All-in-One Wireless Color Printer on Amazon advertise the scan function but do *not* disclose <u>that it will not scan when the ink is low or depleted, or if the ink cartridge is damaged or missing</u>: | ¶ 68: Further, the images for the HP Envy 6455e All-in-One Wireless Color Printer on Amazon advertise the scan function but do *not* disclose the Design Flaw. |
| ¶ 44: The box packaging containing the HP Envy 6455e All-in-One Wireless Color Printer advertises the same explicit representations that the device would be able to "scan" and likewise did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted: | ¶ 69: The box packaging containing the HP Envy 6455e All-in-One Wireless Color Printer advertises the same explicit representations that the device would be able to "scan" and likewise did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted: |
| ¶ 45: After purchasing and using the device, Plaintiff Freund discovered that the device did not function as a scanner if the ink cartridges are low or empty. | ¶ 70: After purchasing and using the device, Plaintiff Freund discovered that the device did not function as a scanner if the ink cartridges are low or empty. |

| FAC Citations | Original Complaint Citations |
|---|---|
| ¶ 46: Plaintiff Freund suffered injury and was damaged as a result of HP's conduct. | ¶ 71: Plaintiff Freund suffered injury and was damaged as a result of HP's conduct. |
| ¶ 47: Plaintiff Freund would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents. | ¶ 72: Plaintiff Freund would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents. |
| ¶ 48: Plaintiff Freund may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue. | ¶ 73: Plaintiff Freund may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue. |
| ¶ 49: In or about September 2019, Plaintiff McMath purchased an HP Deskjet 2655 All-in-One Compact Printer from an online retailer. | ¶ 74: In or about September 2019, Plaintiff McMath purchased an HP Deskjet 2655 All-in-One Compact Printer from an online retailer. |
| ¶ 50: Plaintiff McMath purchased the HP Deskjet 2655 All-in-One Compact Printer to use for its advertised scanning purposes. | ¶ 75: Plaintiff McMath purchased the HP Deskjet 2655 All-in-One Compact Printer to use for its advertised scanning purposes. |
| ¶ 51: HP made explicit representations that the device would be able to scan and did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted:<br><br>• Main functions of this HP compact color printer: print, scan, copy, wireless printing, AirPrint, Instant Ink ready so you'll never run out of ink, and more<br>• Print, copy, and scan while saving money and space with a wireless all-in-one printer.<br><br>The power of your printer in the palm of your hand: The HP Smart app allows you to easily set up your printer, scan from your smartphone. https://www.amazon.com/HP-DeskJet-2655-Compact-Replenishment/dp/B06XH XWB7B (last visited Dec. 6, 2021) (highlighting added). | ¶ 76: HP made explicit representations that the device would be able to scan and did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted:<br><br>• Main functions of this HP compact color printer: print, scan, copy, wireless printing, AirPrint, Instant Ink ready so you'll never run out of ink, and more<br>• Print, copy, and scan while saving money and space with a wireless all-in-one printer.<br><br>The power of your printer in the palm of your hand: The HP Smart app allows you to easily set up your printer, scan from your smartphone. https://www.amazon.com/HP-DeskJet-2655-Compact-Replenishment/dp/B06XH XWB7B (last visited Dec. 6, 2021) (highlighting added). |
| ¶ 52: Further, the images for the HP Deskjet 2655 All-in-One Compact Printer online do not do not disclose that it will not scan when the ink is low or depleted, or if the ink cartridge is damaged or missing: | ¶ 77: Further, the images for the HP Deskjet 2655 All-in-One Compact Printer online do not do not disclose that it will not scan when the ink is low or depleted, or if the ink cartridge is damaged or missing: |

NOT. OF MOT. AND MOT. TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT

| FAC Citations | Original Complaint Citations |
|---|---|
| ¶ 53: The box packaging containing the HP Deskjet 2655 All-in-One Compact Printer advertises the same explicit representations that the device would be able to "scan" and likewise did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted: | ¶ 78: The box packaging containing the HP Deskjet 2655 All-in-One Compact Printer advertises the same explicit representations that the device would be able to "scan" and likewise did not include any qualifying language that such features would not work if the ink cartridge levels were low or depleted: |
| ¶ 54: After purchasing and using the device, Plaintiff McMath discovered that the device did not function as a scanner if the ink cartridges are low or empty. | ¶79: After purchasing and using the device, Plaintiff McMath discovered that the device did not function as a scanner if the ink cartridges are low or empty. |
| ¶ 55: Plaintiff McMath suffered injury and was damaged as a result of HP's conduct. | ¶ 80: Plaintiff McMath suffered injury and was damaged as a result of HP's conduct. |
| ¶ 56: Plaintiff McMath would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents. | ¶ 81: Plaintiff McMath would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents. |
| ¶ 57: Plaintiff McMath may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue | ¶ 82: Plaintiff McMath may purchase a HP All-in-One Printer again in the future should HP continue to advertise a product as all-in-one as he would think it meant HP fixed the issue. |
| ¶ 98: <u>Plaintiff and the California Subclass do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful omissions. Damages will only address past injuries visited on Plaintiff and the California Subclass. Only injunctive relief can prevent any future harm. For example, Defendant can remedy the software issue that prevents consumers from using the scan and fax functions when an ink cartridge is low, missing or damaged. Alternatively, Defendant should be required to disclose the fact that the scan and fax does not function when an ink cartridge is low, missing or damaged.</u> | |
| ¶ 99: <u>Additionally, Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the</u> | |

NOT. OF MOT. AND MOT. TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT

| FAC Citations | Original Complaint Citations |
|---|---|
| transaction occurred."); _Gutierrez v. Wells Fargo Bank, NA_, 589 F. App'x 824, 827 (9th Cir. 2014) (same); _Caro v. Procter & Gamble Co._, 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'") | |
| ¶ 100: But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. _Cortez_, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. _See, e.g., Fladeboe v. Am. Isuzu Motors Inc._, 150 Cal. App. 4th 42, 68 (2007), as modified (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available). | |
| ¶ 114: Additionally, Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. _Cortez_, 23 Cal.4th at 177 (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); _Gutierrez_, 589 F. App'x at 827 (same); _Caro_, 18 Cal. App. 4th at 661 ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'"). | |
| ¶ 115: But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion, in fashioning equitable relief is very broad. Cortez, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. _See, e.g., Fladeboe_, 150 Cal. App. 4th at 68 (2007) (noting that restitution is available even in situations where damages may not be available). | |

NOT. OF MOT. AND MOT. TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT